**EXHIBIT B**



**KSB / ALL**
**Transmittal Number: 32425180**
**Date Processed: 10/07/2025**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | State Farm Enterprise SOP<br>Corporation Service Company- Wilmington, DELAWARE<br>251 Little Falls Dr<br>Wilmington, DE 19808-1674 |

| | |
|---|---|
| **Entity:** | State Farm General Insurance Company<br>Entity ID Number  3461656 |
| **Entity Served:** | State Farm General Insurance Company |
| **Title of Action:** | Debbie Silvia, an individual vs. State Farm General Insurance Company, an Illinois corporation |
| **Matter Name/ID:** | Debbie Silvia, an individual vs. State Farm General Insurance Company, an Illinois corporation (17996561) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Riverside County Superior Court, CA |
| **Case/Reference No:** | CVME2510473 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 10/07/2025 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Megerdomian Law Offices, P.C.<br>877-734-3095 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Electronically FILED by Superior Court of California, County of Riverside on 09/02/2025 04:11 PM
Case Number CVME2510473 0000140603214 - Jason B. Galkin, Executive Officer/Clerk of the Court By Shelley Thompson, Clerk

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DEBBIE SILVIA, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER:<br>(Número del Caso): | CVME2510473 |
|---|---|---|

The name and address of the court is:
*(El nombre y dirección de la corte es):* Menifee Justice Center

27401 Menifee Center Drive, Menifee, CA 92501

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Linet Megerdomian, Esq. 468 N Camden Drive, Suite 220, Beverly Hills, CA 90210 (877) 734-3095

| DATE: September 2, 2025<br>*(Fecha)* | Clerk, by<br>*(Secretario)* S Thompson | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

GC68150(g)

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* STATE FARM GENERAL INSURANCE COMPANY, AN ILLINOIS CORPORATION

   under: ☑ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☑ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

Electronically FILED by Superior Court of California, County of Riverside on 09/02/2025 04:11 PM
Case Number CVME2510473 0000140603212 - Jason B. Galkin, Executive Officer/Clerk of the Court By Shelley Thompson, Clerk

LINET MEGERDOMIAN, ESQ. (SBN. 253898)
**MEGERDOMIAN LAW OFFICES, P.C.**
468 N. Camden Drive, Suite 220
Beverly Hills, CA 90210
Telephone: (877) 734-3095
Facsimile: (818) 272-8634
E-mail: lm@megerdomianlaw.com

**Attorney for Plaintiff**

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| **DEBBIE SILVIA, an individual**<br><br>**Plaintiff,**<br><br>v.<br><br>**STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 20, inclusive.**<br><br>**Defendants** | **CASE NO.:** CVME2510473<br><br>**COMPLAINT FOR**<br><br>**1. BREACH OF CONTRACT**<br>**2. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**3. BAD FAITH DENIAL OF INSURANCE CLAIM**<br>**4. DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Debbie Silvia is informed and believes, and on that basis alleges, as follows:

### NATURE OF THE CASE

1. This is an action brought by homeowner Debbie Silvia (hereinafter "Plaintiff")

1

**COMPLAINT**

against State Farm General Insurance Company (hereinafter "State Farm" or "Defendant") for damages arising from breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith for improperly denying an insurance claim that was filed for a smoke damage loss from the Line Wildfire that began on September 5, 2024, (hereinafter "the fire"). State Farm issued a homeowner's insurance policy that provided coverage to Plaintiff and her property. As more fully described below, State Farm failed to pay Plaintiff for covered damages to her property.

2.   As a direct and proximate result of State Farm's bad faith refusal to comply with its obligations under the homeowner's policy, and because of State Farm's disregard for Plaintiff's rights, Plaintiff has been damaged and has incurred costs, including attorneys' fees, in pursuing her contract benefits, in an amount to be proven at trial.

<div align="center">**JURISDICTION AND VENUE**</div>

3.   Venue is proper in the Superior Court of the County of Riverside, State of California, because Riverside County is where the subject property is located, where the subject incident(s) and event(s) occurred, and where the obligation and liability arose for Defendant.

4.   The Federal Courts do not have subject matter or removal jurisdiction over this case. Specifically, pursuant to 28 U.S.C. § 1441(b), this action is not removable and the Superior Court of the County of Riverside, State of California has jurisdiction over this case since at all times relevant to this action Defendant did business in and provided services in the County of Riverside, State of California. In addition, no Federal question is involved in this action. As such, any removal of this case to Federal court would be wrongful and done solely for the purposes of delay. Therefore, should the Defendant seek to improperly remove this case to Federal court, Plaintiff will oppose such improper removal.

<div align="center">2</div>

<div align="center">**COMPLAINT**</div>

1    5. This Court has jurisdiction of this action because the Plaintiff seeks damages that are in

2    excess of this Court's minimum jurisdictional limits and because Defendant conducts business

3    in, and Plaintiff's causes of action arose in, the County of Riverside, State of California.

4                                        **THE PARTIES**

5    6. Plaintiff owns the property located at 28857 Avenida de las Flores, Menifee, California

6

7    92587 (hereinafter "subject property").

8    7. The subject property was insured by State Farm at the time the smoke damage occurred

9    at the subject property.

10   8. Plaintiff is informed and believes, and thereon alleges, that Defendant, State Farm, is an

11

12   Illinois Corporation with its principal place of business located at One State Farm Plaza,

13   Bloomington, Illinois, 61710. At all times relevant to the allegations contained herein, Defendant

14   State Farm was conducting business as an insurer in the State of California.

15                                   **COMMON ALLEGATIONS**

16   9. All allegations in the complaint are based on information and belief and are likely

17

18   to have evidentiary support after a reasonable opportunity for further investigation or discovery.

19   10. Plaintiff is ignorant of the true names and capacities, whether individual, corporate,

20   associate, or otherwise, of Defendant Does 1 through 10. Such Doe Defendants are sued

21   pursuant to the provisions of C.C.P. § 474. Plaintiff is informed, believes, and on that basis

22   alleges, that each Doe Defendant was in some manner responsible, participated in, or contributed

23

24   to the matters and things in which Plaintiff complains herein and, in some fashion, has legal

25   responsibility, therefore. If the exact nature and identity of such Doe Defendants responsible for

26   participation in, and contribution to the matters and things herein alleged are ascertained by

27   Plaintiff, she will seek to amend this complaint and all proceedings to set forth the same.

28                                             3

                                        **COMPLAINT**

11. As an alternative theory, Plaintiff is informed, believes, and thereon alleges, that at all times mentioned herein each of the Defendants was the agent or employee of the other Defendants, was at all times acting within the scope of such agency or employment, and actively participated in, or subsequently ratified, or adopted, each of the acts or omissions alleged, with full knowledge of all the facts and circumstances, including full knowledge of each and every violation of Plaintiff's rights.

## INSURANCE COVERAGE

12. State Farm issued Policy Number 05-CG-S899-5 (hereinafter the "Policy") to Plaintiff to cover the subject property, which was in effect during the fire, covering the subject property from various perils, including the type of smoke damage loss that she suffered. A true and correct copy of Plaintiff's Policy in force during the fire is attached as Exhibit A. The contents of the Policy are incorporated into this Complaint.

13. In return for the Policy, Plaintiff paid premiums that were collected and transmitted to State Farm and recorded in State Farm's records during the regular course of business.

14. The Policy was entered into by State Farm and Plaintiff within the jurisdiction of the above-entitled court and required payment of benefits within the jurisdiction of the above-entitled court, for a total amount to be shown at the time of trial.

## FACTUAL BACKGROUND

15. The Line wildfire was first reported on September 5, 2024, burning nearly 43,978 acres across San Bernardino County until it was fully contained on or around December 23, 2024.

16. Plaintiff realized a wildfire was burning near her property upon smelling the wildfire

4

**COMPLAINT**

1    smoke odor and seeing ash blowing over and into the subject property. The smoke odor and

2    smoke particulates filled the subject property through vents, windows, and any open area that

3    was not fully sealed.

4    17. Plaintiff closed her windows as soon as she returned to the subject property the day

5
6    the fire began, but smoke had already entered by then.

7    18. Plaintiff made sure all windows of the subject property remained shut for the

8    duration of the fire and kept her air conditioner on to help with the smoke smell.

9    19. Plaintiff observed ash, char, and soot remnants in the interior and exterior of the

10    subject property as the fire continued.

11
12    20. After attempting to clean the subject property and the personal contents present

13    inside of the subject property, Plaintiff noted that the fire smoke smell still remained after her

14    attempts to clean throughout the subject property.

15    21. On September 11, 2024, Plaintiff promptly contacted Megerdomian Law Offices to assist

16
17    in filing a claim with State Farm for smoke damage sustained by the subject property. Soon after,

18    State Farm opened a claim file under claim number 05-73Q9-07R (hereinafter "Claim") and

19    began adjusting the Claim, which ultimately resulted in a bad faith denial due to improper

20    investigation.

21    22. On September 24, 2024, State Farm adjuster Sabri Alquza (hereinafter "Mr. Alquza")

22
23    inspected the subject property along with several other individuals that Plaintiff believes are

24    agents of State Farm.

25    23. Plaintiff was greatly dissatisfied by the unprofessional behavior displayed by Mr. Alquza

26
27
28            5

**COMPLAINT**

1    during the rushed inspection of the subject property, as Mr. Alquza seemed more concerned with

2    leaving as soon as possible, already intending to deny Plaintiff's Claim before even stepping foot

3    onto the subject property.

4    24. State Farm wrongfully and unreasonably denied the Claim based off of a visual

5
6    inspection performed by Mr. Alquza on the same date of the inspection, September 24, 2024. A

7    true and correct copy of this denial is attached hereto as Exhibit B.

8    25. On October 4, 2024, Plaintiff, at her own expense hired an industrial hygienist certified

9    by the American Industrial Hygiene Association (AIHA), Titan Environmental, to inspect the

10   subject property. Samples were analyzed by an AIHA-accredited laboratory, Environmental
11
12   Analysis Associates, Inc., which confirmed significant char, ash, soot and residue in multiple

13   locations at the subject property.

14   26. On December 19, 2024, Plaintiff's counsel sent State Farm a demand letter, containing a

15   copy of Titan Environmental's report and a copy of a certified fire and smoke damage
16
17   remediation vendor's estimate totaling $22,420.28. A true and correct copy of the demand letter

18   submitted on this date is attached hereto as Exhibit C.

19   27. Upon receipt of the demand letter, State Farm requested additional information and

20   Plaintiff complied with the request.

21   28. Plaintiff's counsel attempted to resolve the Claim by communicating with Mr. Alquza
22
23   and his manager, Pat Arakawa, on several occasions.

24   29. After several months of requesting unnecessary information, not conducting any

25   additional investigation such as hiring a contractor to draft an estimate based off of the hygienist

26   report obtained by Plaintiff or hiring their own hygienist, and Mr. Alquza demonstrating a severe

27

28

6

**COMPLAINT**

6
7

lack of understanding for how to properly read an industrial hygienist report, State Farm

wrongfully and in bad faith denied the Claim again on May 21, 2025.

30. Despite the evidence Plaintiff provided from a certified expert, State Farm has

unjustifiably denied PLAINTIFF's claim, relying on the questionable judgment of Mr. Alquza

and his ill-informed manager.

31. State Farm wrongfully and in bad faith denied Plaintiff's Claim based on Mr. Alquza's

poorly performed inspection over the report of a certified expert hired by Plaintiff.

32. State Farm has thus far provided no valid reasoning why the recommendations provided

by the Titan Environmental report are not warranted.

33. State Farm denied the claim notwithstanding the plain language of the Policy, which

provides coverage for such losses, and they did so wrongfully and in bad faith in violation of

California law.

34. This Complaint details direct violations of California laws intended to protect insurance

policyholders who act in good faith with their carriers.

35. Plaintiff devoted substantial attention and effort to secure an insurance policy with State

Farm.

36. Plaintiff has honored that relationship with their continued patronage and loyalty to State

Farm by making their premium payments on time.

37. Plaintiff precisely took out this Policy with State Farm to cover this kind of loss.

38. On information and belief, State Farm rejected Plaintiff's Claim in bad faith as part of a

policy to limit its losses, notwithstanding that the Policy provides coverage for losses from

Plaintiff's losses.

39. Having complied with all conditions of the Policy and feeling that State Farm has not

7

**COMPLAINT**

1  handled her Claim appropriately, State Farm has forced Plaintiff to initiate this action to recover

2  for damages that are legally owed to her because they are covered under the Policy.

3  ## FIRST CAUSE OF ACTION

4  ## BREACH OF CONTRACT

5
6  ### (By the PLAINTIFF Against STATE FARM)

7  40. Plaintiff realleges Paragraphs 1 through 39 of this complaint as though fully set

8  forth.

9  41. Plaintiff and State Farm entered into a written insurance contract which was in effect

10
11  on September 5, 2024, which provided coverage for smoke damage. Plaintiff has performed each

    and every obligation, condition, and covenant required of her under the Policy. Alternatively,
12
13  State Farm has waived its right to insist on such compliance or should be estopped from doing

14  so. Plaintiff has demanded that State Farm pay her Claim for damages to the subject property.

15  42. State Farm has breached the Policy by unreasonably refusing to pay and by continuing

16
17  to withhold benefits now due and payable under the Policy's terms.

18  43. As a direct and proximate result of State Farm's actions, Plaintiff has incurred

19  substantial damages. As a direct and proximate result of State Farm's actions, Plaintiff has

20  suffered, to date, damages in an amount in excess of her deductible and consequential damages

21  for breach of contract.

22
23  44. As a direct and proximate result of the actions of State Farm, Plaintiff has incurred

24  and continues to incur economic losses.

25  45. As a result of State Farm's breach of the Policy, Plaintiff has sustained damages in

26  excess of this court's jurisdictional minimum, in an amount to be shown at trial.

27
28  
8

**COMPLAINT**

1

**SECOND CAUSE OF ACTION**

2

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

3

**(By the Plaintiff Against STATE FARM)**

4

46. Plaintiff realleges paragraphs 1 through 39 of this complaint as though fully set forth

5

herein.

6

7

47. Plaintiff entered into the Policy with State Farm with the understanding and

8

expectation, which was clearly understood by State Farm, that State Farm would act in good

9

faith and deal fairly pursuant to the insurance contract.

10

48. State Farm has tortiously breached its implied covenant of good faith and fair dealing

11

arising from the insurance contract by unreasonably withholding benefits due under the Policy,

12

13

and by other conduct, including that set forth below, after accepting insurance premiums from

14

Plaintiff.

15

49. Despite Plaintiff's repeated demands for payment for the damage to the subject

16

property, pursuant to the Policy, State Farm continues to refuse to make payments and continues

17

18

to engage in unlawful insurance practices. Such bad faith conduct constitutes a continuing tort

19

which is causing Plaintiff continued damages.

20

50. In the absence of a reasonable basis for doing so, and with full knowledge and

21

reckless disregard of the consequences, State Farm has failed to pay Plaintiff the benefits due

22

under the Policy.

23

24

51. State Farm engaged and continues to engage in a course of conduct to further its own

25

economic interests, in violation of its obligations to Plaintiff. This conduct includes:

26

    a.  Unreasonably and unjustifiably failing to timely and fully pay Plaintiff's Claim

27

        for damage to the subject property under the Policy;

28

9

**COMPLAINT**

b.  Unreasonably refusing payments to Plaintiff in bad faith, knowing Plaintiff's Claim for benefits under the Policy to be valid, in an attempt to coerce Plaintiff into accepting less than the fair value of her Claim;

c.  Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's Claim for benefits where the obligation to pay had become reasonably clear;

d.  Failing to thoroughly investigate Plaintiff's Claim;

e.  Handling Plaintiff's Claim in a dilatory manner, which resulted in the unnecessary delay in processing Plaintiff's Claim;

f.  Failing to objectively evaluate Plaintiff's Claim;

g.  Compelling Plaintiff to initiate litigation to obtain benefits due under the Policy;

h.  Unreasonably misrepresenting to Plaintiff pertinent facts and Policy provisions relating to the coverage at issue;

i.  Failing to abide by the rules promulgated by the Insurance Commissioner;

j.  Interpreting Plaintiff's Policy in an unduly restrictive manner; and

k.  Plaintiff is informed, believes, and thereon alleges, that State Farm has breached its duty of good faith and fair dealing owed to her by other acts or omissions which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

52. State Farm's conduct described herein constitutes part of State Farm's overall scheme to reduce payments for legitimate insurance claims. State Farm's conduct as described herein constitutes an illegal pattern and practice so pervasive as to amount to a general unfair and unlawful business practice.

10

**COMPLAINT**

53. State Farm's conduct described herein was undertaken by State Farm's officers or managing agents, identified herein as DOES 1 through 20, who were responsible for supervision and operation, reports, communications, and decisions. The conduct of these managing agents and individuals was therefore undertaken on State Farm's behalf. Further, State Farm had advance knowledge of the action and conduct of these individuals whose actions and conduct were ratified, authorized, or approved by managing agents, whose precise identities are unknown to Plaintiff at this time and are therefore identified and designated herein as DOES 1 through 20.

54. As a proximate result of State Farm's wrongful conduct, Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, in an amount to be proved at trial.

55. As a result of State Farm's breach of the Policy, Plaintiff has incurred attorneys' fees and costs as a result of her efforts to secure the benefits of her Policy in an amount to be proved at trial.

### THIRD CAUSE OF ACTION

### BAD FAITH DENIAL OF INSURANCE CLAIM

### (By the PLAINTIFF Against STATE FARM)

56. Plaintiff realleges paragraphs 1 through 39 of this complaint as though fully set forth herein.

57. Plaintiff suffered a loss under the Policy issued by State Farm.

58. Plaintiff's Claim was for a covered loss and policy benefits were wrongfully withheld.

59. State Farm failed to conduct a full, fair, prompt, and thorough investigation.

60. State Farm has put their own interests above those of Plaintiff and have, in bad faith, failed or refused to perform their obligations under the Policy and under the laws of California.

11

**COMPLAINT**

1    61. State Farm denied Plaintiff's claim in bad faith by, among other conduct, (a) failing or

2   refusing to perform a fair, objective, and thorough investigation of the claim as required by the

3   California Insurance Code; (b) asserting coverage defenses that were legally and/or factually

4   invalid and thereby delaying resolution of Plaintiff's claim; (c) placing unduly restrictive

5   interpretations on the Policy terms for the purpose of denying coverage due under the Policy; (d)

6

7   failing to give Plaintiff's interests equal consideration with its own; and (e) forcing Plaintiff to

8   institute litigation to recover amounts due under the Policy.

9    62. Based on the above, Plaintiff alleges that State Farm has committed institutional bad faith

10   that is part of a repeated pattern of unfair practices and not an isolated occurrence. The pattern of

11   unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded in

12   State Farm's established company policy.

13

14    63. State Farm's failure to properly investigate the Claim was a substantial factor in

15   causing Plaintiff's harm.

16    64. When investigating Plaintiff's Claim, State Farm had a duty to diligently search for

17   and consider evidence that supported coverage of the claimed loss.

18

19    65. In the absence of a reasonable basis for doing so, and with full knowledge and

20   reckless disregard of the consequences, State Farm has failed to pay Plaintiff the benefits due

21   under the Policy.

22    66. As a proximate result of State Farm's wrongful conduct, Plaintiff has suffered, and

23

24   will continue to suffer in the future, damages under the Policy, plus interest, in an amount to be

25   proved at trial.

26    67. As a result of State Farm's breach of the Policy, Plaintiff has incurred attorneys' fees

27

28                                             12

1 and costs as a result of her efforts to secure the benefits of her Policy in an amount to be proved

2 at trial.

3 ### FOURTH CAUSE OF ACTION

4 ### DECLARATORY RELIEF

5
6 **(By the PLAINTIFF Against STATE FARM)**

7 68. Plaintiff realleges paragraphs 1 through 39 of this complaint as though fully set forth

8 herein.

9 69. Under California Code of Civil Procedure section 1060, et seq., the court may declare

10 rights, duties, statuses, and other legal relations, regardless of whether further relief is or could

11
12 be claimed.

13 70. An actual controversy has arisen between Plaintiff and State Farm as to their respective

14 rights and duties under the Policy.

15 71. Resolution of the parties' respective rights and duties under the Policy by declaration of

16 the Court is necessary, as there exists no adequate remedy at law.
17

18 72. Plaintiff alleges and contends, with respect to the Policy coverage, Plaintiff's losses are

19 covered under the Policy.

20 73. Plaintiff alleges and contends that State Farm wrongly denied coverage.

21 74. Upon information and belief, Plaintiff alleges that State Farm disputes and denies each of

22
23 Plaintiff's contentions set forth in this Cause of Action.

24 Plaintiff, therefore, seeks a declaratory judgment regarding each of the Plaintiff's contentions set

25 forth in this Cause of Action. A declaratory judgment determining that Plaintiff is due coverage

26 under the Policy, as set forth above, will help to ensure Plaintiff recovers for the losses related to

27 the smoke damage.

28

<div align="center">13</div>

<div align="center">COMPLAINT</div>

1

## PRAYER FOR RELIEF

2      WHEREFORE, Plaintiff prays for judgment against State Farm as follows:

3    1. For general and compensatory damages in an amount to be determined at trial;

4    2. For exemplary and punitive damages in an amount to be determined at trial;

5
6    3. For PLAINTIFF's costs of suit;

7    4. For PLAINTIFF's reasonable attorney's fees incurred in this action pursuant to statute;

8    5. For pre-judgment interest and all other interests to which PLAINTIFF is entitled;

9    6. For such other relief as the Court may deem proper.

10

11
     DATED:      September 2, 2025                    **MEGERDOMIAN LAW OFFICES, P.C.**
12

13

14
                                          By:
15
                                                **LINET MEGERDOMIAN, Esq.**
16                                              Attorney for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28                                          14

**COMPLAINT**

1

## REQUEST FOR JURY TRIAL

2    Plaintiff, Debbie Silvia, hereby requests a trial by jury in this action.

3

4

5
     DATED:     September 2, 2025                    **MEGERDOMIAN LAW OFFICES, P.C.**
6

7

8
                                          By: _____
9
                                              **LINET MEGERDOMIAN, Esq.**
10                                            Attorney for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          15

                                     **COMPLAINT**

# EXHIBIT A

**State Farm General Insurance Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

PO Box 2356
Bloomington IL 61702-2356

AT2          H-02-0186-FAD9  F H W
        000928 3200
SILVIA, DEBBIE L
28857 AVENIDA DE LAS FLORES
MENIFEE CA   92587-8853



| POLICY NUMBER | 05-CG-S899-5 |
|---|---|
| **HOMEOWNERS AVAILABLE COVERAGE NOTICE** | |
| | **SEE RENEWAL DECLARATIONS** |

ıļıＵ|||ı．ıḥılıｍｌıＵ.ıＬıＵ|ıｍｌḥıｊ.ｍｌļḥｍ|||ｌｈ|ḥｌｌゥｌ|ｍ

STFC
0105-0020

It is important that you occasionally review the coverage s and limits in your Homeowners policy to be certain your needs
are being met. The following information will assist you in the review process.

The coverage limits for Coverage A - Dwelling, Coverage B  - Personal Property, Coverage L - Personal Liability, and
Coverage M - Medical Payments to Others are listed on the  accompanying renewal declarations. Please review these
limits to determine if they are adequate in the event of a loss.

The following is a **partial list** of the optional coverages you have **not** added to your policy. They may be available to you for
a premium adjustment.

Back-Up of Sewer or Drain (for damage caused by water from outside the plumbing system which backs up
through sewers or drains)

Business Property (for higher limits)

Business Pursuits Liability (for teachers, school administrators, sales persons, and clerical employees)

Child Care Liability (for those providing child care in their home)

Firearms (for broadened coverage and higher limits)

Cyber Event, Identity Restoration, and Fraud Loss

Incidental Business Liability (for those with an incidental office, studio, or school in the home)

Loss Assessment (for neighborhoods with Homeowners Associations)

Nurses' Professional Liability (for those in the nursing profession)

Personal Injury (for your liability to others caused by certain acts of libel, slander,
invasion of privacy, or false arrest)

Silverware/Goldware (for broadened coverage and higher limits)

Adult Day Care Liability (for those providing adult day care in their home)

Energy Efficiency Upgrade (for replacing damaged heating unit, air conditioning unit, or water

**\*\*Continued on Reverse Side\*\***

152349.1    o16022b    03-23-2023

| Prepared  SEP 12 2023 | **Agent**<br>**Telephone** | THANG VO INSURANCE AGENCY INC<br>(408) 273-8789 | Prepared |
|---|---|---|---|

006456   420    I
N .    PD,DR,GB,I2,SD,U2,H2,H7

heater with equipment that is more energy efficient)

Home Rental (for those who rent out their home for more than 30 nights yearly)

Increased Personal Property (for higher limits above the standard policy limit, which is a percentage
of your Coverage A-Dwelling amount)

**This notice contains only a general description of the co verages and is not a contract. All coverages are subject to
the provisions in the policy itself.** Should you have a need for any of these coverages or high er limits, contact your State
Farm Agent to discuss details, cost and eligibility.

**IMPORTANT INFORMATION ABOUT DAMAGE CAUSED BY FLOODING**

This policy does not cover damage to your property caused   by flooding. You may be eligible for such coverage through the
National Flood Insurance Program ("NFIP"), if you live in  a participating community. For more information, contact your
State Farm® agent or visit floodsmart.gov.

**State Farm General Insurance Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

PO Box 2356
Bloomington IL 61702-2356

 **StateFarm**

H-02-0186-FAD9  F  H W
3200

SILVIA, DEBBIE L
28857 AVENIDA DE LAS FLORES
MENIFEE CA  92587-8853

## RENEWAL DECLARATIONS

| | |
|---|---|
| **AMOUNT DUE:** | **None** |
| **Payment is due by  BILLED THROUGH SFPP** | |

**Policy Number:**    05-CG-S899-5

**Policy Period:**  12 Months
**Effective Dates:** NOV 08 2023 to NOV 08 2024
The policy period begins and ends at 12:01 am standard time at the residence premises.

### Homeowners Policy

**Location of Residence Premises**
28857 AVENIDA DE LAS FLORES
MENIFEE CA 92587-8853

**Your State Farm Agent**
THANG VO INSURANCE AGENCY INC
391 JACKLIN RD
MILPITAS CA      95035-3225

**Phone:** (408) 273-8789

| **Construction:** | Frame |
|---|---|
| **Year Built:** | 1979 |

**Roof Material:**  Composition Shingle
**Roof Installation Year:**   2000

### Automatic Renewal

If the **POLICY PERIOD** is shown as **12 MONTHS**, this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

### IMPORTANT MESSAGES

This policy includes building code upgrade coverage of  $32,430. Refer to the Important Notice for possible terms, limits, conditions, or restrictions
Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

### PREMIUM

| | |
|---|---|
| **Annual Premium** | $1,539 00 |
| *Your premium has already been adjusted by the following:* | |
| Home Alert Discount                          Claim Record Discount | |

| **Total Premium** | **$1,539.00** |
|---|---|

Prepared  SEP 12 2023
HO-2000
006457  420    I
N      PD,DR,GB,I2,SD,U2,H2,H7

*Thanks for letting us serve you.  We appreciate our long term customers.*

Page 1 of 4

(a.f:2033)  04-24-2019

**&. StateFarm·**

| **NAMED INSURED** | **MORTGAGEE AND ADDITIONAL INTERESTS** |
|---|---|

SILVIA, DEBBIE L

**Mortgagee**
ROCKET MORTGAGE LLC               Loan Number:
ISAOA                             3469678758
PO BOX 202070
FLORENCE SC  29502-2070

### SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Dwelling | $ 324,300 |
| Other Structures | $ 32,430 |
| B Personal Property | $ 243,225 |
| C Loss of Use | $ 97,290 |

| Additional Coverages | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

### SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $ 300,000 |
| Damage to the Property of Others | $ 1,000 |
| M Medical Payments to Others (Each Person) | $ 1,000 |

### INFLATION

Inflation Coverage Index: 387.8

### DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses | $ 1,000 |

### LOSS SETTLEMENT PROVISIONS

A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

SEP 12 2023

**05-CG-S899-5**



## FORMS, OPTIONS, AND ENDORSEMENTS

| | |
|---|---|
| HW-2105 | Homeowners Policy |
| Option ID | Increase Dwlg up to $64,860 |
| Option OL | Ordinance/Law   10%/  $32,430 |
| Option JF | Jewelry and Furs $2,500 Each |
| | Article/$5,000 Aggregate |
| HO-2420 | Form 438bfu NS Lndr Loss Pay |
| HO-2779 | Wildfire Response End |
| HO-2362 | State of Emergency Amendatory |
| HO-2213 | Amendatory Endorsement |

## ADDITIONAL MESSAGES

The limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.

**CALIFORNIA LAW REQUIRES US TO PROVIDE THE FOLLOWING NOTICE: Our records indicate that you have not purchased earthquake coverage.**

Anti-Fraud Disclosure - For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

State Farm uses geographic rating that considers wildfire risk associated with your address. The range of available premium adjustments is currently   -41.7% to  376.9%, and your adjustment is    17.0%. If the listed address is not correct, the premium adjustments may be impacted. To appeal the premium due to an incorrect address, please contact your State Farm® agent.

### Other limits and exclusions may apply - refer to your policy

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm General Insurance Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm General Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaurell*
Secretary

*Thomas Conley*
President

**&StateFarm·**

**Your coverage amount....**
It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an Xactware estimate using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home. State Farm® does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

HO-2000

Page 4 of 4

05-CG-S899-5    006459

553-4350 CA
Page 1 of 1

## IMPORTANT NOTICE

### Building Code Upgrade Coverage



In accordance with California law, this notice pertains to terms, limits, conditions, or restrictions for building code upgrade coverage.

If your policy includes building code upgrade coverage:

- The limit for building code upgrade is stated in the Declarations as a percentage of the Coverage A limit. This is an additional amount of insurance and applies to building structures on the residence premises.

- Any payment for building code upgrade will be based on any ordinance or law, in effect at the time of the loss, regulating the construction or repair of the damaged property.

- We will not pay for any increased cost of construction due to any original or subsequent construction to a building structure that did not comply with a building, zoning, or land use ordinance or law in effect when the construction was performed.

- We will not pay more than the increased cost to repair or rebuild the building structure at the same premises, or another premises in the same general vicinity if relocation is required by ordinance or law, with the same height, floor area, and style.

---

*DISCLAIMER: This notice is not a statement of contract. This notice does not change, modify, or invalidate the provisions, terms, or conditions as set forth in your State Farm policy booklet, the most recently issued declarations, and any applicable endorsements.*

---

553-4350 CA

553-4309 CA

## Important Notice About Your Policy

**NEW COVERAGE OPTIONS are now available**

- **Option ID – Increased Dwelling Limit**  If your home is insured for at least 100% of its estimated replacement cost, Option ID – Increased Dwelling Limit is automatically part of your policy. Option ID provides an additional 20% of the coverage on your home in case the amount to repair or replace it exceeds the coverage. You may increase the coverage provided by Option ID to 50% of the coverage on your home for additional premium.

- **Personal property coverage**  A State Farm® Homeowners policy typically provides coverage for household furnishings and other personal property equal to 75% of the coverage on your home. If you don't need that much coverage for your personal property, you may be eligible to lower it to 25% or 50% of the coverage on your home.

If you'd like more information or to make these coverage changes, please contact your State Farm agent.

**553-4309 CA**

(CONTINUED)

553-4440 CA
Page 1 of 1

## IMPORTANT NOTICE

### WILDFIRE MITIGATION DISCOUNTS AVAILABLE

The following discounts are available for policyholders who take certain proactive steps to protect their dwelling from wildfire:

- **Wildfire Mitigation Discount – Community Level**
  - o A -2% basic premium adjustment will apply to policies located within a community that is recognized by the Firewise USA® Program.
- **Wildfire Mitigation Discount – Property Level**
  - o A -5% basic premium adjustment will apply to policies that meet certain qualification criteria for property characteristics such as roof material, defensible space, and siding material.

Please refer to the Renewal Declarations page to see whether these discounts apply to your policy. If you would like to discuss the criteria for this discount or appeal the premium adjustment, please contact your State Farm® agent.

---

**DISCLAIMER:** *This notice only provides a general summary of changes to your State Farm policy. This notice is not a statement of contract. This notice does not change, modify, or invalidate the provisions, terms, or conditions as set forth in your State Farm policy booklet, the most recently issued declarations, and any applicable endorsements.*

---

553-4440 CA

553-3158 CA

## Important Reminder . . .

Under the Utility Rating Plan, premiums may increase when any of the utility systems (electrical, plumbing, heating, and cooling) in your dwelling insured by this policy become 40 years old. Your premiums may be reduced if you have:

(1) Completely replaced all utility systems (electrical, plumbing, heating, and cooling) in the last 40 years; or

(2) Replaced the heating equipment, air conditioning equipment, electrical service entrance and distribution panel in the last 16 years.

Please ask your State Farm® agent for details.

553-3158 CA (C)      (11/09)

(CONTINUED)

05-CG-S899-5      006460

553-2798



---

# IMPORTANT NOTICE . . . Discounts and Rating

The longer you are insured with State Farm® and the fewer claims you have, the lower your premium. For policyholders insured by State Farm for three or more years, the Claim Free Discount Plan provides a premium discount if you have not had any claims considered for the Plan in the most recent three-year period since becoming insured with State Farm. Premium adjustments under the Claim Record Rating Plan are based on the number of years you have been insured with State Farm and on the number of claims that we consider for the Plan. Depending on the Plan(s) that applies in your state/province, claims considered for the Plans generally include claims resulting in a paid loss and may include weather-related claims. Additionally, depending on your state/province's plan and your tenure with State Farm, any claims with your prior insurer resulting in property damage or injury may also influence your premium. For further information about whether a Claim Free Discount is in effect in your state/province, the Claim Record Rating Plan that applies in your state/province, and the claims we consider for the Plans, please contact your State Farm agent.

553-2798 (C)      (10/07)

553-4218 CA.1
Page 1 of 1

## IMPORTANT NOTICE

### Premium Adjustment

Insurance premiums have been adjusted to more adequately reflect expected costs. Any premium adjustment is reflected on your enclosed renewal notice and may be impacted by several factors including the coverage you have, and applicable discounts or charges.

The enclosed Renewal Declarations reflects your new premium.

We want to assure you that State Farm® works hard to offer you the best combination of cost, service, and protection. We will continue doing our best to make the most effective use of your premium dollars and give you fast, friendly service when you need it.

If you have any questions about your premium or policy coverages, please contact your State Farm agent.

553-4218 CA.1

(CONTINUED)

553-4157

# NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Declarations are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page. Any coverage forms or endorsements included with your Renewal Declarations are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Declarations will be sent to you as an Amended Declarations Page or as an endorsement to your policy. You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

553-4157 (C)



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# State Farm®
# Homeowners Policy

**California**
HW-2105

# HOMEOWNERS POLICY
## TABLE OF CONTENTS

AGREEMENT ...............................................1

DEFINITIONS ..............................................1

DEDUCTIBLE ..............................................5

SECTION I – PROPERTY COVERAGES ....................5

  COVERAGE A – DWELLING....................................5

    Dwelling.................................................5

    Other Structures ...................................5

    Property Not Covered.............................5

  COVERAGE B – PERSONAL PROPERTY ..............5

    Property Covered ...................................5

    Special Limits of Liability ........................6

    Property Not Covered.............................6

  COVERAGE C – LOSS OF USE..............................7

    Additional Living Expense ........................7

    Fair Rental Value....................................8

    Prohibited Use .......................................8

  SECTION I – PROPERTY SUBJECT TO LIMITATIONS........................................8

  SECTION I – ADDITIONAL COVERAGES..............9

    Debris Removal......................................9

    Temporary Repairs..................................9

    Trees, Shrubs, and Landscaping ..............9

    Fire Department Service Charge.................10

    Property Removed ................................10

    Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money....................10

    Power Interruption ...............................10

    Refrigerated Products ...........................10

    Arson Reward.......................................10

    Volcanic Action.....................................11

    Collapse ..............................................11

    Locks and Remote Devices..............................12

    Fuel Oil Release...................................12

    Home Certification.................................12

INFLATION COVERAGE .........................................12

SECTION I – LOSSES INSURED ................................12

  COVERAGE A – DWELLING...................................12

  COVERAGE B – PERSONAL PROPERTY ............12

SECTION I – LOSSES NOT INSURED.......................15

SECTION I – LOSS SETTLEMENT ...........................19

  COVERAGE A – DWELLING...................................19

    A1 – Replacement Cost Loss Settlement – Similar Construction ................................19

    A2 – Replacement Cost Loss Settlement – Common Construction.........................................19

  COVERAGE B – PERSONAL PROPERTY ............19

    B1 – Limited Replacement Cost Loss Settlement ........................................19

    B2 – Depreciated Loss Settlement...................20

SECTION I – CONDITIONS.........................................20

    Insurable Interest and Limit of Liability .............20

    Your Duties After Loss ...........................20

    Loss to a Pair or Set .........................21

    Appraisal.............................................21

    Other Insurance....................................22

    Suit Against Us .....................................22

    Our Option ..........................................22

    Loss Payment......................................22

    Abandonment of Property................................23

    Mortgagee Clause ...............................23

    No Benefit to Bailee.............................23

    Recovered Property.............................23

    Assignment of Claim............................23

SECTION II – LIABILITY COVERAGES.....................23

  COVERAGE L – PERSONAL LIABILITY ..............23

  COVERAGE M – MEDICAL PAYMENTS TO OTHERS ........................................24

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

**SECTION II – ADDITIONAL COVERAGES**.............24
 Claim Expenses .................................................24
 First Aid Expenses ...........................................24
 Damage to Property of Others ..........................24
**SECTION II – EXCLUSIONS**......................................25
**SECTION II – CONDITIONS** ......................................29
 Limit of Liability .................................................29
 Severability of Insurance ..................................29
 Duties After Loss ..............................................29
 Coverage M Requirements ...............................29
 Payment of Claim – Coverage M or Damage
 to Property of Others .........................................30
 Suit Against Us ..................................................30
 Bankruptcy of an Insured .................................30
 Other Insurance – Coverage L ..........................30
**SECTION I AND SECTION II – CONDITIONS**............30
 Policy Period .....................................................30
 Concealment or Fraud.......................................30
 Liberalization Clause .........................................30
 Waiver or Change of Policy Provisions ..............30
 Cancellation.......................................................30
 Nonrenewal .......................................................31
 Assignment of Policy .........................................31

 Subrogation and Reimbursement......................31
 Death..................................................................31
 Conformity to State Law ....................................31
 Premium ............................................................32
 Right to Inspect..................................................32
 Joint and Individual Interests.............................32
 Change of Policy Address .................................32
 Our Rights Regarding Claim Information...........32
 Duties Regarding Claim Information..................33
**WORKERS' COMPENSATION** .....................................33
**OPTIONAL POLICY PROVISIONS**.............................35
 Option AI – Additional Insured...........................35
 Option BP – Business Property .........................35
 Option BU – Business Pursuits .........................35
 Option FA – Firearms ........................................36
 Option ID – Increased Dwelling Limit ...............37
 Option IO – Incidental Business ........................37
 Option JF – Jewelry and Furs............................38
 Option OL – Building Ordinance or Law............38
 Option SG – Silverware and Goldware
 Theft ..................................................................39

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

## HOMEOWNERS POLICY

### AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true; and

4. this policy contains all of the agreements between *you* and *us* and any of *our* agents.

Unless otherwise indicated in the application, *you* state that during the five years preceding the time of *your* application for this insurance *you* have not had any losses, insured or not.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

### DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   *Bodily injury* does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any *insured* to any other person;

   b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any *insured* to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A

structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

A *building structure* includes:

a. the foundation supporting the structure, including:

   (1) slabs;

   (2) basement walls;

   (3) crawl space walls;

   (4) footings; and

   (5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

3. *"business"* means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether

1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

it is continuous or regular, is a secondary or supplemental source of income, or is an *insured's* principal means of livelihood. Profit and profit motive are irrelevant.

*Business* does not include:

a. volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the *insured*;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power, if:

   (1) the power generated is intended primarily for consumption on the *residence premises*; and

   (2) any resulting income is incidental, including but not limited to:

      (a) utility bill credits; or

      (b) incidental income;

      derived from sending excess power back to the electricity grid; or

e. ownership of the *residence premises* by the person or organization shown in the *Declarations* as Additional Insured.

4. *"Declarations"* means the policy *Declarations*, any amended *Declarations*, the most recent renewal *Declarations*, an Evidence of Insurance form, or any endorsement changing any of these.

5. *"diminution in value"* means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

6. *"dwelling"* means the *building structure* on the *residence premises* used as the primary private residence and includes structures attached to the *dwelling*.

7. *"fungus"* means any type or form of *fungus*, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

8. *"insured"* means:

a. *you*;

b. *your relatives*; and

c. any other person under the age of 21 in the care of a person described above.

Under Section II, *insured* also means:

d. the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by *you* or a person included in 8.b. or 8.c. above. A person or organization using or having custody of these animals or watercraft in the course of a *business*, or without permission of the owner, is not an *insured*; and

e. with respect to any vehicle to which this policy applies, any person while engaged in *your* employment or the employment of a person included in 8.b. or 8.c. above.

9. *"insured location"* means:

a. the *residence premises*;

b. the part of any other premises, other structures, and grounds used by *you* as a residence. This includes premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

c. any premises used by *you* in connection with the premises included in 9.a. or 9.b. above;

d. any part of a premises not owned by an *insured* but where an *insured* is temporarily residing;

e. land owned by or rented to an *insured* on which a one or two family dwelling is being constructed as a residence for an *insured*;

f. individual or family cemetery plots or burial vaults owned by an *insured*;

g. any part of a premises occasionally rented to an *insured* for purposes other than *business*;

2

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

h. vacant land owned by or rented to an *insured*. For the purposes of this definition, vacant land does not include:

(1) farm land;

(2) land containing a residence; or

(3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the *insured*; or

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

10. *"loss insured"* means a loss as described under **SECTION I – LOSSES INSURED, COVERAGE A – DWELLING** and **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

11. *"motor vehicle"*, when used in Section II of this policy, means:

a. a land *motor vehicle* designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational or utility vehicle" while off an *insured location*. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an *insured*. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d. a "locomotive" while off an *insured location*. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an *insured*. "Leased" does not include temporary rental;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, tele-handler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an *insured* while off an *insured location*. "Leased" does not include temporary rental; and

f. any vehicle while being towed or pushed by or carried on a vehicle included in 11.a. through 11.e. above.

The following are not *motor vehicles*:

a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 11.a. through 11.e. above;

b. a motorized land vehicle in storage on an *insured location* not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c. a motorized golf cart while used for golfing purposes;

d. a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

e. a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

12. *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a. *bodily injury*; or

b. *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one *occurrence*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

13. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

14. **"relative"** means any person related to **you** by:

    a. blood;

    b. adoption;

    c. marriage; or

    d. civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

    and who resides primarily with **you**.

15. **"residence employee"** means an employee of an **insured**, or an employee leased to an **insured** by a labor leasing firm under an agreement between an **insured** and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for **you**. This does not include employees while performing duties in connection with the **business** of an **insured**.

16. **"residence premises"** means:

    a. the one, two, three, or four family dwelling, other structures and grounds; or

    b. that part of any other **building structure**;

    where **you** reside and which is shown in the **Declarations**.

17. **"State Farm Companies"** means one or more of the following:

    a. State Farm Mutual Automobile Insurance Company;

    b. State Farm Fire and Casualty Company; and

    c. subsidiaries or affiliates of either 17.a. or 17.b. above.

18. **"vacant dwelling"** means:

    a. a dwelling:

       (1) that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

       (2) where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

       A dwelling will be considered occupied only if it is being used as a habitual place of residence with **your** knowledge and approval.

    b. A dwelling that is under active construction will not be considered a **vacant dwelling**. A dwelling is under active construction when it is:

       (1) being built as a new structure;

       (2) being repaired due to damage otherwise covered by this policy; or

       (3) undergoing substantial improvements, renovations, remodeling, or modifications;

       and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

19. **"we"**, **"us"**, and **"our"** mean the Company shown in the **Declarations**.

20. **"you"** and **"your"** mean the person or persons shown as "Named Insured" in the **Declarations**. If a "Named Insured" shown in the **Declarations** is a human being, then **you** and **your** include:

    a. a spouse of a "Named Insured";

    b. a party to a civil union with a "Named Insured";

    c. a domestic partner of a "Named Insured"; or

    d. a person in a substantially similar legal relationship with a "Named Insured";

    if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the *Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1. **Dwelling.** *We* cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2. **Other Structures.** *We* cover other structures on the *residence premises*, separated from the *dwelling* by clear space. Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

   *We* do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

      (1) duties of the *insured's* employment by another; and

      (2) performed solely by the *insured*; or

   c. rented or held for rental unless:

      (1) rented to a person who is a tenant of the *dwelling*;

      (2) rented for use solely as a private garage; or

      (3) rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3. **Property Not Covered.** *We* do not cover:

   a. land, including the land necessary to support any Coverage A property. *We* also do not cover:

      (1) any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

      (2) the costs of repair techniques designed to compensate for or prevent land instability

to any property, whether or not insured under Coverage A;

b. trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

c. systems and equipment used to generate electrical power, unless:

   (1) the power generated is intended primarily for consumption on the *residence premises*; and

   (2) any resulting income is incidental, including but not limited to:

      (a) utility bill credits; or

      (b) incidental income;

      derived from sending excess power back to the electricity grid.

### COVERAGE B – PERSONAL PROPERTY

1. **Property Covered.**

   a. *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

      (1) owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

      (2) owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

      (3) owned by roomers, boarders, tenants, and other residents, any of whom are related to *you*.

   b. *We* cover personal property usually located at an *insured's* residence, other than the *residence premises*, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

(1) in a newly acquired principal residence for the first 30 days after *you* start moving the property there. If the *residence premises* is a newly acquired principal residence, personal property in *your* immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2) of a student who is an *insured* while located at a residence away from the *residence premises*.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b. $1,500 on property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, while on the *residence premises*. This coverage is limited to $750 on such property away from the *residence premises*.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c. $10,000 on electronic data processing system equipment used or intended for use in a *business*, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

d. $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f. $1,500 on trailers not used with watercraft;

g. $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h. $2,500 for loss by theft of firearms;

i. $2,500 for loss by theft of silverware and goldware;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k. $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

(1) designed for assisting persons with disabilities;

(2) not designed for travel on public roads; and

(3) not subject to motor vehicle registration; and

l. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2. **Property Not Covered.** *We* do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. However, *we* do cover those vehicles or machines:

(1) that are:

(a) not designed for travel on public roads; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

(b) not subject to motor vehicle registration;

(2) and that are:

(a) used primarily to service the **insured location**; or

(b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system. **We** also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts. This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to **you**;

g. property regularly rented or held for rental to others by an **insured**. This does not apply to property of an **insured**:

(1) in a sleeping room when the **dwelling** is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(2) on the **residence premises** if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the **residence premises**;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or

motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records. This does not apply to any recording or storage media for electronic data processing. **We** will cover the cost of blank books, cards, or other blank material plus the cost of labor **you** incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

## COVERAGE C – LOSS OF USE

The most **we** will pay for the sum of all losses combined under **Additional Living Expense, Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the **Declarations** for **Coverage C – Loss of Use.**

1. **Additional Living Expense. When** a **loss insured** causes the **residence premises** to become uninhabitable, **we** will pay the reasonable and necessary increase in cost incurred by an **insured** to maintain their normal standard of living for up to 24 months.

7

© Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

*Our* payment is limited to incurred costs for the shortest of:

a. the time required to repair or replace the premises;

b. the time required for *your* household to settle elsewhere; or

c. 24 months.

This period of time is not limited by the expiration of this policy.

In the event a *loss insured* arising from a state of emergency, as defined in Section 8558 of the Government Code, causes the *residence premises* to become uninhabitable, *we* may grant an extension of up to 12 additional months, for a total of 36 months, if *you*, acting in good faith and with reasonable diligence, encounter a delay or delays in the reconstruction process that are the result of circumstances beyond *your* control. Circumstances beyond *your* control include, but are not limited to:

a. unavoidable construction permit delays;

b. lack of necessary construction materials; or

c. lack of available contractors to perform the necessary work.

*We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use. *We*** will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy if the damage had occurred to property on the *residence premises*;

b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

c. the action of the civil authority is taken in response to:

(1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

(2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

(3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

*We* will not pay for loss or expense due to cancellation of a lease or agreement.

**SECTION I – PROPERTY SUBJECT TO LIMITATIONS**

1. *We* will not pay more than a total of $5,000 for all loss by *fungus* to:

a. **COVERAGE B – PERSONAL PROPERTY** caused by or directly resulting from a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**; and

b. **COVERAGE A – DWELLING** property caused by or directly resulting from a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY** or a loss not otherwise excluded under **SECTION I – LOSSES NOT INSURED**.

Regardless of the number of structures or other property items insured, this single $5,000 limit of insurance is the most *we* will pay for loss in any one

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019
HW-2105

*occurrence* for all Section I coverages and OPTIONAL POLICY PROVISIONS combined.

2. This limitation applies to loss to all insured property, including all costs or expenses for:

   a. any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair, or replacement of that property, by *fungus*;

   b. any remediation of *fungus*, including the cost or expense to:

      (1) remove or clean the *fungus* from covered property or to repair, restore, or replace that property;

      (2) tear out and replace any part of the building or other property as needed to gain access to the *fungus*;

      (3) contain, treat, detoxify, neutralize, or dispose of or in any way respond to or assess the effects of the *fungus*; or

      (4) remove any property to protect it from the presence of or exposure to *fungus*;

   c. the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to

## SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping.

   b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a *loss insured* to Coverage A property; or

      (2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

         (a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

         (b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: **Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief,** or **Theft.**

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A – DWELLING.** *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

4. **Fire Department Service Charge.** *We* will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

   a. *We* will pay up to $1,000 for:

      (1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

      (2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      *We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

c. Defense:

   (1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

   (2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

   (3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a *loss insured*.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

regardless of the number of persons providing information.

10. **Volcanic Action.** **We** will pay for accidental direct physical loss to a covered **building structure** or covered property contained in a **building structure** resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. airborne volcanic shock waves;

b. ash, dust, or particulate matter; or

c. lava flow.

**We** will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered **building structure** or covered property contained in a **building structure**.

All volcanic eruptions that occur within any 360-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** **We** will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a **building structure** or any part of a **building structure**.

a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a **building structure** or any part of a **building structure**. Collapse does not include any of the following:

(1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

(2) substantial structural impairment;

(3) imminent or threatened collapse;

(4) a **building structure** or any part of a **building structure** that is in danger of falling down or caving in; or

(5) a part of a **building structure** that is standing even if:

(a) it has separated from another part of the **building structure**; or

(b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

b. The collapse must be directly and immediately caused by one or more of the following:

(1) perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.** These perils apply to **building structures** covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

(2) decay or deterioration of, or damage from animals, birds, or insects to:

(a) a connector; or

(b) a structural member of a **building structure**;

The decay, deterioration, or damage must be hidden from view and unknown to all **insureds** prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the **building structure**, if the collapse occurs during the course of the construction of the **building structure**.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a **building structure** or any part of a **building structure**.

This coverage does not increase the limit applying to the damaged property.

11

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

12. **Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or re-program locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13. **Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14. **Home Certification.** If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

## INFLATION COVERAGE

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

### COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a ***building structure***.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

   a. This includes:

      (1) the impact of a vehicle;

      (2) an object propelled from the tire or body of a vehicle;

      (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

      (4) a vehicle door or trunk lid being closed on personal property.

   b. This peril does not include loss:

      (1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

      (2) caused by shifting of the load being carried in or on a vehicle; or

      (3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force,

power, or movement of another vehicle.

7. **Smoke,** meaning abrupt and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an ***insured*** or by any other person regularly residing on the ***insured location.*** Property of a student who is an ***insured*** is covered while located at a residence away from the ***residence premises,*** if the theft is committed by a person who is not an ***insured***;

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

      (3) from the part of a ***residence premises*** rented to others:

         (a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the ***residence premises*** is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

         (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

         (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts,

13                                                                                      HW-2105

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the **residence premises** of:

    (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from the **residence premises**;

    (2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

    (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped; or

b. caused by or resulting from:

    (1) freezing;

    (2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

    (3) the pressure from or presence of tree, shrub, or plant roots.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless **you** have used reasonable care to prevent freezing; or

b. loss on the **residence premises** unless **you** have used reasonable care to:

    (1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

    (2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

or decrease of artificially generated electrical current. *We* will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the *residence premises*. *We* will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a *building structure*.

## SECTION I – LOSSES NOT INSURED

1. *We* will not pay for any loss to the property described in Coverage A that is caused by one or more of the items below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

   b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if *you* have used reasonable care to:

      (1) maintain heat in the *building structure* at 55 degrees Fahrenheit or higher; or

      (2) shut off the water supply and drain the system and appliances of water.

      However, if the *building structure* is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the *building structure* at 55 degrees Fahrenheit or higher for coverage to apply;

   c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

      (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

      (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

   f. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

   g. corrosion, electrolysis, or rust;

   h. wet or dry rot;

   i. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

      (1) Contaminants and pollutants include but are not limited to any:

         (a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

         (b) contaminants or pollutants resulting from any natural resource extraction activities; or

         (c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release.**

      (2) *We* also will not pay for:

         (a) losses arising from contamination or pollution caused by or resulting from

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

(b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

j. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

k. all animals, birds, or insects.

(1) This includes:

(a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

(b) costs to remove animals, birds, or insects from the covered property; and

(c) costs to prevent the animals, birds, or insects from returning to the property;

(2) However, *we* will pay for:

(a) losses caused by wild bears or deer; and

(b) the breakage of glass or safety glazing material that is a part of a *building structure*, when caused by animals, birds, or insects; or

l. pressure from or presence of tree, shrub, or plant roots.

However, *we* will pay for any resulting loss from items a. through k. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We*

will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any natural or external forces, or occurs as a result of any combination of these:

a. **Earthquake.**

However, *we* will pay for any accidental direct physical loss by fire resulting from earthquake, provided the resulting fire loss is itself a *loss insured*.

b. **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

3. *We* will not pay for, under any part of this policy, any loss that is caused by one or more of the items below, regardless of whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

b. **Earth Movement,** meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

(1) landslide, mudslide, or mudflow;

(2) sinkhole or subsidence;

(3) movement resulting from:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

(a) improper compaction;

(b) site selection;

(c) natural resource extraction activities; or

(d) excavation;

(4) erosion;

(5) pressure by surface or subsurface earth or fill; or

(6) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

However, *we* will pay for any accidental direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a *loss insured*.

c. **Water**, meaning:

(1) flood;

(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

(3) waves (including tidal wave, tsunami, and seiche);

(4) tides or tidal water;

(5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks

through a ***building structure***, sidewalk, driveway, swimming pool, or other structure;

(9) seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

(a) and is:

(i) continuous;

(ii) repeating;

(iii) gradual;

(iv) intermittent;

(v) slow; or

(vi) trickling; and

(b) from a:

(i) heating, air conditioning, or automatic fire protective sprinkler system;

(ii) household appliance; or

(iii) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time; or

(10) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(9) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

d. **Neglect**, meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

e.  **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f.  ***Fungus,*** including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair, or replacement of that property, by ***fungus***;

(2) any remediation of ***fungus***, including the cost or expense to:

(a) remove or clean the ***fungus*** from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the ***building structure*** or other property as needed to gain access to the ***fungus***;

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the ***fungus***; or

(d) remove any property to protect it from presence of or exposure to ***fungus***; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of ***fungus***, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, ***we*** will pay for loss as specified under **SECTION I – PROPERTY SUBJECT TO LIMITATIONS.**

g.  **Intentional Losses.** If any ***insured*** intentionally causes or procures a loss to property covered under this policy, ***we*** will not pay any ***insured*** for this loss. This applies regardless of whether the ***insured*** is charged with or convicted of a crime.

This does not apply to an ***insured*** who did not participate in, cooperate in, or contribute to causing or procuring the loss.

4.  ***We*** will not pay for any loss described in paragraphs 1., 2., and 3. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a.  conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b.  defect, weakness, inadequacy, fault, or unsoundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the ***residence premises***; or

c.  weather conditions.

However, ***we*** will pay for any resulting loss from items 4.a., 4.b., and 4.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

5.  ***We*** will not pay for, under any part of this policy, any loss consisting of the items in paragraphs 1., 2., 3., or 4. above. This exclusion does not apply if the loss is caused by a peril that is not otherwise excluded.

18

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

### COVERAGE A – DWELLING

1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**

   *We* will pay up to the applicable limit of liability shown in the *Declarations*, the reasonable and necessary cost to repair or replace with similar construction and for the same use as on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING.**

   *We* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

   *We* will pay up to the applicable limit of liability shown in the *Declarations*, the reasonable and necessary cost to repair or replace with common construction and for the same use as on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, subject to the following:

   a. *we* will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. *We* will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

b. *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

### COVERAGE B – PERSONAL PROPERTY

1. **B1 – Limited Replacement Cost Loss Settlement.**

   a. *We* will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY,** except for property listed in item b. below, subject to the following:

      (1) until repair or replacement is completed, *we* will pay only the actual cash value at the time of loss of the damaged property;

      (2) after repair or replacement is completed, *we* will pay the difference between the actual cash value at the time of loss and the cost *you* have actually and necessarily spent to repair or replace the property; and

      (3) to receive any additional payments on a replacement cost basis, *you* must complete the repair or replacement:

         (a) within 24 months from the date that *we* make the first payment toward the actual cash value of the property, or

         (b) within 36 months from the date that *we* make the first payment toward the actual cash value of the property, if the loss relates to a state of emergency as defined in Section 8558 of the Government Code.

   b. *We* will pay market value at the time of loss for:

      (1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

(2) articles whose age or history contribute sub-stantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended pur-pose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 – Depreciated Loss Settlement.**

a. *We* will pay the actual cash value at the time of loss for property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent na-ture cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

# SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

a. to the *insured* for an amount greater than the *insured's* interest; or

b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

a. give immediate notice to *us* or *our* agent and also notify:

(1) the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2) the credit card company or bank if the loss involves a credit card or bank fund trans-fer card;

b. protect the property from further damage or loss and also:

(1) make reasonable and necessary temporary repairs required to protect the property; and

(2) keep an accurate record of repair expenses;

c. prepare an inventory of damaged or stolen per-sonal property:

(1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d. as often as *we* reasonably require:

(1) exhibit the damaged property;

(2) provide *us* with any requested records and documents and allow *us* to make copies;

(3) while not in the presence of any other *insured*:

(a) give statements; and

(b) submit to examinations under oath; and

(4) produce employees, members of the *in-sured's* household, or others for examina-tion under oath to the extent it is within the *insured's* power to do so; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

e. submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

   (1) the time and cause of loss;

   (2) interest of the *insured* and all others in the property involved and all encumbrances on the property;

   (3) other insurance that may cover the loss;

   (4) changes in title or occupancy of the property during the term of this policy;

   (5) specifications of any damaged structure and detailed estimates for repair of the damage;

   (6) an inventory of damaged or stolen personal property described in 2.c.;

   (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

   (8) evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, *we* may choose to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.** If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire. If the appraisers are unable to agree upon an umpire within 15 days:

   (1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire; and

   (2) the party requesting the selection described in item b.(1) must provide the other party:

      (a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

      (b) a copy of the written application.

c. Appraisal proceedings are informal unless *you* and *we* mutually agree otherwise. For purposes of this section, "informal" means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings.

d. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the actual cash value, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*.

e. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

period of time is extended by mutual agreement, they will submit their differences to the umpire.

A written report of agreement signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*. In all instances the written report of agreement will be itemized and state separately the actual cash value, replacement cost, and if applicable, the market value of each item in dispute.

f.  To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

   (1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

   (2) an adjuster, public adjuster, or attorney with experience and training in estimating the type of property damage in dispute; or

   (3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

g.  A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

   (1) has performed services for either party with respect to the claim at issue in the appraisal; or

   (2) has a financial interest in the outcome of the claim at issue in the appraisal.

h.  Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by *you* and *us*.

i.  *You* and *we* do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

j.  Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

   (1) any other questions of fact;

   (2) questions of law;

   (3) questions of coverage;

   (4) other contractual issues; or

   (5) to conduct appraisal on a class-wide basis.

k.  A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

l.  In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either *you* or *us* but shall not be compelled.

5.  **Other Insurance.** If a loss covered by this policy is also covered by other insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6.  **Suit Against Us.** No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

   If the loss is related to a state of emergency, as defined in subdivision (b) of Section 8558 of the Government Code, the time limit to bring suit is extended to 24 months after inception of the loss.

7.  **Our Option.** *We* may repair or replace any part of the property damaged or stolen with similar property. Any property *we* pay for or replace becomes *our* property.

8.  **Loss Payment.** *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after *we* receive *your* proof of loss and:

   a.  reach agreement with *you*;

   b.  there is an entry of a final judgment; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

c.    there is a filing of an appraisal award with *us*.

9.    **Abandonment of Property.** *We* need not accept any property abandoned by an *insured*.

10.   **Mortgagee Clause.** The word "mortgagee" includes trustee.

a.    If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and *you*, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

b.    If *we* deny *your* claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1)    notifies *us* of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

(2)    pays on demand any premium due under this policy, if *you* have not paid the premium; and

(3)    submits a signed, sworn statement of loss within 60 days after receiving notice from *us* of *your* failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c.    If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

d.    If *we* pay the mortgagee for any loss and deny payment to *you*:

(1)    *we* are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2)    at *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *we* will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e.    Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11.   **No Benefit to Bailee.** *We* will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12.   **Recovered Property.** If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice. At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property. If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13.   **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

## SECTION II – LIABILITY COVERAGES

**COVERAGE L – PERSONAL LIABILITY**

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1.    pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and

2.    provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

## COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

   b. is caused by the activities of an *insured*;

   c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

   d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

## SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per

day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

   (1) that part of the damages *we* pay; or

   (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury* covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

   (1) replacement cost at the time of loss;

   (2) full cost of repair; or

   (3) the limit of liability shown in the *Declarations* for **Damage to Property of Others** for any one *occurrence*.

   c. *We* will not pay for *property damage*:

   (1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

   (2) caused intentionally by an *insured* 13 years of age or older;

   (3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

(4) arising out of:

    (a) **business** pursuits;

    (b) any act or omission in connection with a premises an **insured** owns, rents, or controls, other than the **insured location**;

    (c) a condition on the **insured location** or the ways immediately adjoining; or

    (d) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

(5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same **property damage**.

## SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

  a. **bodily injury** or **property damage** that:

    (1) was a result of a:

      (a) willful and malicious; or

      (b) criminal;

    act or omission of the **insured**;

    (2) was intended by the **insured**; or

    (3) would have been expected by the **insured** based on a reasonable person standard.

    However, exclusions a.(2) and a.(3) above do not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

    Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

    (1) **bodily injury** or **property damage** was sustained by a different person, entity, or property than was expected or intended;

    (2) **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intended;

    (3) **insured** lacked the mental capacity to control his or her conduct;

    (4) **insured** was not charged with or convicted of a criminal act or omission; or

    (5) **insured** was impaired by drugs or alcohol;

  b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits;

  c. **bodily injury** or **property damage** arising out of the rental of any part of any premises by any **insured**. This exclusion does not apply:

    (1) to the rental of the **residence premises**:

      (a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

      (b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

      (c) in part, as an office, school, studio, or private garage;

    (2) when the **dwelling** on the **residence premises** is a two, three, or four family **dwelling** and **you** occupy one part and rent the other part to others;

    (3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

    (4) to activities that are ordinarily incident to non-**business** pursuits;

  d. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

  e. **bodily injury** or **property damage** arising out of any premises currently owned or rented to

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

any *insured* which is not an *insured location*. This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*;

f. *bodily injury* or *property damage* arising out of the ownership, maintenance, use, loading, or unloading of:

(1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

   (a) solely for recreational or hobby purposes;

   (b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

   (c) weighing not more than 55 pounds at the time of operation;

   unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

   (a) *property damage* to any aircraft; or

   (b) *bodily injury* or *property damage* resulting from interference with an aircraft carrying people regardless of whether the *bodily injury* or *property damage* is sustained by people or property on the aircraft or not;

(2) a *motor vehicle* owned or operated by or rented or loaned to any *insured*; or

(3) a watercraft:

   (a) owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

   (b) owned by or rented to any *insured* if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

   (c) powered by one or more outboard motors with more than 25 total horsepower owned by any *insured*;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any *insured* if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*. Exclusion f.(3) does not apply while the watercraft is on the *residence premises*;

g. *bodily injury* or *property damage* arising out of:

(1) the entrustment by any *insured* to any person;

(2) the supervision by any *insured* of any person;

(3) any liability statutorily imposed on any *insured*; or

(4) any liability assumed through an unwritten or written agreement by any *insured*;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or *motor vehicle* not covered under Section II of this policy;

h. *bodily injury* or *property damage* caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. *bodily injury* to any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*.

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

j.  any claim made or suit brought against any *insured* by:

   (1)  any person in the care of any *insured* because of child care services provided by or at the direction of:

      (a)  any *insured*;

      (b)  any employee of any *insured*; or

      (c)  any other person actually or apparently acting on behalf of any *insured*; or

   (2)  any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

      (a)  any *insured*;

      (b)  any employee of any *insured*; or

      (c)  any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k.  *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l.  *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional;

m.  *bodily injury* or *property damage* arising out of the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, escape of, or exposure to contaminants or pollutants at or from any source or location.

Contaminants and pollutants include but are not limited to any solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, fuel oil, asbestos, or lead.

This exclusion does not apply to *bodily injury* or *property damage* arising out of smoke or fumes caused by fire or explosion.

*We* also do not cover:

   (1)  any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of contaminants or pollutants;

   (2)  any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of contaminants or pollutants; or

   (3)  contamination or pollution arising out of actually or allegedly defective building materials, nuclear substances, or waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

n.  *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

   (1)  sexual harassment, sexual molestation, or sexual misconduct;

   (2)  physical or mental abuse; or

   (3)  corporal punishment;

by the *insured*;

o.  *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

27

HW-2105

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

*We* also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*; or

p. *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power, unless:

(1) the power generated is intended primarily for consumption on the *residence premises*; and

(2) any resulting income is incidental, including but not limited to:

(a) utility bill credits; or

(b) incidental income;

derived from sending excess power back to the electricity grid.

2. Coverage L does not apply to:

a. liability:

(1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to:

(a) liability for damages that the *insured* would have in absence of the contract or agreement; or

(b) written contracts:

(i) that directly relate to the ownership, maintenance, or use of any *insured location*; or

(ii) when the liability of others is assumed by *you* prior to the *occurrence*;

unless excluded elsewhere in the policy;

b. *property damage* to property owned by any *insured* at the time of the *occurrence*;

c. *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by:

(1) fire;

(2) smoke;

(3) explosion;

(4) abrupt and accidental damage from water; or

(5) household pets, up to $500 in excess of *your* security deposit;

d. *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* under a workers' compensation, non-occupational disability, or occupational disease law;

e. *bodily injury* or *property damage* for which an *insured* under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors; or

f. *bodily injury* or *property damage* arising out of any real property any *insured* has sold or transferred. This includes but is not limited to *bodily injury* or *property damage* arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

© Copyright, State Farm Mutual Automobile Insurance Company, 2019

(1) **bodily injury** arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) **property damage** arising out of fire, smoke, or explosion.

3.  Coverage M does not apply to **bodily injury**:

a.  to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b.  to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c.  to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**; or

d.  from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1.  **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made, or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the **Declarations**. This is **our** limit for all medical expenses for **bodily injury** to one person as the result of one accident.

2.  **Severability of Insurance.** This insurance applies separately to each **insured**. This condition does not increase **our** limit of liability for any one **occurrence**.

3.  **Duties After Loss.** In case of an accident or **occurrence**, the **insured** must cooperate with **us** in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. **You** must cooperate with **us** in seeing that these duties are performed:

a.  give written notice to **us** or **our** agent as soon as possible, which sets forth:

(1) the identity of this policy and the **insured**;

(2) reasonably available information on the time, place, and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and available witnesses;

b.  immediately forward to **us** every notice, demand, summons, or other process relating to the accident or **occurrence**;

c.  at **our** request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d.  under **SECTION II – ADDITIONAL COVERAGES, Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e.  the **insured** must not, except at the **insured's** own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4.  **Coverage M Requirements. We** may require the following in regard to any Coverage M claim:

a.  written proof of claim, under oath if required, as soon as possible from the injured person, or

29
©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

when appropriate, someone acting on behalf of that person;

b. the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c. any authorizations from the injured person as *we* may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us*.

6. **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with

respect to Coverage L will be brought against *us* until the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* or *our* obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

   a. *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. *We* may waive the requirement that the notice be in writing by confirming the date and time of cancellation to *you* in writing.

   b. *We* may cancel this policy by providing notice to a named insured shown on the *Declarations*. The

notice will provide the date cancellation is effective.

   (1) When *you* have not paid the premium, *we* may cancel at any time by providing notice at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or *our* agent or under any finance or credit plan.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by providing notice at least 20 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel if there has been:

      (a) conviction of a crime having as one of its necessary elements an act increasing the hazard insured against;

      (b) discovery of fraud or material misrepresentation;

      (c) discovery of grossly negligent acts or omissions substantially increasing

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

any of the hazards insured against; or

(d) physical changes in the property insured which result in the property becoming uninsurable.

*We* may cancel this policy by providing notice at least 20 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

d. If, when *we* cancel this policy, the return premium is not refunded with the notice of cancellation, *we* will refund it within 25 days after the date cancellation takes effect. If, when *you* cancel this policy, the return premium is not refunded when this policy is returned to *us*, *we* will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** If *we* decide not to renew this policy, then, at least 75 days before the end of the current policy period, *we* will provide a nonrenewal notice to a named insured shown on the *Declarations*.

If this policy is written for a period of less than one year, *we* agree not to refuse to renew except at the end of an annual period commencing with the original or renewal effective date.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

a. **Subrogation.**

(1) Applicable to SECTION I:

If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may

waive in writing all rights of recovery against any person.

(2) Applicable to SECTION II:

If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

b. **Reimbursement.**

If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

a. *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. *insured* includes:

(1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

(2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

11. **Premium.**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations.*

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies;*

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies.* The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. *Your* purchase of this policy may allow:

(1) *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies,* subject to their applicable eligibility rules; or

(2) the premium or price for other products or services purchased by *you,* including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies.* The *State Farm*

*Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

12. **Right to Inspect.**

a. *We* have the right but are not obligated to perform the following:

(1) make inspections and surveys of the *insured location* at any time;

(2) provide *you* with reports on conditions *we* find; or

(3) recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

b. *We* do not:

(1) make safety inspections;

(2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

(3) warrant that conditions are safe or healthful; or

(4) warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to *us* and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on *our* behalf.

13. **Joint and Individual Interests.** If *you* consists of more than one person or entity, then each acts for all to change or cancel this policy.

14. **Change of Policy Address.** *We* may change the Named Insured's policy address as shown in the *Declarations* and in *our* records to the most recent address provided to *us* by:

a. *you;* or

b. the United States Postal Service.

15. **Our Rights Regarding Claim Information.**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019
HW-2105

use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to 15.a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) using any of the items described in item b.(1) above; or

(3) retaining:

(a) any of the items in item b.(1) above; or

(b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of *our* business functions;

(2) to meet *our* reporting obligations to insurance regulators;

(3) to meet *our* reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. *Our* rights under 15.a., 15.b., and 15.c. above will not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

16. **Duties Regarding Claim Information.** An *insured* or a legal representative acting on an *insured's* behalf must provide *us* with any requested authorizations related to the claim. *Our* rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

## WORKERS' COMPENSATION
### (Residence Employees)

#### COVERAGES

*We* will pay, with respect to *residence employees*:

1. under Coverage I, when due, all benefits required of an *insured* by the California Workers' Compensation Law; and

2. under Coverage II, on behalf of an *insured*, all damages for which the *insured* is legally liable because of *bodily injury* sustained by a *residence employee*. The *bodily injury* must be caused by accident or disease and arise out of and in the course of employment by the *insured* while:

a. in the United States of America, its territories or possessions, or Canada; or

b. temporarily elsewhere if the *residence employee* is a citizen or resident of the United States or Canada.

Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

These coverages apply only to *bodily injury* which occurs during the policy period. If the *bodily injury* is a disease, it must be caused or aggravated by the conditions of the *residence employee's* employment by the *insured*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

**SPECIAL DEFINITION**

**Residence employee**, as used in this coverage, means an employee of any **insured** whose duties are incidental to the ownership, maintenance or use of the **residence premises**, including the performance of household domestic services, or whose duties are personal and not in the course of the trade, **business**, profession or occupation of any **insured**.

**Residence employee** does not include any person of whom the **insured** is the parent, spouse or child. Also, **residence employee** does not include any person who, during the 90 calendar days immediately preceding injury:

1. was employed by the **insured** for less than 52 hours; or

2. earned less than $100 in wages from an **insured**.

**EXCLUSIONS**

This coverage does not apply:

1. to liability for additional compensation imposed on an **insured** under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of:

   a. the serious and willful misconduct of an **insured**; or

   b. **bodily injury** to an employee under 16 years of age and illegally employed at the time of injury;

2. to liability for **bodily injury** arising out of **business** pursuits of an **insured**;

3. to liability arising out of the discharge, harassment or coercion of, or the discrimination against any employee in violation of any law;

4. under Coverage II:

   a. to liability assumed by the **insured** under any contract or agreement;

   b. to **bodily injury** by disease unless a written claim is made or suit brought against the **insured** within 36 months after the end of the policy period;

   c. to any obligation under a workers' compensation, unemployment or disability benefits law or any similar law;

   d. to punitive or exemplary damages where insurance of liability therefor is prohibited by law or contrary to public policy;

   e. to **bodily injury** intentionally caused or aggravated by **you**.

**LIMIT OF LIABILITY COVERAGE II**

**Our** total limit of liability will not exceed $100,000 for all damages because of **bodily injury**:

1. sustained by one or more **residence employees** in any one accident; or

2. caused by disease and sustained by a **residence employee**.

**Our** total limit of liability will not exceed $500,000 for all damages arising out of **bodily injury** by disease regardless of the number of **residence employees** who sustain **bodily injury** by disease.

**APPLICABLE POLICY PROVISIONS**

The following policy provisions apply to this coverage:

1. the definitions of "**you**", "**your**", "**we**", "**us**", "**our**", "**bodily injury**", "**business**", "**insured**" and "**residence premises**";

2. **our** agreement to defend the **insured** as provided under **COVERAGE L – PERSONAL LIABILITY**;

3. **SECTION II – ADDITIONAL COVERAGES**, items:

   1. **Claim Expenses**; and

   2. **First Aid Expenses**;

4. **SECTION II - CONDITIONS**, items:

   3. **Duties After Loss**; and

   6. **Suit Against Us**;

5. **SECTION I AND SECTION II - CONDITIONS**, items:

   4. **Waiver or Change of Policy Provisions**;

   5. **Cancellation**;

   7. **Assignment of Policy**; and

34

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

8. **Subrogation and Reimbursement.**

**ADDITIONAL POLICY PROVISIONS**

The following additional provisions apply:

1. under Coverage I:

   a. **we** will be directly and primarily liable to any **residence employee** of an **insured** entitled to the benefits of the California Workers' Compensation Law;

   b. as between the **residence employee** and **us**, notice to or knowledge of the occurrence of the injury on the part of an **insured** will be deemed notice or knowledge on **our** part;

   c. the jurisdiction of an **insured** will, for the purpose of the law imposing liability for compensation, be **our** jurisdiction;

   d. **we** will be subject to the orders, findings, decisions or awards rendered against an **insured**, under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of this policy. This policy shall govern as between an **insured** and **us** as to payments by either in discharge of an **insured's** liability for compensation;

   e. the **residence employee** has a first lien upon any amount which **we** owe **you** on account of this insurance. In case of **your** legal incapacity or inability to receive the money and pay it to

the **residence employee**, **we** will pay it directly to the **residence employee**. **Your** obligation to the **residence employee** will be discharged to the extent of such payment; and

   f. the law mandates that **you** reimburse **us** for penalties **we** are required to pay the injured employee. **We** are required to pay a 10% penalty of the late payment if the late payment which gives rise to an increased payment is due less than 7 days after **we** receive the completed claim form from the employer.

   **We** will notify **you** in writing, within 30 days of the payment and will bill and collect the amount of the penalty. **You** are not obligated to repay **us** unless the aggregate total paid in a policy year exceeds $100.

   **You** will have 60 days, following notice of the obligation to reimburse, to appeal the decision to the Department of Insurance.

2. under Coverage I and Coverage II:

   a. **Other Insurance.** This coverage does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

   b. **Conformity to Statute.** Terms of this coverage which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with **us**. Coverage is with respect to:

1. **SECTION I – Coverage A, Coverage B,** or **Coverage C**; or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the **residence premises.** This coverage does not apply to **bodily injury** to an

employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item b., for property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

   The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS,** item 1.b. is modified as follows:

35

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering, or industrial design services;

      (2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading, or unloading of:

         (a) draft or saddle animals, including vehicles for use with them; or

         (b) aircraft, **motor vehicles**, recreational **motor vehicles** or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned, operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

      (2) under **Coverage M** for **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling, or explosion of firearms;

   g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

© Copyright, State Farm Mutual Automobile Insurance Company, 2019

3.  *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4.  *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the *Declarations*.

1.  If the reasonable and necessary cost to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, *we* will pay the additional amounts not to exceed the Option ID limit shown in the *Declarations*.

2.  If the reasonable and necessary cost to repair or replace damaged *building structures* covered under **COVERAGE A – DWELLING, Other Structures** exceeds the limit of liability shown in the *Declarations* for Other Structures, *we* will pay the additional amounts not to exceed 10% of the Option ID limit shown in the *Declarations*.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental *business* occupancy on file with *us*.

1.  **COVERAGE A – DWELLING, Other Structures**, item 2.b. is deleted.

2.  **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this *business* occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the *Declarations*. The first limit applies to property on the *residence premises*. The second limit applies to property while off the *residence premises*. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a *business*.

3.  Under Section II, the *residence premises* is not considered *business* property because an *insured* occupies a part of it as an incidental *business*.

4.  **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

    b.  *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits or to *business* pursuits of an *insured* that are necessary or incidental to the use of the *residence premises* as an incidental *business*;

5.  This insurance does not apply to:

    a.  *bodily injury* to an employee of an *insured* arising out of the *residence premises* as an incidental *business* other than to a *residence employee* while engaged in the employee's employment by an *insured*;

    b.  *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*;

    c.  liability arising out of any acts, errors, or omissions of an *insured*, or any other person for whose acts an *insured* is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an *insured's* incidental *business* involving data processing, computer consulting, or computer programming; or

    d.  any claim made or suit brought against any *insured* by:

        (1)  any person in the care of any *insured* because of child care services provided by or at the direction of:

            (a)  any *insured*;

37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

(b)  any employee of any *insured*; or

(c)  any other person actually or apparently acting on behalf of any *insured*; or

(2)  any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a)  any *insured*;

(b)  any employee of any *insured*; or

(c)  any other person actually or apparently acting on behalf of any *insured*.

Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age.

**Option JF – Jewelry and Furs.**  Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY, Theft** apply to Option JF.

The following additional provisions apply:

1.  *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a.  mechanical breakdown, wear and tear, or gradual deterioration;

    b.  all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

c.  inherent vice; or

d.  seizure or destruction under quarantine or customs regulations;

2.  *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3.  *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4.  *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option OL – Building Ordinance or Law.**

1.  **Coverage Provided.**  The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the *Declarations* of the Coverage A limit shown in the *Declarations* at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy.  This is an additional amount of insurance and applies to *building structures* on the *residence premises*.

2.  **Damaged Portions of *Building Structure*.**  When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will pay for the increased cost to repair or rebuild the physically damaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs.

3.  **Undamaged Portions of Damaged *Building Structure*.**  When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will also pay for:

    a.  the cost to demolish and clear the site of the undamaged portions of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

b. loss to the undamaged portion of the *building structure* caused by enforcement of any ordinance or law if:

(1) the enforcement is directly caused by the same *loss insured*;

(2) the enforcement requires the demolition of portions of the same *building structure* not damaged by the same *loss insured*;

(3) the ordinance or law regulates the construction or repair of the *building structure*, or establishes zoning or land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same *loss insured*; or

c. legally required changes to the undamaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law, if:

(1) the enforcement is directly caused by the same *loss insured*;

(2) the requirement is in effect at the time the *loss insured* occurs; and

(3) the legally required changes are made to the undamaged portions of specific *building structure* features, systems, or components that have been physically damaged by the *loss insured*.

*We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

a. *We* will not pay for any increased cost of construction due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

b. *We* will not pay more under this coverage than:

(1) the reasonable and necessary increased cost to repair or rebuild the *building structure* at the same premises or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) the reasonable and necessary cost to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

*We* will not pay for more than a *building structure* of the same height, floor area, and style as on the same or similar premises as the *building structure*, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HW-2105

HO-2420
Page 1 of 2
**Form 438BFU NS**
(Rev. May 1, 1942)

## FORM 438BFU NS – LENDERS LOSS PAYABLE ENDORSEMENT

### S.F. FORM

1. Loss or damage, if any, under this policy shall be paid **to the Payee named on the Declarations of this policy**, its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

HO-2420
Page 2 of 2
**Form 438BFU NS**
(Rev. May 1, 1942)

6.  This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7.  This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8.  Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9.  All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch described on the Declarations.

Approved:

Board of Fire Underwriters of the Pacific,
California Bankers' Association,
    Committee on Insurance.

HO-2420

## WILDFIRE RESPONSE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

Wildfire response vendors contracted by **us** have the right to access the **insured location** to perform wildfire suppression and structural protection services when, in their judgment, they determine an active wildfire is a threat to the **insured location**.

The wildfire response vendors will determine appropriate suppression and mitigation methods, including, but not limited to:

a.  removal of brush and combustible vegetation;

b.  fuel source mitigation;

c.  closing of doors and windows;

d.  clearing gutter and roof debris;

e.  monitoring and extinguishing hotspots;

f.  installing temporary sprinkler systems; and

g.  application of fire protection products including fire blocking gel or foam.

Wildfire response vendors are not a first responder service. The products, strategy, and tactics used to address the wildfire will be based on industry practices and the wildfire response vendors' professional judgment.

This endorsement does not guarantee services will be provided. Services that are provided may not prevent or reduce wildfire related damage.

Wildfire response services may be discontinued at any time without further notice.

All other policy provisions apply.

HO-2779

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

· HO-2362
Page 1 of 1

## STATE OF EMERGENCY AMENDATORY ENDORSEMENT (California)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

### COVERAGE C – LOSS OF USE

Item 1. is replaced by the following:

1.  **Additional Living Expense**. When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

    a.  the time required to repair or replace the premises;

    b.  the time required for *your* household to settle elsewhere; or

    c.  24 months.

    This period of time is not limited by the expiration of this policy.

    In the event a *loss insured* relating to a state of emergency, as defined in Section 8558 of the Government Code, causes the *residence premises* to become uninhabitable, *we* shall grant an extension of up to 12 additional months, for a total of 36 months, if *you*, acting in good faith and with reasonable diligence, encounter a delay or delays in the reconstruction process that are the result of circumstances beyond *your* control. Additional extensions of six months shall be provided to *you* for good cause. Circumstances beyond *your* control include, but are not limited to:

    a.  unavoidable construction permit delays;

    b.  lack of necessary construction materials; and

    c.  lack of available contractors to perform the necessary work.

    *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

### SECTION I – LOSS SETTLEMENT

### COVERAGE B – PERSONAL PROPERTY

Under **B1 – Limited Replacement Cost Loss Settlement**, item 1.a.(3) is replaced by the following:

(3)  to receive any additional payments on a replacement cost basis, *you* must complete the repair or replacement:

    (a)  within 24 months from the date that *we* make the first payment toward the actual cash value of the property, or

    (b)  within 36 months from the date that *we* make the first payment toward the actual cash value of the property, if the loss relates to a state of emergency as defined in Section 8558 of the Government Code.

    Additional extensions of six months shall be provided to *you* for good cause subject to the terms of Section 2051.5 of the California Insurance Code.

All other policy provisions apply.

HO-2362

©, Copyright, State Farm Mutual Automobile Insurance Company, 2021

HO-2213
Page 1 of 1

## HOMEOWNERS AMENDATORY ENDORSEMENT (California)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

### SECTION I – PROPERTY COVERAGES

### SECTION I – ADDITIONAL COVERAGES

The following is added to **Volcanic Action**:

When applicable, the following coverages apply to a loss covered by **Volcanic Action**:

a. **COVERAGE C – LOSS OF USE**;

b. **SECTION I – ADDITIONAL COVERAGES**; and

c. **Option OL – Building Ordinance or Law**, only if this option is shown in the **Declarations**.

The following is added to **Collapse**:

When applicable, the following coverages apply to a loss covered by **Collapse**:

a. **COVERAGE C – LOSS OF USE**;

b. **SECTION I – ADDITIONAL COVERAGES**; and

c. **Option OL – Building Ordinance or Law**, only if this option is shown in the **Declarations**.

The following is added to **Fuel Oil Release**:

When applicable, the following coverages apply to a loss covered by **Fuel Oil Release**:

a. **COVERAGE C – LOSS OF USE**;

b. **SECTION I – ADDITIONAL COVERAGES**; and

c. **Option OL – Building Ordinance or Law**, only if this option is shown in the **Declarations**.

Any payments made for these coverages are included in, and not in addition to, the $10,000 limit of insurance for **Fuel Oil Release**.

### SECTION II – LIABILITY COVERAGES

### SECTION II – ADDITIONAL COVERAGES

The following is added to **Damage to Property of Others**:

d. Under **SECTION II – EXCLUSIONS**, exclusion 2.c. does not apply to the coverage provided by **Damage to Property of Others**.

### SECTION II – EXCLUSIONS

Item 1.i. is replaced by the following:

i. **bodily injury** to any **insured** within the meaning of part 8.a., 8.b., or 8.c. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against any **insured** within the meaning of part 8.a., 8.b., or 8.c. of the definition of **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by any **insured** within the meaning of part 8.a., 8.b., or 8.c. of the definition of **insured**;

All other policy provisions apply.

HO-2213

©, Copyright, State Farm Mutual Automobile Insurance Company, 2021

# EXHIBIT B

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 **StateFarm**

September 24, 2024

MAGERDOMIN LAW FIRM
320 N CENTRAL AVE UNIT 102A
GLENDALE, CA, 91203

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

RE:    Claim Number:    05-73Q9-07R
        Date of Loss:      September 11, 2024

Dear Magerdomin Law Firm:

Thank you for speaking with me on 9/24/2024 regarding the status of your claim.  Please allow
this letter to summarize our conversation.

This letter will confirm our inspection of the insured location on Tuesday, September 24, 2024 at
10:00am with our insured/your client Debbie Silvia. The investigation into the facts and
circumstances of the above-referenced claim have been completed and a final coverage
decision has been reached.

Our inspection did not reveal any covered accidental direct physical loss to the insured location
from smoke, ash or soot from the Airport wildfire. Our investigation reflects the conditions of the
property are consistent with normal to high levels of dust, dirt, and background debris. As such,
State Farm Insurance Companies does not believe there is any evidence of covered accidental
direct physical loss to the dwelling, dwelling extensions, and/or personal property.

Please refer to the Homeowners Policy HW-2105, which states in part:

## SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING

*We* will pay for accidental direct physical loss to the property described in
Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES
NOT INSURED** or otherwise excluded or listed in this policy.  However, loss
does not include and *we* will not pay for any *diminution in value*.

### COVERAGE B - PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B
caused by the following perils, unless the loss is excluded or limited in **SECTION I NOT**

05-73Q9-07R
Page 2
September 24, 2024

**INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any ***diminution in value***.

1.      **Fire or lightning**.

7.      **Smoke**, meaning abrupt and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

## SECTION I - LOSSES NOT INSURED

1.      *We* will not pay for any loss to the property described in Coverage A that is caused by one or more of the items below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

f.      wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

i.      contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

(1)      Contaminants and pollutants include but are not limited to any:

(a)      solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

(b)      contaminants or pollutants resulting from any natural resource extraction activities; or

(c)      fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release**.

(2)      *We* also will not pay for:

(a)      losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

(b)      the cost to extract contaminants or pollutants from land,

05-73Q9-07R
Page 3
September 24, 2024

        water, or air, or the cost to remove, restore, or replace
        contaminated or polluted land, water, or air; or

    (c)    the cost of testing, monitoring, cleaning, removing,
        containing, treating,    detoxifying, neutralizing,
        remediating, disposing of, or assessing the effects
        of contaminants or pollutants;

However, *we* will pay for any resulting loss from items a. through k.
unless the resulting loss is itself a Loss Not Insured as described in
this Section.

4.    *We* will not pay for any loss described in paragraphs 1., 2., and 3.
immediately above regardless of whether one or more of the following: (a)
directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur
before, at the same time, or after the loss or any other cause of the loss:

    a.    conduct, act, failure to act, or decision of any person, group,
        organization, or governmental body whether intentional,
        wrongful, negligent, or without fault;

    b.    defect, weakness, inadequacy, fault or unsoundness in:

        (1)    planning, zoning, development, surveying, siting;

        (2)    design, specifications, workmanship, construction,
            grading, compaction;

        (3)    materials used in construction or repair; or

        (4)    maintenance;

        of any property (including land, structures, or improvements
        of any kind) whether on or off the ***residence premises***; or

    c.    weather conditions.

However, *we* will pay for any resulting loss from items 4.a., 4.b., and
4.c. unless the resulting loss is itself a Loss Not Insured as described
in this Section.

5.    *We* will not pay for, under any part of this policy, any loss consisting of
the items in paragraphs 1., 2., 3., or 4. above. This exclusion does not
apply if the loss is caused by a peril that is not otherwise excluded.

If you have questions regarding any part of your claim and would prefer to discuss it with a
person other than me, please feel free to contact Claim Team Manager Pat Arakawa, State
Farm Insurance Companies, at (844) 458-4300.

05-73Q9-07R
Page 4
September 24, 2024

We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if
you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may
have the matter reviewed by the California Department of Insurance, Claims Service Bureau,
300 South Spring Street, Los Angeles, California 90013, telephone 800 927 4357.

Pursuant to California law, you may obtain upon request copies of claim-related documents, as
defined by Insurance Code Section 2071(a).  These documents relate to the evaluation of
damages of your claim and can include repair and replacement estimates and bids; appraisals,
scopes of loss; drawings, plans, reports; and third party findings on the amount of loss.

The California Fair Claims Settlement Practices Regulations state that you must be notified of
the following policy provision concerning suits against State Farm:

6.    **Suit Against Us**. No action shall be brought against *us* unless there has
        been full compliance with all of the policy provisions. Any action by any
        party must be started within one year after the date of loss or damage.

        If the loss is related to a state of emergency, as defined in subdivision (b)
        of Section 8558 of the Government Code, the time limit to bring suit is
        extended to 24 months after the inception of the loss.

The one year period referred to does not included the time we take to investigate your claim.
The time from the date of loss (September 11, 2024) to the date you reported your claim to your
agent does count in computing the amount of time that has already expired.  The one year suit
limitation period is again running as of the date of this letter.

This Company does not intend by this letter to waive any policy defenses in addition to those
stated above and reserves its right to assert such additional policy defenses at any time.

If you have any additional information regarding the insured's claim, which has not been
previously considered, or if you desire an additional explanation regarding this matter, please
contact me.

Sincerely,

Sabri Alquza
Claim Specialist
(844) 458-4300 Ext. 309-763-4704
Fax:(844) 236-3646
State Farm General Insurance Company

State Farm General Insurance Company

**

05-73Q9-07R
Page 5
September 24, 2024


Enclosure(s):  **

---

Take advantage of our self-service options
Go to statefarm.com® to easily review claim status, update communication and claim payment
preferences, and many other insurance services.

# EXHIBIT C



**MEGERDOMIAN LAW OFFICES**
*A Professional Corporation*

320 North Central Avenue, Suite 102                    468 North Camden Drive, Suite 220
Glendale, CA 91203                                           Beverly Hills, CA 91210
P: (877) 734-3095                                              P: (877) 734-3095
F: (818) 272-8634                                            F: (818) 272-8634

December 19, 2024

Sabri Alquza
Claim Specialist
State Farm Insurance Company

Sent via electronic mail @ statefarmfireclaims@statefarm.com

    **CONFIDENTIAL SETTLEMENT OFFER**
    **RE: Request for Further Investigation**
    **Our Client/Your Insured: Debbie Silvia**
    **Date of Loss: 09/05/2024**
    **Claim No: 0573Q907R**

Dear Mr. Alquza,

Our office would like to request further investigation for the above-mentioned claim. Your denial
of September 24, 2024, does not comply with the California Insurance Code.

Following a comprehensive examination of the claim, our offices have concluded that the
insurer's denial determination lacks merit in light of the factual details surrounding the claim.
Given our client's consistent and timely premium payments for coverage and the inclusion of
smoke as a covered peril, the denial is not substantiated. Both our client/ your insured Debbie
Silvia (hereinafter Ms. Silvia) and experienced third-party fire and smoke damage remediation
inspector Aram Arsenyan (hereinafter Mr. Arsenyan) were present during the inspection that
occurred on September 24, 2024. On State Farm's behalf, adjuster Sabri Alquza (hereinafter Mr.
Alquza) was present at said inspection, along with several other State Farm representatives

Letter to State Farm
Page 2

whose names are unknown to us at this time. Both Ms. Silvia and Mr. Arsenyan took issue with
the uninterested, callous attitude displayed by Mr. Alquza while inspecting the property and his
complete disregard when heeded to inspect areas pointed out by both Ms. Silvia and Mr.
Arsenyan.

Despite efforts by the assigned adjuster, Mr.Alquza, to dismiss the observations of Ms. Silvia
and Mr. Arsenyan as inconsequential, Ms. Silvia's insurance policy does not stipulate that claim
determinations will be based solely on an inattentive, inadequate inspection conducted by a State
Farm adjuster that has no interest in finding coverage for its insured. In light of these
considerations, our office finds the denial decision unjust and, consequently, unacceptable on
behalf of our mutual client.

During the inspection Mr. Arsenyan asked Mr. Alquza what State Farm's investigation would
consist of and whether State Farm would hire an industrial hygienist. Mr. Alquza responded that
State Farm would be reviewing the pictures taken for coverage consideration and stated that
State Farm will not hire an industrial hygienist to investigate further.

Please be advised that Ms. Silvia hired an industrial hygienist to investigate further after learning
that State Farm would no longer be investigating, and Titan Environmental Solutions has
provided recommendations to clean a majority of the property. A true and correct copy of Titan's
industrial hygienist report is attached hereto as Exhibit A. As an objective party, it is your duty to
separate the facts from opinions and compare all findings to the legal requirements of the current
building and insurance codes. State Farm failed to handle this matter in a professional manner
and placed its interests above its own insureds. This despicable behavior exhibited during the
inspection and throughout the claims investigation shall serve as the basis for the ensuing bad
faith lawsuit if this demand is not met.

This letter illustrates the factual and legal basis to support our claim. Our office has brought this
matter to your attention and we provided an additional opportunity to correct this mistake on
November 26, 2024. *See* Exhibit B. Reconsideration of State Farm's claims decision requires
proper action based on the following insurance codes and supporting case law:


California Insurance Code: Sub Section 2695.7 (d)

*"Every insurer shall conduct and diligently pursue a thorough, fair and objective investigation
and shall not persist in seeking information not reasonably required for or material to the
resolution of a claim dispute."*

Letter to State Farm
Page 3

Based on the actions displayed during the inspection and when asked about State Farm's
intentions to investigate further, our office has concluded that State Farm has not met its duty to
conduct a thorough investigation. As noted in the case *Wilson v. 21st Century Ins. Co.*, 42
Cal.4th 713, 720 (Cal. 2007), "[a]n insurer's good or bad faith must be evaluated in light of the
totality of the circumstances surrounding its actions." The law implies in every contract,
including insurance policies, a covenant of good faith and fair dealing. The implied promise
requires each contracting party to refrain from doing anything to injure the right of the other to
receive the agreement's benefits. To fulfill its implied obligation, an insurer must give at least as
much consideration to the interests of the insured as it gives to its own interests. As explored in
the case *Frommoethelydo v. Fire Ins. Exchange*, 42 Cal.3d 208, 214 (Cal. 1986), "[w]hen the
insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject
to liability in tort."

California Insurance Code: Sub Section 790.03

*(3) Failing to adopt and implement reasonable standards for the prompt investigation and
processing of claims arising under insurance policies.*

Our office has observed that these surface level inspections have regrettably become a pattern for
State Farm smoke damage claims. This refusal by State Farm to investigate further until an
insured does the investigation for them is a clear breach of the covenant of good faith and fair
dealing as seen in *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 817-18 (Cal. 1979). In
Egan, the Court found "an insurer may breach the covenant of good faith and fair dealing when it
fails to properly investigate its insured's claim." The court further stipulated that to protect its
insured's contractual interest in security and peace of mind, "it is essential that an insurer fully
inquire into possible bases that might support the insured's claim" before denying it *Id.* During
the inspection on September 24, 2024, when Mr. Alquza was directed to specific areas by Ms.
Silvia and Mr. Arsenyan, Mr. Alquza had a duty to investigate and determine if coverage could
apply. Mr. Alquza disregarded that duty and already had his mind made up that he was going to
deny Ms. Silvia's claim.

We provided State Farm with another opportunity to properly adjust the claim and conduct an
objective investigation in our email dated November 26, 2024. *See* Exhibit B. State Farm failed
to hire its own unbiased third-party expert after being presented with the opportunity to rectify
their past premature denial. Based on the aforementioned code of conduct set forth by the
California Insurance code and supporting case law, we have acquired a professional restoration
estimate from JEN Renovations, a third-party restoration company, in the amount of $22,420.48.
A true and correct copy of their estimate is attached hereto as Exhibit C. In an effort to resolve
this matter in good faith, our office requests a payment of $26,220.48 to cover the costs needed
for cleaning and to reimburse your insured for the incurred cost of hiring Titan Environmental to
do a proper investigation. A true and correct copy of the bill for hiring Titan Environmental is
attached hereto as Exhibit D.

Letter to State Farm
Page 4

We are hopeful that we can resolve this matter amicably and expeditiously. Thank you for your prompt attention to this matter.

If you have any questions or concerns, please contact our office.

Sincerely,

Linet Megerdomian, Esq.
Megerdomian Law Offices, P.C.

# EXHIBIT A



# TITAN

### ENVIRONMENTAL SOLUTIONS

# LIMITED PRELIMINARY FIRE-RELATED SURFACE PARTICULATE ASSESSMENT REPORT

**SUBJECT PROPERTY LOCATED AT**

**DEBBIE SILIVA**
**28857 AVENIDA DE LA FLORES**
**MENIFEE, CALIFORNIA 92587**

**PROJECT NO. 126502-CB**

*PREPARED FOR:*   **MEGERDOMIAN LAW OFFICES, P.C**
**320 NORTH CENTRAL AVENUE, UNIT #102**
**GLENDALE, CALIFORNIA 91203**

*PREPARED BY:*   **TITAN ENVIRONMENTAL SOLUTIONS, INC.**
**1521 EAST ORANGETHORPE, SUITE B**
**FULLERTON, CALIFORNIA 92831**

*DATE PREPARED:*   **OCTOBER 15, 2024**

---

Northern California
1901 Harrison Street, Suite 1100
Oakland, CA 94612

Corporate Office
1521 East Orangethorpe Ave., Suite B
Fullerton, CA 92831

San Diego
2305 Historic Decatur Road Suite 100
San Diego, CA 92106

Office:   888-948-4826   Email:   surveys@titan-enviro.com
www.titan-enviro.com



Limited Preliminary Fire-Related Surface Particulate Assessment Report
Debbie Silva
28857 Avenida de la Flores, Menifee, CA 92587
Project No. 126502-CB
October 15, 2024

# TABLE OF CONTENTS

| | | |
|---|---|---|
| 1.0 | EXECUTIVE SUMMARY | 3 |
| 2.0 | INVESTIGATION METHODOLOGY | 4 |
| 2.1 | SCOPE OF WORK | 4 |
| 2.2 | VISUAL OBSERVATIONS | 4 |
| 2.3 | FIRE-RELATED SURFACE PARTICULATE TAPE-LIFT SAMPLING | 5 |
| 2.4 | STANDARDS AND GUIDELINES | 5 |
| 2.5 | LABORATORY ANALYSIS | 7 |
| 3.0 | RESULTS AND DISCUSSION | 7 |
| 3.1 | FIRE DAMAGE – GENERAL | 7 |
| 3.2 | INTERPRETIVE GUIDELINES | 9 |
| 3.3 | SURFACE PARTICULATE SAMPLE ANALYTICAL RESULTS | 11 |
| 4.0 | CONCLUSIONS AND RECOMMENDATIONS | 12 |
| 4.1 | CONCLUSIONS | 12 |
| 4.2 | RECOMMENDATIONS | 12 |
| 4.3 | RECOMMENDATION OF POST-RESTORATION VERIFICATION | 17 |
| 5.0 | LIMITATIONS AND EXCLUSIONS | 17 |
| | APPENDICES | 20 |

APPENDIX A    LABORATORY ANALYTICAL REPORT AND COC
APPENDIX B    FIGURES
APPENDIX C    PHOTOGRAPHS



Limited Preliminary Fire-Related Surface Particulate Assessment Report
Debbie Siliva
28857 Avenida de la Flores, Menifee, CA 92587
Project No. 126502-CB
October 15, 2024

## 1.0   EXECUTIVE SUMMARY

At the request of George Blanco with Megerdomian Law Offices, P.C. (referred to as the Client), Titan Environmental Solutions, Inc. (TES) conducted a limited preliminary fire-related surface particulate assessment on October 4th, 2024 from surfaces at the residential property located at 28857 Avenida de las Flores, Menifee, California 92587 (Subject Property).

The following summarizes the outcome of this assessment:

- The Client acknowledges that there are presently no established regulatory standards, regulatory guidelines, or widely accepted consensus documents that provided numerical quantifications or specify a minimum threshold concentration for assessing the impact of soot, char, ash, or other wildfire residue particles on a structure.

- TES conducted a limited survey to assess fire-related surface particulate matter, including soot, char, and ash particles, at the Subject Property. This assessment included a visual inspection, an olfactory assessment, and the collection of tape-lift samples specifically designed for evaluation the presence of fire particulate residues on surfaces at the Subject Property.

- In the absence of standardized sampling protocols or generally accepted number of samples to collect for a smoke particulate assessment, it is understood and accepted by the Client, that TES will utilize the laboratory interpretation guidelines in conjunction with the field observations for this assessment. It is important for the Client to understand that the results of the assessment may be subject to some degree of variability due to the lack of standardized protocols.

- TES collected a total of eleven (11) fire-related particulate tape-lift (tape-lift) samples from the Subject Property. Based on the limited number of samples authorized by the Client, TES will assume that similar surfaces and areas either contain or lack fire particles, relying on the laboratory's interpretation guidelines. If necessary, additional testing can be arranged to validate the presence or absence of fire-related particles in areas or on contents that were not initially tested and were subject to assumptions regarding their contamination status.

- The analytical results indicated levels exceeding the Typical Upper Background for fire/combustion residues and vegetation/wildfire indicators on the tested surfaces of the exterior, interior and attic.



Limited Preliminary Fire-Related Surface Particulate Assessment Report
Debbie Siliva
28857 Avenida de la Flores, Menifee, CA 92587
Project No. 126502-CB
October 15, 2024

## 2.0   INVESTIGATION METHODOLOGY

On October 15th, 2024, TES, acting on behalf of Megerdomian Law Offices, P.C (referred to as the Client), and under the request and authorization of Public Adjuster, George Blanco, conducted a limited preliminary assessment of fire-related surface particulates at the Subject Property. The assessment was initiated in response concerns regarding the potential impact of wildfire smoke and related particulate matter to the Subject Property.

The limited preliminary fire-related surface particulate assessment was performed by TES's staff industrial hygienist (IH), Houshang Jangi, and the assessment report was reviewed and approved by Ibrahim M. Sobeih, Certified Industrial Hygienist (CIH) by the Board for Global EHS Credentialing (BGC Certificate No. 5628CP).

### 2.1   SCOPE OF WORK

The objective of the fire-related surface particulate assessment was to evaluate if the specific surfaces identified by the Client were impacted by fire-related residues.

- Olfactory and visual assessment of the accessible areas within the interior and exterior areas, which included photographic documentation of tested surfaces;

- Collection of a limited number of tape-lift samples of interior and exterior surfaces for fire-related surface particulates analysis;

- Laboratory analysis of samples collected during the assessment; and

- Preparation of a survey report, which includes recommendation options to promote a safe and healthy indoor environment.

### 2.2   VISUAL OBSERVATIONS

- The Subject Property is a single-story, single family home built on a concrete slab foundation and is approximately 1,900 square feet in size. The exterior consists of stucco walls. The roof is pitched and finished with roofing shingles.

- The garage is attached to the Subject Property.

- The structure has an attic, accessible through a hatch style entry and contains batted insulation materials.

Case 5:25-cv-02975-DTB   Document 1-2   Filed 11/06/25   Page 93 of 217   Page ID
#:104
Limited Preliminary Fire-Related Surface Particulate Assessment Report
Debbie Siliva
28857 Avenida de la Flores, Menifee, CA 92587
Project No. 126502-CB
October 15, 2024

- The structure has a central heating, ventilation, and air-conditioning (HVAC) system.

- At the time of the investigation, the structure was occupied by the homeowner.

- TES was informed that the Subject Property is located in proximity to the Line Fire event that occurred in 2024.

- Fire particulate loading were observed on interior surfaces, and there were no indications of smoke-related odors within the interior of the structure.

- No fire particulate loading was detected on surfaces, and there were no discernible smoke-related odors noted in the attic.

- Fire particulate loading was identified on the exterior surfaces, and there were no discernible smoke-related odors present in the exterior environment.

- The insured indicated professional cleaning of the interior surfaces has not been conducted since the fire event.

## 2.3   FIRE-RELATED SURFACE PARTICULATE TAPE-LIFT SAMPLING

TES performed the limited fire-related surface particulate sampling as follows:

- Tape-lift samples involve the use of an adhesive tape to collect settled dust, and are typically a preferred media for evaluating char, ash, soot, and other primary indicators of fire debris. This approach maintains the original surface's relative positioning, density, size, and shape of all particles, along with the population per unit area, thus providing a well-preserved sample for laboratory analysis.

- The tape-lift samples were collected from representative areas to identify the presence or absence of fire-related particulates.

- TES collected a total of eleven (11) tape-lift samples from interior and exterior locations at the Subject Property.

## 2.4   STANDARDS AND GUIDELINES

TES utilizes the following standards and guidelines in the assessment of fire damage of buildings:

_____

***Titan Environmental Solutions, Inc.***
*1521 East Orangethorpe Avenue, Suite B, Fullerton, CA 92831*Office (888) 948-4826 *Fax: (714)-871-8712*
*Page | 5*



Limited Preliminary Fire-Related Surface Particulate Assessment Report
Debbie Siliva
28857 Avenida de la Flores, Menifee, CA 92587
Project No. 126502-CB
October 15, 2024

- American Industrial Hygiene Association (AIHA). *Technical Guide for Wildfire Impact Assessment for the Occupational and Environmental Health and Safety Professional*, 2018.

- AIHA Synergist. *The ABCs of Wildfire Residue Contamination Testing. Post Fire Assessment of Indoor Environment*, 2017. Alice Delia and Daniel Baxter.

- American National Standards Institute/ Institute of Inspection, Cleaning and Restoration Certification (ANSI/IICRC) S500 – *Standard for Professional Water Damage Restoration Standard,* 2021.

- US General Services Administration – Federal Standard 209E: *Airborne Particulate Cleanliness Classes in Cleanrooms and Clean Zones*, 1992.

- International Standards Organizations (ISO) 14644-1 – *Cleanrooms and Associated Controlled Environments Part 1: Classification of Airborne Particulates.*

- Restoration Industry Association (RIA). *Guidelines for Fire & Smoke Damage Repair, 2nd Edition*, 2007.

- National Institute of Disaster Restoration (NIDR) – *Guidelines for Fire/Smoke Damage Repair, 2nd Edition*, 2004.

- Federal Emergency Management Agency (FEMA) – *Tips from State and FEMA on Smoke Removal and Fire Cleanup,* 2002.

- Indoor Environmental Standards Organization/Restoration Industry Association (IESO/RIA) Standard 6001-2012: *Evaluation of Heating, Ventilation and Air Conditioning (HVAC) Interior Surfaces to Determine the Presence of Fire-Related Particulate as a Result of a Fire in a Structure*.

- Oklahoma State University School of Fire Protection and Safety. Kovar, Brad; King, Martin L. and Chakraverty, Priyotosh. *Suggested Guidelines for Wildfire Smoke Damage Investigations and remediation.*

- United States Environmental Protection Agency (EPA). *Wildfire Smoke: A Guide for Public Health Officials*. Revised 2019. Publication No. EPA-452/R-19-901. Office of Air Quality Planning and Standards, Health and Environmental Impacts Division. Research Triangle Park, NC.



## 2.5    LABORATORY ANALYSIS

The fire-related surface particulate tape-lift samples were delivered, under proper chain-of-custody documentation, to Environmental Analysis Associates, Inc. (EAA), located in Bay City, Michigan, and analyzed for fire related particles using Reflected Light Stereo-Microscopy, Reflected Light Dark Field Microscopy and Polarized Light Microscopy. EAA is accredited by the American Industrial Hygiene Association (AIHA) under the Laboratory Accreditation Program (LAP No. 220804).

# 3.0    RESULTS AND DISCUSSION

## 3.1    FIRE DAMAGE – GENERAL

Fires have the destructive capacity to obliterate structures and everything within them, including building materials, furniture, clothing, and various possessions. A significant byproduct of fires is the generation of copious amounts of smoke, a well-acknowledged hazard to both health and safety. This smoke can necessitate the evacuation of occupants due to the dual risks of burns and exposure to smoke-related dangers.

Smoke emanating from a wildfire can traverse extensive distances, contingent upon prevailing weather conditions. The combustion process during a fire yields a complex mixture of substances, including smoke, carbon dioxide, water vapor, carbon monoxide, hydrocarbons, various organic compounds, nitrogen oxides, particulate matter, and trace minerals. This diverse composition underscores the multifaceted nature of the hazards associated with wildfires.

Particles from wildfires can deposit themselves on both the exterior and interior surfaces of a structure. It's important to prioritize the investigation and assessment of fire and wildfire impact soon after a fire or wildfire event. Emphasis should be placed on investigating and assessing fire and wildfire impaction, immediately or shortly thereafter a fire and/or wildfire event when it becomes necessary to preserve and archive the presence of smoke, soot, char, ash and wildfire particulate matter impaction to structures.

### Fire Particulates Definitions

- Combustion particles can be separated into three (3) basic categories (soot, char, and ash). There are also other indicator particles that can assist in the differentiation of wildfire and structure fire residues from other types of combustion sources. Wildfire combustion particles are a complex mixture of cellulose vegetation, burned soil, residual salts, and crystalline calcium and silica vegetation particles (phytoliths). Structure fires have a different particle



distribution, typically with higher ratios of soot particles and other melted plastics, paint, and metals.

- <u>Soot</u> is a black powdery form of carbon produced when candles, wood (cellulose), or oil is burned, which rises up in fine particles with the flames and smoke. It is a fine carbonaceous material with aciniform structure; it is produced during incomplete combustion. While structural fires produce soot, wildfires do not produce much soot.

- <u>Char</u> are materials that are blackened by burning or scorching. Incomplete combustion occurs when fuel does not burn completely, and as a result, produces char along with other particulates such as soot and ash. Char is often found in areas affected by fires or other combustion events, such as wildfire or structure fires. Char particles can vary in size and composition depending on the type of fuel and the conditions under which the combustion occurred. In addition to being visually blackened, char particles may also have a distinct odor. According to the American Society of Testing and Materials (ASTM), char is a particulate that is larger than 1 µm and is made by incomplete combustion.

- <u>Ash</u> is the decarbonized residue of cellulose material. It is typically comprised of mineral salts, carbonates, oxides, or metal/noncombustible compounds. Ash is typically white or light grayish in color and is defined as something that is left over after a fire or after something that has been burned. Ash is typically observed during and after wildfire events.

- Wildfires and structural fires commonly produce volatile organic compounds (VOCs), polycyclic aromatic hydrocarbons (PAHs), dioxins and furans. These chemical compounds are responsible for much of the characteristic smoky odor.

**Wildland fire** residues contain not only the contextual combustion by-products of the vegetation source (e.g. char, burned pollen, plant parts, phytoliths, and burned soil particles), but they also may contain elevated "unburned" soil and vegetation particles generated by fire-storm winds usually associated with a major fire event.

**Structure fires** usually contain high percentages of more hydrophobic aciniform soot particles, non-vegetation char, "singed" fabrics, burned plastics, paint, metals, and condensed chemical residues resulting in aciniform soot.

**When structures become involved or consumed by wildfires**, both types of particle assemblages can be present.



Limited Preliminary Fire-Related Surface Particulate Assessment Report
Debbie Siliva
28857 Avenida de la Flores, Menifee, CA 92587
Project No. 126502-CB
October 15, 2024

## 3.2    INTERPRETIVE GUIDELINES

Currently, there are no established interpretive guidelines or regulated levels for assessing fire-related residue. Some consultants and laboratories may rely on a fixed one percent (1%) threshold to determine the presence of fire residual contamination. However, TES holds the perspective that background levels can be significantly influenced by various factors, including neighboring industries, local activities, and weather conditions. These factors include a broad spectrum, such as personal lifestyle choices (e.g. smoking, incense and candle burning, use of fireplaces, etc.).

Recognizing the substantial variation in background levels across different communities, TES adopts the EAA guideline. This guideline offers a more comprehensive approach by considering a range of values rather than relying on a singular, fixed number. Such an approach facilitates a more tailored and precise assessment of fire-related residue, accommodating the distinct environmental characteristics of each specific location.

EAA has developed, what TES believes, is a reasonable set of summary guidelines for residual fire related debris (soot, char, ash, and other particles). The summary guidelines (as shown in Table 3-1 below) provides a wide range of conditions, such as "Typical-Low", "Typical-Upper Background", "Atypical", and "Elevated" concentrations. These guidelines are based on the variance of quantitative background levels (ratio% and counts/mm$^2$) measured by EAA in buildings over numerous years. In interpreting and evaluating fire related residue, TES uses our observations, field experience and these EAA guidelines to help determine if plausible fire-related residuals are present and whether a corrective action is appropriate.

| Table 3-1 | | |
|---|---|---|
| **EAA Summary Guidelines for Residual Fire Related Debris Ratio % & Surface Concentrations** | | |
| **Classification Range** | **Total Fire Residue (ratio %)** | **Total Fire Residue (counts/mm$^2$)** |
| Typical-low | <1% | <1 |
| Typical- Upper Background | 1-3% | 1-5 |
| Atypical | 3-10% | 5-50 |
| Elevated | >10% | >50 |



## Wildfire / Vegetation Fire Related Particle Distribution

Vegetation and non-vegetation related combustion particles are commonly observed in indoor dust from a wide range of indoor and outdoor sources. It is common to find a natural background of combustion residue particles (soot, char, and ash from vegetation and anthropogenic sources) in commercial office and residential spaces in percent levels of up to 3% (area ratio %), and in some micro-climatic, geographic, or industrial locations as high as 5%. This inherent background of outdoor and indoor sources includes, but is not limited to, controlled burning, vehicular emissions, asphaltic materials from roadways, wood burning fireplaces, candles, cooking, industrial activity, fossil fuel power plants, and re-entrainment of dust from historical wildfires. As a part of comparing quantitative estimates, it is also important to consider the inherent variability of any microscopy analysis method for fire residue, asbestos, mold, etc., can vary as much as 30%.

Wildfire or burned vegetation particles discovered inside structures are predominantly comprised of char and ash particles, rather than aciniform soot. The lighter aciniform soot particles, originating from volatile plant resins, are typically carried high into air within the fire's crown and are not commonly found as settled debris inside structures. As previously mentioned, char and ash particles can be exceedingly delicate, and ash particles, in particular, can be highly soluble.

Burned pollen, plant parts (trichomes, etc.), and phytoliths are particles that can be used as direct indicators that are associated with vegetation burning or wildfires. These burned vegetation indicator particles are typically found in significantly lower concentrations than the vegetative char and ash particle residues, especially as the distance from the fire increases.

Other non-vegetation wildfire indicator particles associated with firestorm winds include burned soil / clays and carbonized quartz grains. EAA's laboratory analysis provides quantitative estimates of these indicator particles as part of the fire-related debris in the sample. Firestorm winds can also transport a significant amount of unburned soil and vegetation debris that although not classified as fire-related debris, are generated by the fire event.

## Structure Fire Related Particle Distribution

Unlike wildfires, structure fires generate an entirely different distribution of soot, char, ash, and indicator particles. Because the heated plume of a structure fire is usually contained within the building envelope, the fuel based and heated organic compounds



form aciniform soot condensates that can deposit as large (e.g. 10-100µm) clusters, or even larger spider web-like chains on cooler ceiling and wall surfaces within the structure. The depositional patterns generated by aciniform soot condensation are critical diagnostic indicators for an indoor fire, and can be readily observed when using an optical microscopy examination of tape lift samples collected directly from walls, ceilings, or contents.

The larger char and ash particles generated during a structure fire end up settling and depositing on horizontal surfaces. The composition of char, ash, and oxidation particle residues is determined by what has been burned (paper products, wood framing, plastics, metals, and/or proteinaceous materials, etc.). Additionally, the background levels and burned materials found in industrial and warehouse spaces can vary widely depending the activities and potential fuel sources in these locations. Control samples may be required to differentiate typical background levels from Atypical or Elevated conditions in these locations.

## 3.3    SURFACE PARTICULATE SAMPLE ANALYTICAL RESULTS

<u>Qualitative Analysis:</u> The "Estimated Area Ratio %" is the numerical "size/area adjusted" ratio between all particle categories based on the average estimated area of each particle category. This is the first and initial qualitative dry examination of the color, texture, and presence or absence of large (>500µm) char and/or ash particles found on the entire tape lift slide preparation.

<u>Quantitative Analysis:</u> The "Surface Density (counts/mm$^2$)" of fire residue particles is the numerical surface particle concentration independent of the amount or ratio of background dust is the quantitative estimate of fire / combustion residue particles. This is the second step of analysis, where the adhesive tape lift sample analysis procedure preserves the integrity, size and spatial distribution of the deposited dust, and is used to simultaneously estimate the area ratio percentage and the concentration of settled fire-related particles on sampled surfaces per unit area (counts/mm$^2$).

The two (2) steps of analysis estimate fire/combustion residue constituents, including aciniform soot, char, ash and vegetation/wildfire indicators; inorganic constituents including fibrous and non-fibrous elements; bioaerosols, including mold, pollen, plant fragments, skin cells; and other constituents consisting of biogenic and organic debris. The analytical results of the fire-related surface particulate tape lift samples collected from surfaces within the Subject Property for the content of soot, char, ash, and other wildfire related particulates are summarized in the following Table 3-2. The laboratory analytical reports are attached in Appendix A.



| Table 3-2 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Summary of Surface Fire Particulate Tape-Lift Sample Analyses** | | | | | | | |
| Sample Number | Sample Location / Description | Fire/Combustion Particle Concentrations Estimated Area Ratio % | | | | | Surface Density (counts/mm²) | Wildfire Fire or Structural Indicator Particles Present |
| | | Total | Soot | Char | Ash | Indicator Particles | | |
| 1004-01 | Door Trim – Southeast End of the Living Room | 1.8 | ND | 1.3 | 0.3 | 0.2 | 5.6 | |
| 1004-02 | Cabinets – Northeast End of the Kitchen | 1.3 | ND | 0.6 | 0.3 | 0.4 | 5.6 | |
| 1004-03 | Painting Frame – Southwest End of Office #1 | 1.1 | 0.5 | 0.6 | ND | | 6.9 | |
| 1004-04 | Closet Door Trim  - Southwest End of Bedroom #1 | 0.4 | 0.1 | 0.3 | ND | | 2.8 | |
| 1004-05 | Shelf – West End of Office #2 | 0.5 | 0.1 | 0.4 | ND | | 2.8 | |
| 1004-06 | Shelf – Northeast End of Bedroom #2 | 0.3 | ND | 0.3 | ND | | 1.4 | |
| 1004-07 | Shelf – Northwest End of Bedroom #3 | 13.2 | ND | 11.6 | 1.1 | 0.5 | 50.9 | Yes - Char |
| 1004-08 | HVAC Return Air Vent – East End of Hallway | 0.3 | ND | 0.3 | ND | | 1.4 | |
| 1004-09 | HVAC Supply Air Vent – Center of Bedroom #1 | 0.6 | 0.6 | ND | ND | | 2.8 | |
| 1004-10 | Ducting – Southeast End of Attic | 3.6 | 0.7 | 2.2 | 0.4 | 0.3 | 17.9 | |
| 1004-11 | Outdoor Heater – North End of Exterior | 8.5 | ND | 2.2 | 2.9 | 3.4 | 46.8 | |

ND = Not Detected
NA = Not Analyzed

# 4.0   CONCLUSIONS AND RECOMMENDATIONS

## 4.1   CONCLUSIONS

The analytical results indicated levels exceeding the Typical Upper Background for fire/combustion residues and vegetation/wildfire indicators on the tested surfaces of the exterior, interior and attic.

## 4.2   RECOMMENDATIONS

Limited Preliminary Fire-Related Surface Particulate Assessment Report
Debbie Siliva
28857 Avenida de la Flores, Menifee, CA 92587
Project No. 126502-CB
October 15, 2024

**General Specifications**

The Client should consult with the professional fire restoration and remediation contractor prior to the remediation to determine a scope of work and which applicable cleaning strategy is the most cost-efficient method to clean and restore impacted surfaces to pre-loss condition. Persistent smoke odors may be resultant of accumulations of absorbed or settled combustion residues. If persistent smoke odors remain, further inspection and cleaning recommendations should be considered.

The purpose of basic cleaning is to remove fire and wildfire particles from surfaces and to reduce and/or eliminate odors. Depending upon the surface to be cleaned, general cleaning using vacuuming with a High Efficiency Particulate Air (HEPA) filter, dry-cleaning soot sponge wiping techniques, and/or damp wiping may be sufficient. The following smoke particulate cleaning recommendations should be performed by a professional fire restoration contractor following the most current industry standard of care, and remediation guidelines from generally respected sources.

1. Cleaning of smoke particulate impacted surfaces applies to the impacted area(s) of the Subject Property.

2. Smoke particulate restoration / remediation should be performed by experienced personnel, trained and certified in fire damage and smoke particulate impact restoration work, utilizing the most current technology, appropriate personal protection equipment (PPE) and are familiar with cleaning methodologies, such as, but not limited to those propagated by the Institute of Inspection, Cleaning and Restoration Certification (IICRC) Safe Wildfire Smoke Damage and Ash Cleanup Guide and/or American Industrial Hygiene Association (AIHA) article *Restoration After a Wildfire*.

3. The professional fire restoration and cleaning contractor should be responsible for utilizing the appropriate tools, equipment, and cleaning methods for the smoke particulate impacted surfaces subjected to cleaning.

4. The professional fire restoration and cleaning contractor should consult with the property / building owner for any possible chemical sensitivity prior to using solvents and deodorizers within the structure.

5. Typical post fire remediation cleaning techniques used may include, but are not limited to:
   a) Utilize hydroxyl deodorization or similar deodorization to treat fire-related odors;



b) High-Efficiency Particulate Air (HEPA) filtered cleaning equipment:

    1. HEPA filtered air scrubber;

    2. Activated carbon filtration to reduce any pronounced odors;

    3. HEPA vacuums equipped with soft bristle brushes;

c) Specialized cleaning, wet wiping utilizing a cleaning detergent;

d) Cleaning of upholstered fabric furniture, if feasible to restore to pre-loss condition;

e) Cleaning carpeting and/or rugs, if feasible to restore to pre-loss condition;

f) Cleaning of tapestries, if feasible to restore to pre-loss condition;

g) Cleaning of casings above doors, windows, window tracks, etc.;

h) Cleaning of tall furniture (bookcases, television media centers, shelving, curios, etc.); and

i) Wet wiping and spraying with industrial cleaning detergent.

## Decontamination Specifications

### 1. Impacted Indoor Areas

a) Interior hard, non-porous, horizontal surfaces impacted by combustion particles should be removed and cleaned by HEPA vacuuming loose particulate from all impacted horizontal surfaces. Repeated slow HEPA vacuuming may be required to remove all loose particulate and residues. HEPA vacuuming may be supplemented by other dry removal techniques, such as soft brushing, as recommended by the professional fire restoration contractor. The cleaning of smoke particulate impacted indoor surfaces should be repeated until surfaces are visually clean and free of smoke emission particulates and residues. If dry removal procedures alone do not restore to the original, pre-loss condition, application of moisture may be required, as determined by the professional fire restoration contractor. The professional fire restoration contractor shall use extreme care when cleaning with moisture sources or solvents, as they may alter or damage the surface being applied and cleaned. Trial cleanings in inconspicuous areas and on inconspicuous surfaces is a recommended procedure to establish effective procedures and avoid damage or alterations to surfaces being cleaned.



b) In consultation with the professional fire restoration contractor, and if safe to do so without altering or damaging the impacted surfaces, detergent wet clean all smoke particulate impacted vertical surfaces, including walls, doors, windows and non-porous hard surface window coverings.

> ➤ Hardwood, tile, stone, and carpet flooring shall be cleaned following the manufacturer's recommended cleaning process. Carpet cleaning to pre-loss condition, if possible, may require consultation of a professional fire restoration contents cleaning and restoration company.

c) If ghosting, a term applied to the shadowy outlining of electrical outlet covers, light switch plate covers, etc., is present, the professional restoration contractor should consider inspection of the areas behind the electrical outlet and light switch covers for potential smoke particulate impact. Lock-out / tag out safety procedures shall be employed prior to cleaning electrical components.

d) In consultation with the professional fire restoration contractor, and if safe to do so without altering or damaging the impacted surfaces, detergent wet clean all smoke particulate impacted horizontal surfaces, including but not limited to, inside cabinets, cabinet shelves, closets, drawers, desks, tops of cabinets, etc.

e) Consult with a professional fire restoration contents cleaning and restoration company to determine the feasibility of restoring smoke particulate impacted contents to pre-loss condition. A complete inventory of the smoke particulate impacted personal content items, including but not limited to, furniture, fine art, appliances, interior household items, and antiques, should be performed prior to contents cleaning and restoration. Interior soft porous contents, including but not limited to, mattresses, couches, sofas, and upholstered furniture, if any, should be cleaned by a combination of HEPA vacuuming and dry-cleaning techniques as deemed necessary by the professional fire restoration contents cleaning and restoration company. Contents should be taken to and/or moved to a designated clean and odor free environment, where professional cleaning can occur.

f) Electronics and appliances may be impacted by fire and wildfire particulate emissions. Consult with a professional electronics and appliances contents cleaning contractor for restoration and cleaning to



pre-loss condition of smoke particulate impacted electronics and appliances.

2. **Heating, Ventilation, and Air Conditioning (HVAC) ventilation systems and Forced Air Units (FAUs)** operating during a fire or wildfire related event may have significant smoke particulate impact throughout the mechanical system and its components. HVAC filters should be replaced. HVAC and FAU mechanical system cleaning should be cleaned at the discretion of the professional fire restoration contractor, following manufacture and the National Air Duct Cleaners Association (NADCA) Assessment, Cleaning and Restoration of HVAC system (ACR) 2021 Standard recommendations.

3. **Attic:**

   a) Interior soft porous surfaces including, but not limited to, blown-in insulation, fiberglass batt insulation, fibrous duct wrap, etc., shall be properly removed, bagged, and appropriately disposed of.

   b) Exposed surfaces should be HEPA vacuumed to remove impacted loose smoke particulates.

   c) The interior hard, non-porous, horizontal and vertical surfaces including, but not limited to, framing members, shear walls, exposed oriented strand board (OSB), should be cleaned and removed of smoke particulate impaction by HEPA vacuuming, wet wiping, and deodorizing any pronounced odors. Any loose and dust debris should be properly removed during the smoke particulate cleaning process.

4. **Exterior Surfaces**

   a) Air wash or spray rinse the exterior surfaces starting from the top to the bottom. When necessary, stubborn stained surfaces should be cleaned by agitating the fire related particulates and residues with a soft-bristled brush, followed by water rinse beginning from the top, working down. Smooth exterior surfaces, such as windows and doors, should be cleaned using wet wiping techniques, as recommended by the professional fire restoration contractor. Wood and engineered wood siding including, but not limited to, cedar, pine, redwood, board and batten, log, etc., should be cleaned at the discretion of the professional fire restoration contractor, and if safe to do so without altering or damaging the fire particulate impacted surfaces.



b) Swimming pools, hot tubs, spas, wells, and exterior water features, such as fountains, are not included in the scope of this investigation; however, they may be heavily impacted by smoke related fire particles. TES recommends consulting and contracting a qualified restoration specialist with experience in pool, hot tub, spas, wells, and exterior water feature restoration for restoration of these items to pre-loss condition.

c) Due to trip, fall, safety hazards, it is the policy of TES to not inspect roofs for fire or wildfire impact. Consult with the professional fire restoration contractor on the appropriate cleaning techniques to safely remove fire related particulates and residues from the roofing materials in order to return to pre-loss condition.

**Caution:** Use of high-pressure water can cause damage to paint, finishes, wood, and concrete.

### 4.3   RECOMMENDATION OF POST-RESTORATION VERIFICATION

Although not required by law, code, or regulatory statutes; TES recommends post-restoration verification after fire, wildfire, and smoke particulate impaction to determine the effectiveness of the cleaning of fire-related combustion particles and residues. The following is the criteria for the post assessment:

1. No visible fire-related particulates, dust and debris on surfaces.

2. Obtain fire-related particulate tape-lift samples from surfaces within Subject Property.

## 5.0   LIMITATIONS AND EXCLUSIONS

Currently there are not any regulatory standards for smoke particulates or combustion by-products assessments, which establish minimum threshold concentrations of char, ash, soot, residues or other particulates related to fire or wildfire events to establish impact on a property or structure. The findings, conclusions and recommendations set forth in this assessment are strictly limited to the time, date and scope of the evaluation. Additionally, TES relies, in good faith, upon the information and representations of the real party in interest, interested parties, and others in the preparation of this report. Therefore, TES does not accept responsibility for fraudulent statements, fraudulent acts of persons interviewed, misrepresentation of material facts, misrepresentations, deficiencies or omissions.

TES's investigation of fire and wildfire related smoke particulates impacts on and within



the structure, as identified during this investigation, is based on conditions observed at the time of this investigation, current sample methodology, analytical testing, laboratory recommendations, and generally accepted industry standards of care. There is a possibility that the testing procedures, methodology, laboratory analysis, and generally accepted industry standards of care employed at the time of this report may later be superseded by newer and more relevant procedures, sampling methods and laboratory analytical methods. TES cannot assume responsibility for any change in conditions or circumstances occurring after the investigation. Should additional material factual information become available following the investigation, TES reserves the right to determine the impact, if any, of the newly and most recent information on our opinions, conclusions and recommendations, and to revise our opinions, conclusions and recommendations, if necessary, as warranted by the discovery of additional factual information.

The sampling and analytical methods, conclusions, opinions, and recommendations provided are based on TES's judgment, experience and the standard for professional industrial hygiene service as there are no standardized Environmental Protection Agency (EPA) or other regulatory agencies methods. They are subject to the limitations and variability inherent in the sampling and analytical methodology utilized in this investigation. This report does not claim to identify all potential hazards or contaminants that may be present. The data provided in this report does not establish nor provide any information regarding the health and safety of the building nor any health medical implications or recommendations. The sample data presented in this report does not determine if a structure is safe or unsafe, nor does the data establish habitability of the structure. Additionally, this investigation and report is not intended to determine the structural integrity of the building.

As with all environmental investigations, this assessment is limited to the defined scope and does not attempt to identify all hazards nor indicate that other hazards do not exist. TES cannot be responsible for changing conditions that may alter the existing level of contamination or for future changes in accepted methodology. This report was prepared for the sole use of our client, the use of this report by any other person other than our client or TES is strictly prohibited without the expressed written authorization of TES.



We appreciate the opportunity to be of service to you. Please contact the Project Manager at (888) 948-4826 should you have any questions or comments.

Sincerely,
**Titan Environmental Solutions, Inc.**

Ibrahim M. Sobeih, MS, MSPH, CIH, CAC, FAIHA
Director of Industrial Hygiene and Safety





# APPENDICES



# APPENDIX A

# LABORATORY ANALYTICAL REPORT AND CHAIN OF CUSTODY

**24 - 2 2 9 4**



## Titan Environmental Solutions, Inc
1521 East Orangethorpe Avenue, Suite B
Fullerton, CA 92831
Phone: 888-948-4826

Email Results to: Results.socal@titan-enviro.com

---

Project Number: 126502-CB

Project Name / Address:  Debbie Siliva
28857 Avenida de las Flores, Menifee, CA 92587

Laboratory Performing Analysis:  EAA Labs (Baxter)

Analysis Requested:
Combustion By Products(Soot Char & Ash)

Sample Date: 10/04/2024

Field IH:  H. Jangi

---

### TURNAROUND TIME

☐ 3 Hours  ☐ 6 Hours  ☐ 24 Hours  ☐ 48 Hours  ☐ 72 Hours  ☐ 4 Day  ☐ 5 Day  ☐ 6-10 Days  ☐ Other -

| Sample # | | Sampled Surface | Sample Location |
|---|---|---|---|
| 1004 | 01 | Top of Door Trim | SE End of Living Room |
| 1004 | 02 | Top of Cabinets | NE End of Kitchen |
| 1004 | 03 | Top of Painting Frame | SW End of Office 1 |
| 1004 | 04 | Top of Closet Door Trim | SW End of Bedroom 1 |
| 1004 | 05 | Top of Shelf | W End of Office 2 |
| 1004 | 06 | Top of Shelf | NE End of Bedroom 2 |
| 1004 | 07 | Top of Shelf | NW End of Bedroom 3 |
| 1004 | 08 | Return | E End of Hallway |
| 1004 | 09 | Register | Center of Bedroom 1 |
| 1004 | 10 | Top of Ducting | SE End of Attic |
| 1004 | 11 | Top of Outdoor Heater | Exterior N Side of Residence |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Relinquished: Houshang Jangi          Date: 10/04/2024          Time: 5:00 PM

Received:          Date: 10/8/24          Time: 12:30 P

# ENVIRONMENTAL ANALYSIS ASSOCIATES, INC.

*306 5th Street, Suite 2A - Bay City, MI 48708*



# LABORATORY REPORT

**Fire/Combustion Particle Analysis - Surface Dust**

### Report prepared for : Titan Environmental Solutions, Inc.

Client Project # : 126502-CB
Project Description : Debbie Siliva - 28857 Avenida de las Flores
EAA Project # : 24-2294

Samples Collected : 10/04/24
Samples Received : 10/08/24
Date of Analysis : 10/09/24

Authorized / data reviewed by : *Joseph R. Heintskill*

Joseph R. Heintskill
Laboratory Director

The Environmental Analysis Associates, Inc. (EAA) sample results are only applicable to the items tested and locations as received. Sample descriptions and volumetric data are provided by the client. All particle concentrations are rounded to 3 significant figures. In order for chart clarity, cells where the particle category was not detected are intentionally left blank. This test report shall not be reproduced except in full without the written approval of the laboratory.

EAA shall not be liable to the client or the client's customer with respect to interpretation, recommendations made or actions implemented by either the client or the client's customer as a result of or based upon the test results. Samples are retained for 30 days.

*ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.  -  306 5th Street, Suite 2A  -  Bay City, MI 48708*

**Fire/Combustion Particle Data Summary Table**

Page 2 of 13

Client : Titan Environmental Solutions, Inc.
Client Project # : 126502-CB
Client Project Description : Debbie Siliva - 28857 Avenida de las Flores
EAA Project # : 24-2294

| Sample # | Sample Description | Fire / Combustion Particle Concentration | | | | | Total Surface Density (Cts/mm²) | Qualitative Observations | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Estimated Area Ratio % | | | | | | Are large fire combustion particles detected ? | Are wildfire or structure fire indicator particles present? | Are there any potential interferences present? |
| | | Total Area % | Soot | Char | Ash | Indicator Particles | | | | |
| 1004-01 | Top of Door Trim-SE End of Living Room | 1.8 | not detected | 1.3 | 0.3 | 0.2 | 5.6 | | Yes | |
| 1004-02 | Top of Cabinets-NE End of Kitchen | 1.3 | not detected | 0.6 | 0.3 | 0.4 | 5.6 | | Yes | |
| 1004-03 | Top of Painting Frame-SW End of Office 1 | 1.1 | 0.5 | 0.6 | not detected | | 6.9 | | | |
| 1004-04 | Top of Closet Door Trim-SW End of Bedroom 1 | 0.4 | 0.1 | 0.3 | not detected | | 2.8 | | | |
| 1004-05 | Top of Shelf-W End of Office 2 | 0.5 | 0.1 | 0.4 | not detected | | 2.8 | | | |
| 1004-06 | Top of Shelf-NE End of Bedroom 2 | 0.3 | not detected | 0.3 | not detected | | 1.4 | | | |
| 1004-07 | Top of Shelf-NW End of Bedroom 3 | 13.2 | not detected | 11.6 | 1.1 | 0.5 | 50.9 | Yes - Char | Yes | |
| 1004-08 | Return-E End of Hallway | 0.3 | not detected | 0.3 | | | 1.4 | | | |
| 1004-09 | Register-Center of Bedroom 1 | 0.6 | 0.6 | not detected | not detected | | 2.8 | | | |
| 1004-10 | Top of Ducting-SE End of Attic | 3.6 | 0.7 | 2.2 | 0.4 | 0.3 | 17.9 | | Yes | |
| 1004-11 | Top of Outdoor Heater-Exterior N Side of Residence | 8.5 | not detected | 2.2 | 2.9 | 3.4 | 46.8 | | Yes | |

The Estimated Area Ratio % is the estimated area (µm2) of the fire / combustion particles divided by all other particle categories analyzed in the sample.

The Surface density (Cts/mm2) of fire / combustion particles is the numerical surface particle concentration independent of the amount or ratio of background dust present.

\* Note: If the surface particle density of fire residue particles (cts/mm2) is not displayed in the report, it was not reported due to significant sample overloading, or could not be performed on the collection media submitted for analysis. The surface density of fire combustion particles can only be calculated on tape lift samples that are not over-loaded with dust.

The color-coded ranges provided in this summary table are to be used as a preliminary comparison with levels measured from your project. The detailed one-page reports should be used as the primary basis for interpreting the EAA data.   The color-coded guideline ranges of Typical-Low, Typical, Atypical, or Elevated are based on historical background data collected on tape-lift samples from other buildings not suspected of a fire / combustion particle impact.   Laboratory test results are secondary support information to be used in conjunction with information gathered during the visual site assessment. The local background, site specific building conditions, and other potential fire / combustion sources must be considered in order to render an independent opinion and conclusion as to whether or not the concentrations measured on your samples by the EAA laboratory represent a typical background, atypical, or elevated condition for your specific project.

**This Summary Table and the attached laboratory reports shall not be reproduced except in full without the written approval of the laboratory.**

| Total Area Ratio % & Numerical Surface Concentrations | | |
|---|---|---|
| Classification Range | Fire particles Area Ratio % | Fire particles Density cts/mm² |
| Elevated > 10x background | ≥ 10% | > 50 |
| Atypical  3 -10x background | > 3-10% | > 5-50 |
| Typical - upper background | ≥ 1-3% | ≥ 1-5 |
| Typical - low | < 1% | < 1 |

doc.rev.2023-8  6/28/23

ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.   -   306 5th Street, Suite 2A   -   Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**     Method: FIRE-D02

Page 3  of 13

| | |
|---|---|
| Client Name : | Titan Environmental Solutions, Inc. |
| Client Project # : | 126502-CB |
| Requested by : | H. Jangi |
| Project Description : | Debbie Siliva - 28857 Avenida de las Flores |
| Client Sample # : | 1004-01 |
| Client sample description : | Top of Door Trim-SE End of Living Room |
| Sample collected : | 10/04/24 |
| Sample received : | 10/08/24 |
| Sample media : | Tape |

EAA Project # :  24-2294
EAA Sample # :  2294-1

Analysis magnification : 500x
Fields counted : 5
Field area (mm$^2$) : 0.145
Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :**  Fire/combustion residue measured in the typical / upper background range

Qualitative observations confirm the presence of indicator fire/combustion particles

| QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x) | | | |
|---|---|---|---|
| Sample description - color / texture : | Brown / gray powdery & fibrous dust | | |
| Smoke or fire odor present : | No | | |
| Large char (>500µm) / aciniform soot clusters (>50µm) present : | No | | |
| Large ash particles present : | No | | |
| Wildfire or structure fire indicator/signature particles present : | Yes | Vegetation/wildfire indicators | |
| | | Particle Concentration | Estimated |
| | | Cts/area (mm2) | Area Ratio % |
| **FIRE / COMBUSTION RESIDUE CONSTITUENTS** | Totals ▶ | 5.6 | 1.8 % |
| | Aciniform soot | not detected | not detected |
| | Char  (pyrolyzed vegetation) | 2.8 | 1.3 |
| | Ash | 1.4 | 0.3 |
| *Vegetation/wildfire indicators* | Burned clay, mineral grains | 1.4 | 0.2 |
| | **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents : | Cellulosic / synthetic fabric fibers | 24.8 | 44.3 |
| | Fiberglass fibers | not detected | not detected |
| Non-fibrous Constituents : | Mixed inorganic mineral dust / soil | 319.1 | 30.8 |
| | Other opaque / paint / metal corrosion / rubber | 74.3 | 11.1 |
| | **BIOAEROSOLS** | | |
| Mold Spores / Structures : | Unspecified | 5.5 | 0.2 |
| Pollen : | Unspecified | 4.1 | 0.7 |
| Plant fragments : | Vegetation fragments, trichomes, etc. | 4.1 | 1.2 |
| Animal fragments : | Dander / skin cells | 33.0 | 8.9 |
| Miscellaneous : | Insect parts (legs, spiderwebs, etc.) | 4.1 | 1.0 |
| | **ADDITIONAL CONSTITUENTS** | | |
| Other : | Unspecified | not detected | not detected |

Particles counted : 345
Detection Limit - (Area ratio %) : 0.2%
Detection Limit - (Cts/area) mm2 : 1.4

Background dust loading : Atypical

Analysis date : *10/09/24*

Authorized / data reviewed by : ___*Joseph R. Heintskill*___   *10/11/24*

Analyst initials : *vgr*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%
*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*
**Note:  Sample results are only applicable to the items or locations tested.**

doc.rev.2023-8  6/28/23

*ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.* - 306 5th Street, Suite 2A   -   Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**   Method: FIRE-D02

Page 4  of 13

| | |
|---|---|
| Client Name : | Titan Environmental Solutions, Inc. |
| Client Project # : | 126502-CB |
| Requested by : | H. Jangi |
| Project Description : | Debbie Siliva - 28857 Avenida de las Flores |
| Client Sample # : | 1004-02 |
| Client sample description : | Top of Cabinets-NE End of Kitchen |
| Sample collected : | 10/04/24 |
| Sample received : | 10/08/24 |
| Sample media : | Tape |

EAA Project # :  24-2294
EAA Sample # :  2294-2

Analysis magnification :  500x
Fields counted :  5
Field area (mm$^2$) : 0.145
Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :**  Fire/combustion residue measured in the typical / upper background range

Qualitative observations confirm the presence of indicator fire/combustion particles

| QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x) | |
|---|---|
| Sample description - color / texture : | Brown / gray powdery & fibrous dust |
| Smoke or fire odor present : | No |
| Large char (>500μm) / aciniform soot clusters (>50μm) present : | No |
| Large ash particles present : | No |
| Wildfire or structure fire indicator/signature particles present : | Yes    Vegetation/wildfire indicators |

| | | Particle Concentration | Estimated |
|---|---|---|---|
| | | Cts/area (mm2) | Area Ratio % |
| | **FIRE / COMBUSTION RESIDUE CONSTITUENTS** Totals ▶ | **5.6** | **1.3 %** |
| | Aciniform soot | not detected | not detected |
| | Char  (pyrolyzed vegetation) | 1.4 | 0.6 |
| | Ash | 1.4 | 0.3 |
| *Vegetation/wildfire indicators* | Burned clay, mineral grains, phytoliths | 2.8 | 0.4 |
| | **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents : | Cellulosic / synthetic fabric fibers | 28.9 | 43.6 |
| | Fiberglass fibers | 2.8 | 0.7 |
| Non-fibrous Constituents : | Mixed inorganic mineral dust and starch grains | 419.5 | 34.2 |
| | Other opaque / paint / metal corrosion / rubber | 56.4 | 7.1 |
| | **BIOAEROSOLS** | | |
| Mold Spores / Structures : | Unspecified | 11.0 | 0.3 |
| Pollen : | Unspecified | 4.1 | 0.6 |
| Plant fragments : | Vegetation fragments, trichomes, etc. | 2.8 | 0.7 |
| Animal fragments : | Dander / skin cells | 50.9 | 11.5 |
| Miscellaneous : | Unspecified | not detected | not detected |
| | **ADDITIONAL CONSTITUENTS** | | |
| Other : | Unspecified | not detected | not detected |

Particles counted :  423
Detection Limit - (Area ratio %) :  0.3%
Detection Limit - (Cts/area) mm2 :  1.4

Background dust loading :  Atypical

Analysis date :  *10/09/24*

Authorized / data reviewed by :   *Joseph R. Heintskill*      *10/11/24*

Analyst initials :  *vgr*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%
*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*
**Note:  Sample results are only applicable to the items or locations tested.**                    *doc.rev.2023-8  6/28/23*

ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.    306 5th Street, Suite 2A    -    Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**    Method: FIRE-D02

Page 5 of 13

| | |
|---|---|
| Client Name : | Titan Environmental Solutions, Inc. |
| Client Project # : | 126502-CB |
| Requested by : | H. Jangi |
| Project Description : | Debbie Siliva - 28857 Avenida de las Flores |
| Client Sample # : | 1004-03 |
| Client sample description : | Top of Painting Frame-SW End of Office 1 |
| Sample collected : | 10/04/24 |
| Sample received : | 10/08/24 |
| Sample media : | Tape |

EAA Project # :  24-2294
EAA Sample # :  2294-3

Analysis magnification : 500x
Fields counted : 5
Field area (mm$^2$) : 0.145
Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :**  Fire/combustion residue measured in the typical / upper background range

---

### QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x)

| | | |
|---|---|---|
| Sample description - color / texture : | Gray powdery & fibrous dust | |
| Smoke or fire odor present : | No | |
| Large char (>500μm) / aciniform soot clusters (>50μm) present : | No | |
| Large ash particles present : | No | |
| Wildfire or structure fire indicator/signature particles present : | No | |

| | | Particle Concentration | Estimated |
|---|---|---|---|
| | | Cts/area (mm2) | Area Ratio % |
| **FIRE / COMBUSTION RESIDUE CONSTITUENTS** | Totals ▶ | **6.9** | **1.1 %** |
| | Aciniform soot | 4.1 | 0.5 |
| | Char  (pyrolyzed vegetation) | 2.8 | 0.6 |
| | Ash | not detected | not detected |
| | **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents : | Cellulosic / synthetic fabric fibers | 44.0 | 47.7 |
| | Fiberglass fibers | not detected | not detected |
| Non-fibrous Constituents : | Mixed inorganic mineral dust and starch grains | 286.1 | 13.2 |
| | Other opaque / paint / metal corrosion / rubber | 57.8 | 5.2 |
| | **BIOAEROSOLS** | | |
| Mold Spores / Structures : | Unspecified | 5.5 | 0.1 |
| Pollen : | Unspecified | 2.8 | 0.3 |
| Plant fragments : | Vegetation fragments, trichomes, etc. | not detected | not detected |
| Animal fragments : | Dander / skin cells | 199.4 | 32.4 |
| Miscellaneous : | Unspecified | not detected | not detected |
| | **ADDITIONAL CONSTITUENTS** | | |
| Other : | Unspecified | not detected | not detected |

Particles counted : 438
Detection Limit - (Area ratio %) : 0.1%
Detection Limit - (Cts/area) mm2 : 1.4

Background dust loading :  Elevated

Analysis date : *10/09/24*

Authorized / data reviewed by :    *Joseph R. Heintskill*    *10/11/24*    Analyst initials : *vgr*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%
*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an*
*atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on*
*tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*
**Note:  Sample results are only applicable to the items or locations tested.**

doc.rev.2023-8  6/28/23

*ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.  -  306 5th Street, Suite 2A  -  Bay City, MI 48708*

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**    Method: FIRE-D02

*Page 6 of 13*

| | |
|---|---|
| Client Name : | Titan Environmental Solutions, Inc. |
| Client Project # : | 126502-CB |
| Requested by : | H. Jangi |
| Project Description : | Debbie Siliva - 28857 Avenida de las Flores |
| Client Sample # : | 1004-04 |
| Client sample description : | Top of Closet Door Trim-SW End of Bedroom 1 |
| Sample collected : | 10/04/24 |
| Sample received : | 10/08/24 |
| Sample media : | Tape |

EAA Project # :  24-2294
EAA Sample # :  2294-4

Analysis magnification : 500x
Fields counted : 5
Field area (mm$^2$) : 0.145
Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :**   Low fire/combustion residue present (isolated particles detected)

### QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x)

| | |
|---|---|
| Sample description - color / texture : | Gray powdery & fibrous dust |
| Smoke or fire odor present : | No |
| Large char (>500µm) / aciniform soot clusters (>50µm) present : | No |
| Large ash particles present : | No |
| Wildfire or structure fire indicator/signature particles present : | No |

| FIRE / COMBUSTION RESIDUE CONSTITUENTS | Particle Concentration Cts/area (mm2) | Estimated Area Ratio % |
|---|---|---|
| **Totals ▶** | **2.8** | **0.4 %** |
| Aciniform soot | 1.4 | 0.1 |
| Char  (pyrolyzed vegetation) | 1.4 | 0.3 |
| Ash | not detected | not detected |
| **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents :  Cellulosic / synthetic fabric fibers | 39.9 | 43.9 |
| Fiberglass fibers | not detected | not detected |
| Non-fibrous Constituents :  Mixed inorganic mineral dust / soil | 184.3 | 7.6 |
| Other opaque / paint / metal corrosion / rubber | 61.9 | 5.7 |
| **BIOAEROSOLS** | | |
| Mold Spores / Structures :  Unspecified | 6.9 | 0.1 |
| Pollen :  Unspecified | 2.8 | 0.3 |
| Plant fragments :  Vegetation fragments, trichomes, etc. | not detected | not detected |
| Animal fragments :  Dander / skin cells | 250.3 | 41.3 |
| Miscellaneous :  Feather fibrils | 4.1 | 0.6 |
| **ADDITIONAL CONSTITUENTS** | | |
| Other :  Unspecified | not detected | not detected |

Particles counted :  402
Detection Limit - (Area ratio %) :  0.1%
Detection Limit - (Cts/area) mm2 :  1.4

Background dust loading :  Elevated

Analysis date :  10/09/24
Analyst initials :  vgr

Authorized / data reviewed by :   *Joseph R. Heintskill*    *10/11/24*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%
*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*
**Note:  Sample results are only applicable to the items or locations tested.**

doc.rev.2023-8  6/28/23

ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.    306 5th Street, Suite 2A    -    Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**    Method: FIRE-D02

Page 7  of 13

Client Name :  Titan Environmental Solutions, Inc.

Client Project # :  126502-CB                                        EAA Project # :  24-2294

Requested by :  H. Jangi                                              EAA Sample # :  2294-5

Project Description :  Debbie Siliva - 28857 Avenida de las Flores

Client Sample # :  1004-05

Client sample description :  Top of Shelf-W End of Office 2

Sample collected :  10/04/24                          Analysis magnification :  500x

Sample received :  10/08/24                                Fields counted :  5

Sample media :  Tape                                    Field area (mm$^2$) : 0.145

Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :**  Low fire/combustion residue present (isolated particles detected)

| QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x) | | | |
|---|---|---|---|
| Sample description - color / texture : | | Gray / white powdery & fibrous dust | |
| Smoke or fire odor present : | | No | |
| Large char (>500µm) / aciniform soot clusters (>50µm) present : | | No | |
| Large ash particles present : | | No | |
| Wildfire or structure fire indicator/signature particles present : | | No | |

| | | Particle Concentration | Estimated |
|---|---|---|---|
| | | Cts/area (mm2) | Area Ratio % |
| **FIRE / COMBUSTION RESIDUE CONSTITUENTS** | Totals ▶ | 2.8 | 0.5 % |
| | Aciniform soot | 1.4 | 0.1 |
| | Char  (pyrolyzed vegetation) | 1.4 | 0.4 |
| | Ash | not detected | not detected |
| | **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents : | Cellulosic / synthetic fabric fibers | 24.8 | 32.3 |
| | Fiberglass fibers | not detected | not detected |
| Non-fibrous Constituents : | Mixed inorganic mineral dust / soil | 594.1 | 41.9 |
| | Other opaque / paint / metal corrosion / rubber | 30.3 | 3.3 |
| | **BIOAEROSOLS** | | |
| Mold Spores / Structures : | Unspecified | 4.1 | 0.1 |
| Pollen : | Unspecified | 1.4 | 0.2 |
| Plant fragments : | Vegetation fragments, trichomes, etc. | not detected | not detected |
| Animal fragments : | Dander / skin cells | 107.3 | 21.0 |
| Miscellaneous : | Insect parts / feather fibrils | 4.1 | 0.7 |
| | **ADDITIONAL CONSTITUENTS** | | |
| Other : | Unspecified | not detected | not detected |

Particles counted :  559                                    Background dust loading :  Elevated

Detection Limit - (Area ratio %) :  0.1%

Detection Limit - (Cts/area) mm2 :  1.4

Analysis date :  *10/09/24*

Authorized / data reviewed by :    *Joseph R. Heintskill*    *10/11/24*      Analyst initials :  *vgr*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%

*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*

**Note:  Sample results are only applicable to the items or locations tested.**                    *doc.rev.2023-8  6/28/23*

ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.  -  306 5th Street, Suite 2A  -  Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**     Method: FIRE-D02

Page 8  of  13

Client Name : Titan Environmental Solutions, Inc.
Client Project # : 126502-CB                                    EAA Project # :  24-2294
Requested by :  H. Jangi                                         EAA Sample # :  2294-6
Project Description :  Debbie Siliva - 28857 Avenida de las Flores
Client Sample # :  1004-06
Client sample description :  Top of Shelf-NE End of Bedroom 2
Sample collected :  10/04/24                           Analysis magnification :  500x
Sample received :  10/08/24                                   Fields counted :  5
Sample media :  Tape                                     Field area (mm$^2$) :  0.145
                                                          Area counted (mm$^2$) :  0.73

**SUMMARY CONCLUSIONS :**  Low fire/combustion residue present (isolated particles detected)

| QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x) | | | |
|---|---|---|---|
| Sample description - color / texture : | Gray / white powdery & fibrous dust | | |
| Smoke or fire odor present : | No | | |
| Large char (>500µm) / aciniform soot clusters (>50µm) present : | No | | |
| Large ash particles present : | No | | |
| Wildfire or structure fire indicator/signature particles present : | No | | |
| | | Particle Concentration | Estimated |
| | | Cts/area (mm2) | Area Ratio % |
| **FIRE / COMBUSTION RESIDUE CONSTITUENTS** | Totals ▶ | **1.4** | **0.3 %** |
| | Aciniform soot | not detected | not detected |
| | Char  (pyrolyzed vegetation) | 1.4 | 0.3 |
| | Ash | not detected | not detected |
| | **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents : | Cellulosic / synthetic fabric fibers | 27.5 | 31.3 |
| | Fiberglass fibers | not detected | not detected |
| Non-fibrous Constituents : | Mixed inorganic mineral dust / soil | 541.9 | 33.3 |
| | Other opaque / paint / metal corrosion / rubber | 121.0 | 11.5 |
| | **BIOAEROSOLS** | | |
| Mold Spores / Structures : | Unspecified | 6.9 | 0.1 |
| Pollen : | Unspecified | not detected | not detected |
| Plant fragments : | Vegetation fragments, trichomes, etc. | not detected | not detected |
| Animal fragments : | Dander / skin cells | 137.5 | 23.5 |
| Miscellaneous : | Unspecified | not detected | not detected |
| | **ADDITIONAL CONSTITUENTS** | | |
| Other : | Unspecified | not detected | not detected |

Particles counted :  608                          Background dust loading :  Elevated
Detection Limit - (Area ratio %) :  0.1%
Detection Limit - (Cts/area) mm2 :  1.4

                                                         Analysis date :  *10/09/24*
Authorized / data reviewed by :     *Joseph R. Heintskill*     *10/11/24*      Analyst initials :  *vgr*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%
*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an*
*atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on*
*tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*
**Note:  Sample results are only applicable to the items or locations tested.**                      *doc.rev.2023-8  6/28/23*

ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.    -    306 5th Street, Suite 2A    -    Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**    Method: FIRE-D02

*Page 9  of 13*

| | |
|---|---|
| Client Name : | Titan Environmental Solutions, Inc. |
| Client Project # : | 126502-CB |
| Requested by : | H. Jangi |
| Project Description : | Debbie Siliva - 28857 Avenida de las Flores |
| Client Sample # : | 1004-07 |
| Client sample description : | Top of Shelf-NW End of Bedroom 3 |
| Sample collected : | 10/04/24 |
| Sample received : | 10/08/24 |
| Sample media : | Tape |

EAA Project # :   24-2294
EAA Sample # :   2294-7

Analysis magnification : 500x
Fields counted : 5
Field area (mm$^2$) : 0.145
Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :**  Fire/combustion residue concentration measured above typical background concentrations
Qualitative observations confirm the presence of indicator fire/combustion particles

### QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x)

| | |
|---|---|
| Sample description - color / texture : | Brown / gray powdery & fibrous dust |
| Smoke or fire odor present : | No |
| Large char (>500µm) / aciniform soot clusters (>50µm) present : | Yes - Char |
| Large ash particles present : | No |
| Wildfire or structure fire indicator/signature particles present : | Yes    Vegetation/wildfire indicators |

| | | Particle Concentration | Estimated |
|---|---|---|---|
| | | Cts/area (mm2) | Area Ratio % |
| **FIRE / COMBUSTION RESIDUE CONSTITUENTS** | **Totals ▶** | **50.9** | **13.2 %** |
| | Aciniform soot | not detected | not detected |
| | Char  (pyrolyzed vegetation) | 44.0 | 11.6 |
| | Ash | 4.1 | 1.1 |
| *Vegetation/wildfire indicators* | Burned clay, mineral grains, pollen | 2.8 | 0.5 |
| | **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents : | Cellulosic / synthetic fabric fibers | 17.9 | 35.3 |
| | Fiberglass fibers | not detected | not detected |
| Non-fibrous Constituents : | Mixed inorganic mineral dust / soil | 303.9 | 32.4 |
| | Other opaque / paint / metal corrosion / rubber | 72.9 | 12.0 |
| | **BIOAEROSOLS** | | |
| Mold Spores / Structures : | Unspecified | 8.3 | 0.3 |
| Pollen : | Unspecified | 15.1 | 3.0 |
| Plant fragments : | Vegetation fragments, trichomes, etc. | 2.8 | 0.9 |
| Animal fragments : | Dander / skin cells | 9.6 | 2.9 |
| Miscellaneous : | Unspecified | not detected | not detected |
| | **ADDITIONAL CONSTITUENTS** | | |
| Other : | Unspecified | not detected | not detected |

Particles counted : 350
Detection Limit - (Area ratio %) : 0.3%
Detection Limit - (Cts/area) mm2 : 1.4

Background dust loading : Atypical

Analysis date : *10/09/24*

Authorized / data reviewed by :   *Joseph R. Heintskill*    *10/11/24*       Analyst initials :  *vgr*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%
*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an*
*atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on*
*tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*
**Note:  Sample results are only applicable to the items or locations tested.**

doc.rev.2023-8  6/28/23

*ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.* 306 5th Street, Suite 2A  -  Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**    Method: FIRE-D02

Page 10 of 13

Client Name : Titan Environmental Solutions, Inc.

Client Project # : 126502-CB                           EAA Project # :  24-2294

Requested by :  H. Jangi                               EAA Sample # :  2294-8

Project Description : Debbie Siliva - 28857 Avenida de las Flores

Client Sample # :  1004-08

Client sample description :  Return-E End of Hallway

Sample collected :  10/04/24                       Analysis magnification : 500x

Sample received :  10/08/24                            Fields counted : 5

Sample media : Tape                            Field area (mm$^2$) : 0.145

Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :**  Low fire/combustion residue present (isolated particles detected)

| QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x) | | | |
|---|---|---|---|
| Sample description - color / texture : | Gray powdery & fibrous dust | | |
| Smoke or fire odor present : | No | | |
| Large char (>500µm) / aciniform soot clusters (>50µm) present : | No | | |
| Large ash particles present : | No | | |
| Wildfire or structure fire indicator/signature particles present : | No | | |
| | | Particle Concentration | Estimated |
| | | Cts/area (mm2) | Area Ratio % |
| FIRE / COMBUSTION RESIDUE CONSTITUENTS | Totals ▶ | 1.4 | 0.3 % |
| | Aciniform soot | not detected | not detected |
| | Char  (pyrolyzed vegetation) | 1.4 | 0.3 |
| | Ash | not detected | not detected |
| | **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents : | Cellulosic / synthetic fabric fibers | 48.1 | 46.8 |
| | Fiberglass fibers | not detected | not detected |
| Non-fibrous Constituents : | Mixed inorganic mineral dust and starch grains | 374.1 | 13.6 |
| | Other opaque / paint / metal corrosion / rubber | 66.0 | 5.3 |
| | **BIOAEROSOLS** | | |
| Mold Spores / Structures : | Unspecified | 9.6 | 0.2 |
| Pollen : | Unspecified | 2.8 | 0.3 |
| Plant fragments : | Vegetation fragments, trichomes, etc. | not detected | not detected |
| Animal fragments : | Dander / skin cells | 229.7 | 33.5 |
| Miscellaneous : | Unspecified | not detected | not detected |
| | **ADDITIONAL CONSTITUENTS** | | |
| Other : | Unspecified | not detected | not detected |

Particles counted :  532                         Background dust loading :  Elevated

Detection Limit - (Area ratio %) : 0.2%

Detection Limit - (Cts/area) mm2 : 1.4

Analysis date :  *10/09/24*

Authorized / data reviewed by :   *Joseph R. Heintskill*    *10/11/24*       Analyst initials :  *vgr*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%

*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an*

*atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on*

*tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*

**Note:  Sample results are only applicable to the items or locations tested.**                    doc.rev.2023-8  6/28/23

ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc. 306 5th Street, Suite 2A  -  Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**   Method: FIRE-D02

*Page 11 of 13*

Client Name : Titan Environmental Solutions, Inc.
Client Project # : 126502-CB
Requested by : H. Jangi
Project Description : Debbie Siliva - 28857 Avenida de las Flores
Client Sample # : 1004-09
Client sample description : Register-Center of Bedroom 1
Sample collected : 10/04/24
Sample received : 10/08/24
Sample media : Tape

EAA Project # : 24-2294
EAA Sample # : 2294-9

Analysis magnification : 500x
Fields counted : 5
Field area (mm$^2$) : 0.145
Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :**  Low fire/combustion residue present (isolated particles detected)

| QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x) | | | |
|---|---|---|---|
| Sample description - color / texture : | Gray powdery & fibrous dust | | |
| Smoke or fire odor present : | No | | |
| Large char (>500μm) / aciniform soot clusters (>50μm) present : | No | | |
| Large ash particles present : | No | | |
| Wildfire or structure fire indicator/signature particles present : | No | | |
| | | Particle Concentration | Estimated |
| | | Cts/area (mm2) | Area Ratio % |
| **FIRE / COMBUSTION RESIDUE CONSTITUENTS** | Totals ▶ | 2.8 | 0.6 % |
| Aciniform soot | | 2.8 | 0.6 |
| Char  (pyrolyzed vegetation) | | not detected | not detected |
| Ash | | not detected | not detected |
| **INORGANIC CONSTITUENTS** | | | |
| Fibrous Constituents : Cellulosic / synthetic fabric fibers | | 11.0 | 58.8 |
| Fiberglass fibers | | not detected | not detected |
| Non-fibrous Constituents : Mixed inorganic mineral dust / soil | | 107.3 | 21.5 |
| Other opaque / paint / metal corrosion / rubber | | 33.0 | 14.7 |
| **BIOAEROSOLS** | | | |
| Mold Spores / Structures : Unspecified | | not detected | not detected |
| Pollen : Unspecified | | not detected | not detected |
| Plant fragments : Vegetation fragments, trichomes, etc. | | not detected | not detected |
| Animal fragments : Dander / skin cells | | 5.5 | 4.4 |
| Miscellaneous : Unspecified | | not detected | not detected |
| **ADDITIONAL CONSTITUENTS** | | | |
| Other : Unspecified | | not detected | not detected |

Particles counted : 116
Detection Limit - (Area ratio %) : 0.6%
Detection Limit - (Cts/area) mm2 : 1.4

Background dust loading : Typical

Analysis date : *10/09/24*

Authorized / data reviewed by :   *Joseph R. Heintskill*   *10/11/24*      Analyst initials :  *vgr*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%
*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*
**Note:  Sample results are only applicable to the items or locations tested.**                        *doc.rev.2023-8  6/28/23*

ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.  -  306 5th Street, Suite 2A  -  Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**    Method: FIRE-D02

*Page 12  of 13*

| | |
|---|---|
| Client Name : | Titan Environmental Solutions, Inc. |
| Client Project # : | 126502-CB |
| Requested by : | H. Jangi |
| Project Description : | Debbie Siliva - 28857 Avenida de las Flores |
| Client Sample # : | 1004-10 |
| Client sample description : | Top of Ducting-SE End of Attic |
| Sample collected : | 10/04/24 |
| Sample received : | 10/08/24 |
| Sample media : | Tape |

EAA Project # :  24-2294
EAA Sample # :  2294-10

Analysis magnification :  500x
Fields counted :  5
Field area (mm$^2$) : 0.145
Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :** Fire/combustion residue concentration measured above typical background concentrations
Qualitative observations confirm the presence of indicator fire/combustion particles

| QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x) | | | |
|---|---|---|---|
| Sample description - color / texture : | Gray powdery & fibrous dust | | |
| Smoke or fire odor present : | No | | |
| Large char (>500µm) / aciniform soot clusters (>50µm) present : | No | | |
| Large ash particles present : | No | | |
| Wildfire or structure fire indicator/signature particles present : | Yes | Vegetation/wildfire indicators | |
| | | Particle Concentration | Estimated |
| | | Cts/area (mm2) | Area Ratio % |
| **FIRE / COMBUSTION RESIDUE CONSTITUENTS** | Totals ▶ | **17.9** | **3.6 %** |
| | Aciniform soot | 9.6 | 0.7 |
| | Char  (pyrolyzed vegetation) | 5.5 | 2.2 |
| | Ash | 1.4 | 0.4 |
| *Vegetation/wildfire indicators* | Burned phytoliths | 1.4 | 0.3 |
| | **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents : | Cellulosic / synthetic fabric fibers | 20.6 | 41.6 |
| | Fiberglass fibers | 6.9 | 2.3 |
| Non-fibrous Constituents : | Mixed inorganic mineral dust / soil | 429.1 | 32.5 |
| | Other opaque / paint / metal corrosion / rubber | 74.3 | 12.5 |
| | **BIOAEROSOLS** | | |
| Mold Spores / Structures : | Unspecified | 12.4 | 0.4 |
| Pollen : | Unspecified | 2.8 | 0.6 |
| Plant fragments : | Vegetation fragments, trichomes, etc. | not detected | not detected |
| Animal fragments : | Dander / skin cells | 19.3 | 5.8 |
| Miscellaneous : | Insect parts (legs, spiderwebs, etc.) | 2.8 | 0.7 |
| | **ADDITIONAL CONSTITUENTS** | | |
| Other : | Unspecified | not detected | not detected |

Particles counted :  426
Detection Limit - (Area ratio %) :  0.3%
Detection Limit - (Cts/area) mm2 :  1.4

Background dust loading :  Atypical

Analysis date : *10/09/24*

Authorized / data reviewed by :    *Joseph R. Heintskill*    *10/11/24*

Analyst initials :  *vgr*

Background dust loading (area%) :  Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%
*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an*
*atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on*
*tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*
**Note:  Sample results are only applicable to the items or locations tested.**

*doc.rev.2023-8  6/28/23*

ENVIRONMENTAL ANALYSIS ASSOCIATES, Inc.   -   306 5th Street, Suite 2A   -   Bay City, MI 48708

**FIRE/COMBUSTION RESIDUE & DUST ANALYSIS  - Optical Microscopy**    Method: FIRE-D02

Page 13  of 13

*(end of data report)*

| | |
|---|---|
| Client Name : | Titan Environmental Solutions, Inc. |
| Client Project # : | 126502-CB |
| Requested by : | H. Jangi |
| Project Description : | Debbie Siliva - 28857 Avenida de las Flores |
| Client Sample # : | 1004-11 |
| Client sample description : | Top of Outdoor Heater-Exterior N Side of Residence |

EAA Project # :  24-2294
EAA Sample # :  2294-11

| | |
|---|---|
| Sample collected : | 10/04/24 |
| Sample received : | 10/08/24 |
| Sample media : | Tape |

Analysis magnification :  500x
Fields counted :  5
Field area (mm$^2$) : 0.145
Area counted (mm$^2$) : 0.73

**SUMMARY CONCLUSIONS :**   Fire/combustion residue concentration measured above typical background concentrations
Qualitative observations confirm the presence of indicator fire/combustion particles

| QUALITATIVE / ASSEMBLAGE OBSERVATIONS -Reflected & Polarized Light Microscopy (10-500x) | | | |
|---|---|---|---|
| Sample description - color / texture : | Brown / gray powdery & fibrous dust | | |
| Smoke or fire odor present : | No | | |
| Large char (>500µm) / aciniform soot clusters (>50µm) present : | No | | |
| Large ash particles present : | No | | |
| Wildfire or structure fire indicator/signature particles present : | Yes | Vegetation/wildfire indicators | |

| | | Particle Concentration | Estimated |
|---|---|---|---|
| | | Cts/area (mm2) | Area Ratio % |
| **FIRE / COMBUSTION RESIDUE CONSTITUENTS** | **Totals ▶** | **46.8** | **8.5 %** |
| | Aciniform soot | not detected | not detected |
| | Char  (pyrolyzed vegetation) | 4.1 | 2.2 |
| | Ash | 8.3 | 2.9 |
| *Vegetation/wildfire indicators* | Burned phytoliths | 34.4 | 3.4 |
| | **INORGANIC CONSTITUENTS** | | |
| Fibrous Constituents : | Cellulosic / synthetic fabric fibers | 13.8 | 36.4 |
| | Fiberglass fibers | not detected | not detected |
| Non-fibrous Constituents : | Mixed inorganic mineral dust / soil | 281.9 | 40.3 |
| | Other opaque / paint / metal corrosion / rubber | 49.5 | 10.9 |
| | **BIOAEROSOLS** | | |
| Mold Spores / Structures : | Unspecified | 5.5 | 0.2 |
| Pollen : | Unspecified | 2.8 | 0.7 |
| Plant fragments : | Vegetation fragments, trichomes, etc. | 2.8 | 1.2 |
| Animal fragments : | Dander / skin cells | 4.1 | 1.6 |
| Miscellaneous : | Unspecified | not detected | not detected |
| | **ADDITIONAL CONSTITUENTS** | | |
| Other : | Unspecified | not detected | not detected |

Particles counted : 296
Detection Limit - (Area ratio %) : 0.2%
Detection Limit - (Cts/area) mm2 : 1.4

Background dust loading : Atypical

Analysis date :  *10/09/24*

Authorized / data reviewed by :   *Joseph R. Heintskill*   *10/11/24*

Analyst initials :  *vgr*

Background dust loading (area%) : Typical-low <5%,  Typical 5-20%,  Atypical 20-40%,  Elevated 40-80%,  Overloaded >80%
*The local geographic background and other site specific conditions and combustion sources must be taken into account in order to determine if an*
*atypical or elevated condition is present.  The estimated surface particle concentrations per unit surface area (Cts/mm2) can only be calculated on*
*tape lift samples.  For a detailed explanation, see the EAA "Suggested Report Interpretation Guidelines" located on our website at eaalab.com.*
***Note: Sample results are only applicable to the items or locations tested.***

doc.rev.2023-8  6/28/23



**APPENDIX B**

**FIGURES**

126506-CB
10/04/2024
Debbie Siliva
28857 Avenida de las Flores
Menifee, CA 92587

| 06. Bedroom 2 | Office 2 | Bathroom 1 | 09. Bedroom 1 |
|---|---|---|---|

Bathroom 2

10.

Bedroom 3

Laundry

H

07.            05.            08.            04.

11.

02.            Hallway            Office 1

Kitchen            03.

01.

Dining            Living

N

Scanned with
CamScanner



# APPENDIX C

# PHOTOGRAPHS

**Photo Log**

| Project Name: | Debbie Siliva |
|---|---|
| Project Location: | 28857 Avenida de las Flores, Menifee, California 92587 |



Photo of Subject Property

Sample -01 – Door Trim – Southeast End of Living Room

Sample -02 – Cabinet – Northeast End of Kitchen

Sample -03 – Painting Frame – Southwest End of Office #1

Sample -04 – Closet Door Trim – Southwest End of Bedroom #1

Sample -05 – Shelf – Northeast End of Office #2

Sample -06 – Shelf – Northeast End of the Bedroom #2

**Photo Log**

| Project Name: | Debbie Siliva |
|---|---|
| Project Location: | 28857 Avenida de las Flores, Menifee, California 92587 |



| | |
|---|---|
| Sample -07 – Shelf – Northwest End of the Bedroom #3 | Sample -08 – HVAC Return Air Vent – East End of the Hallway |
| Sample -09 – HVAC Supply Air Vent – Center of Bedroom #1 | Sample -10 – Ducting – Southeast End of Attic |
| Sample -11 – Outdoor Heater – North End of Exterior | |

# EXHIBIT B

**From:** George Blanco
**Sent:** Tuesday, November 26, 2024 3:49 PM
**To:** HOME CLMS-FIRECLAIMS <statefarmfireclaims@statefarm.com>
**Cc:** Linet Megerdomian <lm@megerdomianlaw.com>
**Subject:** 0573Q907R

Hello,

We would like to request State Farm to hire an industrial hygienist to inspect this property and investigate further. The previous denial from September 24, 2024, the same day the inspection took place, is insufficient to deny coverage and fails to meet the standard of a thorough, fair and objective investigation set forth by California Insurance Code: Sub Section 2695.7 (d).

There were numerous areas pointed out by the inspector present on behalf of Jen Renovations that were not inspected thoroughly by adjuster Sabri Alquza. The denial letter from September 24, 2024, also incorrectly states this claim is for the Airport fire which started on September 9, 2024, our client/ your insured filed a claim for smoke damage from the Line Fire, which started on September 5, 2024. Please update your records so that this is accurately reflected on your file as well.

Sincerely,

George
*George Blanco* **| Paralegal**
**Megerdomian Law Offices, P.C.**
320 North Central Avenue, Suite 102A
Glendale, CA,91203

Office: 877.734.3095
Fax: 818.272.8634
www.megerdomianlaw.com



## Megerdomian Law Offices, APC

Free Consultation - Bankruptcy - Personal Injury - Property Damage

www.megerdomianlaw.com

**Section 2695.5.** Duties upon Receipt of Communications
**b)** Upon receiving any communication from a claimant, regarding a claim, that reasonably suggests that a response is expected, every licensee shall immediately, but in no event more than fifteen **(15) calendar days** after receipt of that communication, furnish the claimant with a complete response based on the facts as then known by the licensee. This subsection shall not apply to require communication with a claimant subsequent to receipt by the licensee of a notice of legal action by that claimant.

Confidentiality Notice: This e-mail is intended only for the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this

 Outlook

## 05-73Q9-07R

**From** HOME CLMS-FIRECLAIMS <statefarmfireclaims@statefarm.com>

**Date** Tue 12/17/2024 1:42 PM

**To**   George Blanco <George@megerdomianlaw.com>

**Cc**   DEBIOLINE2@AOL.COM <DEBIOLINE2@AOL.COM>

Hello,

As it stands, there is no coverage for this loss as stated in our denial letter previously sent to you, management has reviewed and agreed with the denial letter.

A physical inspection took place on 09/24/2024, based off our inspection there was no evidence of smoke, ash, or soot damage.

Please submit your hygienist report to support your findings for our review.

Feel free to reach out to me if you have any questions.

Thank you
Sabri Alquza
**Phone (844) 458-4300**
**Extension 3097634704**

# EXHIBIT C


JEN Renovation

## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

| | |
|---|---|
| Insured: | Debbie Silvia |
| Property: | 28857 Avenida de las Flores |
| | Menifee, CA 92587 |

| | | | |
|---|---|---|---|
| Claim Rep.: | Aram Arsenyan | Business: | (747) 276-9662 |
| Position: | Field Estimator | E-mail: | jen.renovation@gmail.com |
| Company: | Jen Renovation | | |

| | | | |
|---|---|---|---|
| Estimator: | Aram Arsenyan | Business: | (747) 276-9662 |
| Position: | Field Estimator | E-mail: | jen.renovation@gmail.com |
| Company: | Jen Renovation | | |

**Claim Number:** 0573Q907R          **Policy Number:** N/A                    **Type of Loss:** Smoke

| | | | | |
|---|---|---|---|---|
| Date Contacted: | 9/24/2024 12:00 AM | | | |
| Date of Loss: | 9/5/2024 12:00 AM | Date Received: | 9/24/2024 3:54 PM | |
| Date Inspected: | 9/24/2024 12:00 AM | Date Entered: | 9/26/2024 3:51 PM | |
| Date Est. Completed: | 11/13/2024 4:31 PM | | | |

| | |
|---|---|
| Price List: | CABD8X_SEP24 |
| | Restoration/Service/Remodel |
| Estimate: | 2024-09-26-1551 |



**JEN Renovation**

## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

### 2024-09-26-1551
### Main Level

**Main Level**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 1. Single axle dump truck - per load - including dump fees | 1.00 EA | 428.26 | 0.00 | 0.00 | 428.26 |
| 2. R&R Batt insulation - 10" - R30 - unfaced batt | 1,402.55 SF | 0.50 | 1.97 | 171.81 | 3,636.11 |
| 3. HEPA Vacuuming - Detailed - (PER SF) | 2,450.00 SF | 0.00 | 1.23 | 0.00 | 3,013.50 |
| After insulation been removed. | | | | | |
| 4. Clean stucco | 1,408.50 SF | 0.00 | 0.94 | 1.23 | 1,325.22 |
| 5. Clean floor or roof joist system | 2,450.00 SF | 0.00 | 1.51 | 4.29 | 3,703.79 |
| 6. Clean with pressure/chemical spray | 1,402.55 SF | 0.00 | 0.50 | 1.23 | 702.51 |
| Roof | | | | | |
| 7. Clean exterior light fixture - Heavy | 6.00 EA | 0.00 | 29.76 | 0.04 | 178.60 |
| 8. Clean air conditioning condenser unit | 1.00 EA | 0.00 | 101.84 | 0.14 | 101.98 |
| 9. Clean ductwork - Interior - Heavy clean (PER REGISTER) | 10.00 EA | 0.00 | 51.20 | 0.09 | 512.09 |
| 10. Clean furnace - forced air | 1.00 EA | 0.00 | 81.71 | 0.02 | 81.73 |
| 11. Negative air fan/Air scrubber (24 hr period) - No monit. | 6.00 DA | 0.00 | 70.50 | 0.00 | 423.00 |
| 12. Add for HEPA filter (for negative air exhaust fan) | 2.00 EA | 0.00 | 211.27 | 33.59 | 456.13 |
| 13. Contaminated water dump fee - (Bid Item) | 1.00 EA | 0.00 | 700.00 | 0.00 | 700.00 |
| 14. Clean with pressure/chemical spray - Heavy | 3,736.00 SF | 0.00 | 0.77 | 3.27 | 2,879.99 |
| Hard scape | | | | | |
| 15. Add for HEPA filter (for canister/backpack vacuums) | 2.00 EA | 0.00 | 90.66 | 12.76 | 194.08 |

| Total: Main Level | | | | 228.47 | 18,336.99 |



**JEN Renovation**

## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

| Living Room | | | Height: 8' |
|---|---|---|---|
| | 425.00 SF Walls | 266.11 SF Ceiling | |
| | 691.11 SF Walls & Ceiling | 266.11 SF Floor | |
| | 29.57 SY Flooring | 52.58 LF Floor Perimeter | |
| | 85.83 LF Ceil. Perimeter | | |

| Missing Wall - Goes to Floor | 2' 8" X 6' 8" | Opens into LAUNDRY_ROOM |
|---|---|---|
| Missing Wall - Goes to Floor | 18' 1" X 6' 8" | Opens into KITCHEN2 |
| Window | 5' X 4' | Opens into Exterior |
| Window | 5' X 4' | Opens into Exterior |
| Door | 2' 6" X 6' 8" | Opens into Exterior |
| Door | 2' 6" X 6' 8" | Opens into OFFICE_1 |
| Door | 2' 6" X 6' 8" | Opens into CLOSET1 |
| Door | 2' 6" X 6' 8" | Opens into CLOSET1 |
| Door | 2' 6" X 6' 8" | Opens into BEDROOM_3 |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 16. HEPA Vacuuming - Detailed - (PER SF) | 266.11 SF | 0.00 | 0.79 | 0.00 | 210.23 |
| Floors | | | | | |
| 17. Clean the walls and ceiling | 691.11 SF | 0.00 | 0.53 | 0.60 | 366.89 |
| 18. Clean door / window opening (per side) | 4.00 EA | 0.00 | 20.09 | 0.01 | 80.37 |
| 19. Clean window unit (per side) 21 - 40 SF | 3.00 EA | 0.00 | 31.08 | 0.01 | 93.25 |
| 20. Clean window screen | 3.00 EA | 0.00 | 20.06 | 0.00 | 60.18 |
| 21. Clean window blind - horizontal or vertical | 60.00 SF | 0.00 | 1.99 | 0.05 | 119.45 |
| 22. Clean baseboard | 52.58 LF | 0.00 | 0.54 | 0.05 | 28.44 |
| 23. Clean door (per side) | 1.00 EA | 0.00 | 11.06 | 0.02 | 11.08 |
| 24. Clean table - coffee | 1.00 EA | 0.00 | 22.70 | 0.09 | 22.79 |
| 25. Clean picture - frame, glass & back only | 2.00 SF | 0.00 | 8.52 | 0.06 | 17.10 |
| 26. Clean register - heat / AC | 1.00 EA | 0.00 | 8.72 | 0.00 | 8.72 |
| 27. Cleaning - Lamps or Vases - per hour | 2.00 HR | 0.00 | 63.50 | 0.00 | 127.00 |
| 28. Clean sofa - leather | 12.00 LF | 0.00 | 48.79 | 2.76 | 588.24 |
| 29. Clean pillow - throw - Full service | 4.00 EA | 0.00 | 10.15 | 0.00 | 40.60 |
| 30. Clean television - exterior wipe down | 1.00 EA | 0.00 | 27.33 | 0.05 | 27.38 |



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

### CONTINUED - Living Room

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| Totals: Living Room | | | | 3.70 | 1,801.72 |

**Kitchen**                                              **Height: 8'**



| | | |
|---|---|---|
| 312.78 SF Walls | 171.53 SF Ceiling | |
| 484.31 SF Walls & Ceiling | 171.53 SF Floor | |
| 19.06 SY Flooring | 41.08 LF Floor Perimeter | |
| 59.17 LF Ceil. Perimeter | | |

| | | |
|---|---|---|
| Window | 5' X 4' | Opens into Exterior |
| Window | 5' X 4' | Opens into Exterior |
| Missing Wall - Goes to Floor | 18' 1" X 6' 8" | Opens into LIVING_ROOM |

**Subroom: Closet (1)**                                  **Height: 8'**

| | | |
|---|---|---|
| 133.33 SF Walls | 19.33 SF Ceiling | |
| 152.67 SF Walls & Ceiling | 19.33 SF Floor | |
| 2.15 SY Flooring | 15.83 LF Floor Perimeter | |
| 20.83 LF Ceil. Perimeter | | |

| | | |
|---|---|---|
| Door | 2' 6" X 6' 8" | Opens into LIVING_ROOM |
| Door | 2' 6" X 6' 8" | Opens into LIVING_ROOM |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 31. HEPA Vacuuming - Detailed - (PER SF) | 190.86 SF | 0.00 | 0.79 | 0.00 | 150.78 |
| Floor | | | | | |
| 32. Clean door (per side) | 1.00 EA | 0.00 | 11.06 | 0.02 | 11.08 |
| 33. Clean light fixture | 1.00 EA | 0.00 | 16.35 | 0.01 | 16.36 |
| 34. Clean baseboard | 56.92 LF | 0.00 | 0.54 | 0.05 | 30.79 |
| 35. Clean the walls and ceiling | 636.97 SF | 0.00 | 0.53 | 0.56 | 338.15 |
| 36. Clean chair - dining | 4.00 EA | 0.00 | 14.91 | 0.27 | 59.91 |
| 37. Clean table - kitchen | 1.00 EA | 0.00 | 27.88 | 0.10 | 27.98 |
| 38. Clean window screen | 2.00 EA | 0.00 | 20.55 | 0.00 | 41.10 |
| 39. Clean window blind - horizontal or vertical | 30.00 SF | 0.00 | 2.04 | 0.03 | 61.23 |

| | | | | | |
|---|---|---|---|---|---|
| Totals: Kitchen | | | | 1.04 | 737.38 |



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



| Office 1 | | | | | Height: 8' |
|---|---|---|---|---|---|
| | 326.00 SF Walls | | 99.15 SF Ceiling | | |
| | 425.15 SF Walls & Ceiling | | 99.15 SF Floor | | |
| | 11.02 SY Flooring | | 40.33 LF Floor Perimeter | | |
| | 42.83 LF Ceil. Perimeter | | | | |

| Door | 2' 6" X 6' 8" | | Opens into LIVING_ROOM | | |
|---|---|---|---|---|---|
| **DESCRIPTION** | **QTY** | **REMOVE** | **REPLACE** | **TAX** | **TOTAL** |
| 40. HEPA Vacuuming - Detailed - (PER SF) | 99.15 SF | 0.00 | 0.79 | 0.00 | 78.33 |
| Floor | | | | | |
| 41. Clean door (per side) | 1.00 EA | 0.00 | 11.06 | 0.02 | 11.08 |
| 42. Clean light fixture | 1.00 EA | 0.00 | 16.35 | 0.01 | 16.36 |
| 43. Clean baseboard | 40.33 LF | 0.00 | 0.54 | 0.04 | 21.82 |
| 44. Clean the walls and ceiling | 425.15 SF | 0.00 | 0.53 | 0.37 | 225.70 |
| 45. Clean desk | 1.00 EA | 0.00 | 37.26 | 0.18 | 37.44 |
| 46. Clean office chair | 1.00 EA | 0.00 | 59.31 | 0.15 | 59.46 |
| 47. Clean television - exterior wipe down | 1.00 EA | 0.00 | 28.06 | 0.06 | 28.12 |
| 48. Clean dresser - single | 1.00 EA | 0.00 | 39.77 | 0.14 | 39.91 |
| 49. Clean window screen | 1.00 EA | 0.00 | 20.55 | 0.00 | 20.55 |
| 50. Clean window blind - horizontal or vertical | 20.00 SF | 0.00 | 2.04 | 0.02 | 40.82 |
| 51. Clean picture - frame, glass & back only | 3.00 SF | 0.00 | 8.75 | 0.11 | 26.36 |
| Totals: Office 1 | | | | 1.10 | 605.95 |



| Bedroom 3 | | | | | Height: 8' |
|---|---|---|---|---|---|
| | 359.33 SF Walls | | 148.26 SF Ceiling | | |
| | 507.60 SF Walls & Ceiling | | 148.26 SF Floor | | |
| | 16.47 SY Flooring | | 47.00 LF Floor Perimeter | | |
| | 49.50 LF Ceil. Perimeter | | | | |

| Door | 2' 6" X 6' 8" | | Opens into OFFICE_3 | | |
|---|---|---|---|---|---|
| Window | 5' X 4' | | Opens into Exterior | | |
| **DESCRIPTION** | **QTY** | **REMOVE** | **REPLACE** | **TAX** | **TOTAL** |



**Jen Renovation**

JEN Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

## CONTINUED - Bedroom 3

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 52. HEPA Vacuuming - Detailed - (PER SF) | 148.26 SF | 0.00 | 0.79 | 0.00 | 117.13 |
| Floors | | | | | |
| 53. Clean the walls and ceiling | 507.60 SF | 0.00 | 0.53 | 0.44 | 269.47 |
| 54. Clean window unit (per side) 21 - 40 SF | 1.00 EA | 0.00 | 31.08 | 0.00 | 31.08 |
| 55. Clean door / window opening (per side) | 2.00 EA | 0.00 | 20.09 | 0.01 | 40.19 |
| 56. Clean baseboard | 47.00 LF | 0.00 | 0.54 | 0.04 | 25.42 |
| 57. Clean door (per side) | 1.00 EA | 0.00 | 11.06 | 0.02 | 11.08 |
| 58. Clean dresser - single | 1.00 EA | 0.00 | 38.61 | 0.12 | 38.73 |
| 59. Clean bed frame | 1.00 EA | 0.00 | 12.05 | 0.10 | 12.15 |
| 60. Clean pillow - bed - Full service | 2.00 EA | 0.00 | 13.28 | 0.00 | 26.56 |
| 61. Clean picture - frame, glass & back only | 3.00 SF | 0.00 | 8.52 | 0.10 | 25.66 |
| 62. Clean register - heat / AC | 1.00 EA | 0.00 | 8.72 | 0.00 | 8.72 |
| 63. Clean television - exterior wipe down | 3.00 EA | 0.00 | 28.06 | 0.18 | 84.36 |
| 64. Clean window screen | 1.00 EA | 0.00 | 20.55 | 0.00 | 20.55 |
| 65. Cleaning - Lamps or Vases - per hour | 1.00 HR | 0.00 | 63.50 | 0.00 | 63.50 |
| Totals: Bedroom 3 | | | | 1.01 | 774.60 |
| Total: Main Level | | | | 235.32 | 22,256.64 |

## Labor Minimums Applied

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 66. Water extract/remediation labor minimum | 1.00 EA | 0.00 | 163.84 | 0.00 | 163.84 |
| Totals: Labor Minimums Applied | | | | 0.00 | 163.84 |
| **Line Item Totals: 2024-09-26-1551** | | | | **235.32** | **22,420.48** |



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

## Grand Total Areas:

| | | | |
|---|---|---|---|
| 3,328.89 SF Walls | 1,402.55 SF Ceiling | 4,731.44 SF Walls and Ceiling |
| 1,402.55 SF Floor | 155.84 SY Flooring | 418.17 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 534.83 LF Ceil. Perimeter |
| | | |
| 1,402.55 Floor Area | 1,523.10 Total Area | 3,328.89 Interior Wall Area |
| 1,408.50 Exterior Wall Area | 181.17 Exterior Perimeter of Walls | |
| | | |
| 0.00 Surface Area | 0.00 Number of Squares | 0.00 Total Perimeter Length |
| 0.00 Total Ridge Length | 0.00 Total Hip Length | |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 21,067.23 | 93.96% | 21,067.23 | 93.96% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 1,353.25 | 6.04% | 1,353.25 | 6.04% |
| Total | 22,420.48 | 100.00% | 22,420.48 | 100.00% |



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 20,836.38 |
| Material Sales Tax | 230.85 |
| **Replacement Cost Value** | **$21,067.23** |
| **Net Claim** | **$21,067.23** |

_____
Aram Arsenyan
Field Estimator



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

### Summary for Contents

| | |
|---|---|
| Line Item Total | 1,348.78 |
| Material Sales Tax | 4.47 |
| **Replacement Cost Value** | **$1,353.25** |
| **Net Claim** | **$1,353.25** |

Aram Arsenyan
Field Estimator

11/13/2024        **Page: 9**



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

### Recap of Taxes

| | Material Sales Tax (8.75%) | Storage Rental Tax (8.75%) |
|---|---|---|
| Line Items | 235.32 | 0.00 |
| **Total** | **235.32** | **0.00** |



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

## Recap by Room

**Estimate: 2024-09-26-1551**

| Area: Main Level | | | 18,108.52 | 81.62% |
|---|---|---|---|---|
| Coverage: Dwelling | 100.00% = | | 18,108.52 | |
| **Living Room** | | | **1,798.02** | **8.10%** |
| Coverage: Dwelling | 54.39% = | | 977.87 | |
| Coverage: Contents | 45.61% = | | 820.15 | |
| **Kitchen** | | | **736.34** | **3.32%** |
| Coverage: Dwelling | 88.11% = | | 648.82 | |
| Coverage: Contents | 11.89% = | | 87.52 | |
| **Office 1** | | | **604.85** | **2.73%** |
| Coverage: Dwelling | 68.48% = | | 414.20 | |
| Coverage: Contents | 31.52% = | | 190.65 | |
| **Bedroom 3** | | | **773.59** | **3.49%** |
| Coverage: Dwelling | 67.62% = | | 523.13 | |
| Coverage: Contents | 32.38% = | | 250.46 | |
| **Area Subtotal:  Main Level** | | | **22,021.32** | **99.26%** |
| Coverage: Dwelling | 93.88% = | | 20,672.54 | |
| Coverage: Contents | 6.12% = | | 1,348.78 | |
| **Labor Minimums Applied** | | | **163.84** | **0.74%** |
| Coverage: Dwelling | 100.00% = | | 163.84 | |
| **Subtotal of Areas** | | | **22,185.16** | **100.00%** |
| Coverage: Dwelling | 93.92% = | | 20,836.38 | |
| Coverage: Contents | 6.08% = | | 1,348.78 | |
| **Total** | | | **22,185.16** | **100.00%** |



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

## Recap by Category

| Items | | | Total | % |
|---|---|---|---|---|
| **CONT: GARMENT & SOFT GOODS CLN** | | | **67.16** | **0.30%** |
| Coverage: Contents | @ | 100.00% = | 67.16 | |
| **CONT: CLEAN ELECTRIC ITEMS** | | | **139.57** | **0.62%** |
| Coverage: Contents | @ | 100.00% = | 139.57 | |
| **CONT: CLEAN - HARD FURNITURE** | | | **237.91** | **1.06%** |
| Coverage: Contents | @ | 100.00% = | 237.91 | |
| **CONT: CLEAN - LAMPS OR VASES** | | | **190.50** | **0.85%** |
| Coverage: Contents | @ | 100.00% = | 190.50 | |
| **CLEANING** | | | **12,039.62** | **53.70%** |
| Coverage: Dwelling | @ | 100.00% = | 12,039.62 | |
| **CONT: CLEAN, UPHOLSTERY & SOFT** | | | **644.79** | **2.88%** |
| Coverage: Contents | @ | 100.00% = | 644.79 | |
| **CONT: CEILING/WALL HANGINGS** | | | **68.85** | **0.31%** |
| Coverage: Contents | @ | 100.00% = | 68.85 | |
| **GENERAL DEMOLITION** | | | **1,129.54** | **5.04%** |
| Coverage: Dwelling | @ | 100.00% = | 1,129.54 | |
| **HAZARDOUS MATERIAL REMEDIATION** | | | **3,436.04** | **15.33%** |
| Coverage: Dwelling | @ | 100.00% = | 3,436.04 | |
| **INSULATION** | | | **2,763.02** | **12.32%** |
| Coverage: Dwelling | @ | 100.00% = | 2,763.02 | |
| **WATER EXTRACTION & REMEDIATION** | | | **1,468.16** | **6.55%** |
| Coverage: Dwelling | @ | 100.00% = | 1,468.16 | |
| **Subtotal** | | | **22,185.16** | **98.95%** |
| **Material Sales Tax** | | | **235.32** | **1.05%** |
| Coverage: Dwelling | @ | 98.10% = | 230.85 | |
| Coverage: Contents | @ | 1.90% = | 4.47 | |
| **Total** | | | **22,420.48** | **100.00%** |

**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



1 1-Attic (3)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



2        2-Attic (4)



# Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



3      3-Attic (5)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



4        4-Attic (6)



### Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



5        5-Attic (7)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



6        6-Attic (8)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



7        7-Attic



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



8        8-Bedroom (2)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



9       9-Bedroom (3)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



10      10-Bedroom (4)



### Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



11      11-bedroom (5)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

![12-Bedroom photo]

12      12-Bedroom



### Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



13    13-Char View (2)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



14      14-Char View (3)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



15      15-Char View (4)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



16    16-Char View (5)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



17       17-Char View (6)



### Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



18    18-Char View (7)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



19      19-Char View (8)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



20 20-Char View (9)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



21    21-Char View (10)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



22      22-Char View (11)



**Jen Renovation**

JEN Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



23    23-Char View (12)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



24        24-Char View (13)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



25      25-Char View (14)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



26      26-Char View (15)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



27      27-Char View (16)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



28      28-Char View (17)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



29      29-Char View (18)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



30      30-Char View (19)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



31      31-Char View (20)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



32    32-Char View (21)



### Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



33    33-Char View (22)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



34      34-Char View (23)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



35    35-Char View (24)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



36      36-Char View (25)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



37      37-Char View (26)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



38      38-Char View (27)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



39      39-Char View (28)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



40      40-Char View (29)



### Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



41        41-Char View (30)

## Jen Renovation



Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



42       42-Char View (31)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



43      43-Char View (32)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



44      44-Char View (33)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



45      45-Char View (34)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



46        46-Char View (35)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



47        47-Char View



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



48      48-Elevation (2)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



49        49-Elevation (3)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



50      50-Elevation



### Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



51      51-Front View



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



52    52-Kitchen



### Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



53      53-Laundry Room



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



54      54-Living Room (2)



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com

55       55-Living Room (3)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



56        56-Living Room



**Jen Renovation**

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



57        57-Office (2)



### Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



58      58-Office (3)



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



59    59-office



### Jen Renovation

JEN Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



60 .    60-Patio



## Jen Renovation

Aram Arsenyan
(747) 276-9662
jen.renovation@gmail.com
https://www.Jenrenovation.com



61      61-Attic (2)



Bedroom 3

Bedroom 2

Closet (1)

Office 2

Kitchen

Laundry Room Bathroom Bed 2 bath

Closet (1)

Living Room

Office 1

Closet (1)

Bedroom 1



N

Main Level

# EXHIBIT D

| Project No. | Claim or P.O. No. | | Code | Terms |
|---|---|---|---|---|
| 126502-CB | | | TLSC | COD - Credit ... |

| Description | Qty | Rate | Amount |
|---|---|---|---|
| Limited Preliminary Fire-Related Surface Particulate Sampling Survey and Report performed on 10/04/24 at the subject property - Debbie Siliva - 28857 Avenida de las Flores, Menifee, CA 92587 | 1 | 3,800.00 | 3,800.00 |

Tax Id No. 20-5398287

Thank you for your business

| | Total | $3,800.00 |
|---|---|---|
| | Payments/Credits | -$3,800.00 |
| | **Balance Due** | $0.00 |

All invoices that are 30 days past due are subject to a 1.5% late fee for each 30 days past due.

Electronically FILED by Superior Court of California, County of Riverside on 09/02/2025 04:11 PM
Case Number CVME2510473 0000140603213 - Jason B. Galkin, Executive Officer/Clerk of the Court By Shelley Thompson, Clerk

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Linet Megerdomian, Esq. SBN 253898<br>Megerdomian Law Offices, P.C. 468 N Camden Drive, Suite 220, Beverly Hills, CA 90210<br><br>TELEPHONE NO.: (877) 734-3095          FAX NO.: (818) 272-8634<br>EMAIL ADDRESS: lm@Megerdomianlaw.com<br>ATTORNEY FOR *(Name):* Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 27401 Menifee Center Drive
MAILING ADDRESS: 27401 Menifee Center Drive
CITY AND ZIP CODE: Menifee, CA 92584
BRANCH NAME: Menifee Justice Center

CASE NAME:
DEBBIE SILVIA v. STATE FARM GENERAL INSURANCE COMPANY

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $35,000) | [ ] Limited<br>(Amount<br>demanded is<br>$35,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402). | | CVME2510473<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [x] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve               courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence              court
                                                              f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* Four (4) Causes of Action
5. This case [ ] is  [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: September 2, 2025
Linet Megerdomian, Esq.
_____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rules.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to
  the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
*case involves an uninsured*
*motorist claim subject to*
*arbitration, check this item*
*instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or*
*toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil*
*harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer*
*or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally*
*complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent*
*domain, landlord/tenant, or*
*foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
*drugs, check this item; otherwise,*
*report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex*
*case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic*
*relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-*
*harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Menifee Justice Center
27401 Menifee Center Drive, Menifee, CA 92584
www.riverside.courts.ca.gov

**Case Number:**  CVME2510473

**Case Name:**  SILVIA vs STATE FARM GENERAL INSURANCE COMPANY

### NOTICE OF DEPARTMENT ASSIGNMENT

The above entitled case is assigned to the Honorable Raquel A. Marquez in Department M302 for All Purposes.

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316). Tentative Rulings for each law and motion matter are posted on the internet by 3:00 p.m. on the court day immediately before the hearing at http://riverside.courts.ca.gov/tentativerulings.shtml. If you do not have internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 p.m. the court day before the hearing. If no request for oral argument is made by 4:30 p.m., the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties.




Interpreter services are available upon request. If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter.

Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided. Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation. A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation. (Civil Code section 54.8.)

Dated: 09/09/2025

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by: *Shelley Thompson*

S. Thompson, Deputy Clerk

CI-NODACV
(Rev. 02/16/21)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Menifee Justice Center
27401 Menifee Center Drive, Menifee, CA 92584
www.riverside.courts.ca.gov

**Case Number:**   CVME2510473

**Case Name:**   SILVIA vs STATE FARM GENERAL INSURANCE COMPANY

LINET MEGERDOMIAN
468 N. CAMDEN DRIVE. SUITE 220
BEVERLY HILLS, CA 90210

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 03/09/2026 | 8:30 AM | Department M302 |
| Location of Hearing: 27401 Menifee Center Drive, Menifee, CA 92584 | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 161 672 7660 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CI-NOCMC
(Rev. 03/02/22)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Menifee Justice Center
27401 Menifee Center Drive, Menifee, CA 92584
www.riverside.courts.ca.gov

**Case Number:**   CVME2510473

**Case Name:**   SILVIA vs STATE FARM GENERAL INSURANCE COMPANY

DEBBIE SILVIA

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 03/09/2026 | 8:30 AM | Department M302 |
| Location of Hearing: 27401 Menifee Center Drive, Menifee, CA 92584 | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case. CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases. Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing. Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 161 672 7660 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak. It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.




Interpreter services are available upon request. If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter.

Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided. Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation. A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation. (Civil Code section 54.8.)

CI-NOCMC
(Rev. 03/02/22)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Menifee Justice Center
27401 Menifee Center Drive, Menifee, CA 92584
www.riverside.courts.ca.gov

**Case Number:**  CVME2510473

**Case Name:**  SILVIA vs STATE FARM GENERAL INSURANCE COMPANY

STATE FARM GENERAL INSURANCE COMPANY

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 03/09/2026 | 8:30 AM | Department M302 |
| Location of Hearing: | | |
| 27401 Menifee Center Drive, Menifee, CA 92584 | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 161 672 7660 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.





| | |
|---|---|
| | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CI-NOCMC
(Rev. 03/02/22)

Notice has been printed for the following Firm/Attorneys or Parties: CVME2510473

MEGERDOMIAN, LINET                    SILVIA, DEBBIE
468 N. CAMDEN DRIVE. SUITE 220
BEVERLY HILLS, CA 90210

STATE FARM GENERAL INSURANCE
COMPANY

RI-ADR001-INFO



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**
www.riverside.courts.ca.gov

**Self-represented parties:** https://www.riverside.courts.ca.gov/SelfHelp/self-help.php

---

### ALTERNATIVE DISPUTE RESOLUTION (ADR) –
### *INFORMATION PACKAGE*

### *** THE PLAINTIFF MUST SERVE THIS INFORMATION PACKAGE
### ON EACH PARTY WITH THE COMPLAINT. ***

---

### What is ADR?
Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial. The main types are mediation, arbitration, and settlement conferences.

### Advantages of ADR:
- Faster:  ADR can be done in a 1-day session within months after filing the complaint.
- Less expensive:  Parties can save court costs and attorneys' and witness fees.
- More control:  Parties choose their ADR process and provider.
- Less stressful:  ADR is done informally in private offices, not public courtrooms.

### Disadvantages of ADR:
- No public trial:  Parties do not get a decision by a judge or jury.
- Costs: Parties may have to pay for both ADR and litigation.

### Main Types of ADR:

**Mediation:**    In mediation, the mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to create a settlement agreement that is acceptable to everyone. If the parties do not wish to settle the case, they go to trial.

Mediation may be appropriate when the parties:
- want to work out a solution but need help from a neutral person; or
- have communication problems or strong emotions that interfere with resolution; or
- have a continuing business or personal relationship.

Mediation is not appropriate when the parties:
- want their public "day in court" or a judicial determination on points of law or fact;
- lack equal bargaining power or have a history of physical/emotional abuse.

**Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration the arbitrator's decision is final; there is no right to trial. In "non-binding" arbitration, any party can request a trial after the arbitrator's decision. The court's mandatory Judicial Arbitration program is non-binding.

---

**Page 1 of 2**

Arbitration may be appropriate when the parties:
  - want to avoid trial, but still want a neutral person to decide the outcome of the case.

Arbitration is not appropriate when the parties:
  - do not want to risk going through both arbitration and trial (Judicial Arbitration)
  - do not want to give up their right to trial (binding arbitration)

**Settlement Conferences:** Settlement conferences are similar to mediation, but the settlement officer usually tries to negotiate an agreement by giving strong opinions about the strengths and weaknesses of the case, its monetary value, and the probable outcome at trial. Settlement conferences often involve attorneys more than the parties and often take place close to the trial date.

## RIVERSIDE COUNTY SUPERIOR COURT ADR REQUIREMENTS

ADR Information and forms are posted on the ADR website:
https://www.riverside.courts.ca.gov/Divisions/ADR/ADR.php

### General Policy:
Parties in most general civil cases are expected to participate in an ADR process before requesting a trial date and to participate in a settlement conference before trial. (Local Rule 3200)

### Court-Ordered ADR:
Certain cases valued at under $50,000 may be ordered to judicial arbitration or mediation. This order is usually made at the Case Management Conference. See the "Court-Ordered Mediation Information Sheet" on the ADR website for more information.

### Private ADR (for cases not ordered to arbitration or mediation):
Parties schedule and pay for their ADR process without Court involvement. Parties may schedule private ADR at any time; there is no need to wait until the Case Management Conference. See the "Private Mediation Information Sheet" on the ADR website for more information.

### BEFORE THE CASE MANAGEMENT CONFERENCE (CMC), ALL PARTIES MUST:
1. Discuss ADR with all parties at least 30 days before the CMC. Discuss:
   - Your preferences for mediation or arbitration.
   - Your schedule for discovery (getting the information you need) to make good decisions about settling the case at mediation or presenting your case at an arbitration.
2. File the attached "Stipulation for ADR" along with the Case Management Statement, if all parties can agree.
3. Be prepared to tell the judge your preference for mediation or arbitration and the date when you could complete it.

(Local Rule 3218)

### RIVERSIDE COUNTY ADR PROVIDERS INCLUDE:
  - The Court's Civil Mediation Panel (available for both Court-Ordered Mediation and Private Mediation). See https://adr.riverside.courts.ca.gov/Home/CivilMedPanel or ask for the list in the civil clerk's office, attorney window.
  - Riverside County ADR providers funded by DRPA (Dispute Resolution Program Act):
    Dispute Resolution Service (DRS) Riverside County Bar Association: (951) 682-1015
    Dispute Resolution Center, Community Action Partnership (CAP): (951) 955-4900
    Chapman University School of Law Mediation Clinic (services only available at the court)

Adopted for Mandatory Use
Riverside Superior Court
RI-ADR001-INFO [Rev. 06/10/21]