UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DEBBIE SILVIA,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 5:25-cv-02975-DTB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT** |

**I.**

**INTRODUCTION**

On September 2, 2025, plaintiff Debbie Silvia ("Plaintiff") filed a Complaint in Riverside County Superior Court, naming as defendants State Farm General Insurance Company ("Defendant"), and DOES 1 through 20. (Docket No. 1-2 at 4-18).[1] Attached to the Complaint are three exhibits. (Id. at 19- 217).[2] The Complaint

---

[1] For the parties' pleadings and exhibits, the Court cites to the CM/ECF pagination at the top of each page.

[2] The attached exhibits are: (1) Plaintiff's homeowner's policy with Defendant, Policy Number 05-CG-S899-5, effective November 8, 2023 to November 8, 2024 (Exhibit A) (Docket No. 1-2 at 20-76); (2) Defendant's denial of Plaintiff's claim on September 24, 2024 (Docket No. 1-2 at 78-82) (Exhibit B); and (3) Plaintiff's demand letter to Defendant, dated December 19, 2024,

alleges four causes of action: (1) Breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) bad faith denial of insurance claim; and (4) declaratory relief. (Id. at 11-16). The Complaint seeks, among other things, general damages, compensatory damages, exemplary damages, punitive damages, costs of suit, reasonable attorneys' fees, and pre-judgment interest. (Id. at 17).

The gist of the Complaint is that Plaintiff's residential property located at 28857 Avenida de las Flores in Menifee, California 92587, which was insured under Defendant's Policy Number 05-CG-S899-5, sustained smoke damage as a result of the Line Wildfire, which lasted from September 5, 2024 until approximately December 23, 2024, and that on or about May 21, 2025, Defendant, following insufficient investigation, wrongfully and in bad faith denied Plaintiff's smoke damage claim. (Id. at 4-10).

On November 6, 2025, Defendant filed a Notice of Removal, removing this action from the Riverside County Superior Court to this Court. (Docket No. 1).[3]

On December 15, 2025, Defendant filed a Motion to Dismiss the Complaint ("Motion to Dismiss") (Docket No. 11), accompanied by the supporting Declaration of William A. Hadikusumo ("Hadikusomo Decl.") (Docket No. 11-1 at 1-3) with two attached exhibits (Docket No. 11-1 at 4-227).[4] The Motion to Dismiss is based on the grounds that the Complaint does not allege facts raising a plausible claim for

containing, among other things, an environmental report from Titan Environmental Solutions, Inc. dated October 15, 2024 and a fire and smoke remediation estimate from Jen Renovation dated November 13, 2024 (Docket No. 1-2 at 84-217) (Exhibit C);

[3] On December 4, 2025, Plaintiff filed a Motion to Remand Action to State Court ("Motion to Remand") on the grounds that Defendant failed to show that Plaintiff's damages exceed $75,000.00, exclusive of interest and costs. (Docket No. 9). On January 9, 2026, Defendant filed an Opposition to the Motion to Remand. (Docket No. 18). Plaintiff did not file an optional Reply. On July 16, 2026, the Court denied Plaintiff's Motion to Remand. (Docket No. 19).

[4] The attached exhibits are: (1) The Complaint with attached exhibits (Docket No. 11-1 at 5-220) (Exhibit A); and (2) Defendant's counsel's meet and confer letter to Plaintiff's counsel, dated October 30, 2025 (Docket No. 11-1 at 222-27) (Exhibit B).

relief, that the causes of action for breach of implied covenant of good faith and fair dealing and for bad faith denial of an insurance claim are duplicative, and that the Complaint does not allege sufficient facts to support a claim for punitive damages. (Docket No. 11 at 10-21). On January 5, 2026, Plaintiff filed an Opposition to the Motion to Dismiss ("Opposition"), with two attached exhibits.[5] (Docket No. 13). On January 7, 2026, Defendant filed a Motion to Strike Plaintiff's Untimely Opposition ("Motion to Strike"), or in the Alternative, a Reply to the Opposition ("Reply"). (Docket No. 15). On January 8, 2026, Plaintiff filed a Motion for Leave to File a Late Opposition ("Motion for Leave"). (Docket No. 16).[6]

---

[5] The attached exhibits are: (1) California Insurance Commissioner's Bulletin 2025-7, dated March 7, 2025, regarding "Insurance Coverage for Smoke Damage and Guidance for Proper Handling of Smoke Damage Claims for Properties Located in or near California Wildfire Areas" (Docket No. 13 at 9-11); and (2) a portion of Defendant's Notice of Removal regarding punitive damages (id. at 13-15).

[6] Defendant and Plaintiff agree that Plaintiff did not file the Opposition until January 5, 2026, more than two weeks after the December 19, 2025 deadline. (Docket No. 15 at 6; Docket No. 16 at 2).

Plaintiff contends that the lateness of the Opposition was based on excusable neglect: "The delay . . . resulted from a convergence of circumstances during the holiday period, including a court-imposed deadline that fell immediately before the Christmas and New Year holidays, Plaintiff's law office operating on a limited basis during that period, and [Plaintiff's] counsel's temporary out-of-state unavailability." (Docket No. 16 at 3; see also Docket No. 16-1 at ¶¶ 3-7)

Federal Rule of Civil Procedure 6(b)(1) provides in pertinent part: "When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect." "Excusable neglect 'encompasses situations in which the failure to comply with a filing deadline is attributable to negligence,' and includes 'omissions caused by carelessness.'" Lemoge v. United States, 587 F.3d 1188, 1192 (9th Cir. 2009) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd., 507 U.S. 380, 388, 394 (1993)) (alterations omitted). "Excusable neglect is an equitable concept that takes account of factors such as 'prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" Franchise Holding II, LLC v. Huntington Restaurant Group, Inc., 375 F.3d 922 (2004) (citation omitted).

While Defendant may have been inconvenienced by the late Opposition, it does not appear that Defendant suffered any real prejudice as a result of the late Opposition (see Docket No.15 at 7). Defendant still was able to file a Reply to the Opposition. Moreover, as Plaintiff argues (see Docket No. 16 at 3; Docket No. 16-1 at ¶ 11), the delay in filing the Opposition was relatively brief and does not impact the judicial proceedings, the reason for the delay – carelessness during

For the reasons set forth below, Defendant's Motion to Dismiss is granted in part and denied in part.

## II.

## SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff owns the property located at 28857 Avenida de las Flores, Menifee, California 92587 ("the Property'); the Property was insured by Defendant, Policy Number 05-CG-S899-5 ("the Policy"), during the Line Wildfire in San Bernardino County which began on September 5, 2024 and lasted until December 23, 2024. (Complaint at ¶¶ 6-7, 12-13; see Docket No. 1-2 at 20-76, effective November 8, 2023 to November 8, 2024). "In return for the Policy, Plaintiff paid premiums that were collected and transmitted to [Defendant] and recorded in [Defendant's] records during the regular course of business." (Id. at ¶ 13; see id. at ¶ 36). The first day of the wildfire, Plaintiff noticed wildfire smoke odor and saw ash blow over and onto the Property; the smoke odor and smoke particulates filled the Property through vents, windows, and any open area that was not sealed. (Id. at ¶¶ 16-17). Plaintiff closed her windows that day and made sure they were shut for the duration of the fire, and kept her air conditioner on to help with the smoke smell. (Id. at ¶¶ 17-18). As the wildfire continued, Plaintiff saw ash, char, and soot remnants in the interior and exterior of the Property. (Id. at ¶ 19). Plaintiff attempted to clean the Property, including the personal contents inside of the Property, but the smoke smell remained. (Id. at ¶ 20).

---

the holiday period – is understandable, although unfortunate, and Plaintiff's counsel appears to have acted in good faith.

Therefore, Defendant's Motion to Strike is DENIED, and Plaintiff's Motion for Leave is GRANTED.

On September 11, 2024, Plaintiff, through an attorney, filed a claim with Defendant (claim number 05-73Q9-07R) for smoke damage sustained by the Property. (Id. at ¶ 21).

On September 24, 2024, Sabri Alquza ("Mr. Alquza"), an adjuster for Defendants, as well as other persons believed to be agents for Defendant, inspected the Property. (Id. at ¶ 22). Mr. Alquza, apparently wanting to leave as quickly as possible, acted unprofessionally and conducted a rushed visual inspection of the Property. (Id. at ¶¶ 23-24). On the same date, following the visual inspection, Defendant wrongfully and unreasonably denied the claim. (Id. at ¶ 24; see Docket No. 1-2 at 78-82).[7]

---

[7] The denial letter stated: "Our inspection did not reveal any covered accidental direct physical loss to the insured location from smoke, ash or soot from the Airport wildfire. Our investigation reflects the conditions of the property are consistent with normal levels of dust, dirt, and background debris. As such, State Farm Insurance Companies does not believe there is an evidence of covered accidental direct physical loss to the dwelling, dwelling extensions, and/or the personal property." (Docket No. 1-2 at 78). The denial letter then referred Plaintiff to Homeowners Policy HW-2105, specifically citing the following portions:

**SECTION I - LOSSES INSURED**

**COVERAGE A - DWELLING**
***We*** will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded-or limited in **SECTION I - LOSSES NOT INSURED** or otherwise excluded or listed in this policy. However, loss does not include and ***we*** will not pay for any ***diminution in value***.

**COVERAGE B - PERSONAL PROPERTY**
***We*** will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and ***we*** will not pay for, any ***diminution in value***.
1. **Fire or lightning**.
7. **Smoke**, meaning abrupt and accidental damage from smoke.
This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**SECTION I - LOSSES NOT INSURED**

1. ***We*** will not pay for any loss to the property described in Coverage A that is caused by one or more of the items below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

f. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

i. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY**.

(1) Contaminants and pollutants include but are not limited to any:

(a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

(b) contaminants or pollutants resulting from any natural resource extraction activities; or

(c) fuel oil except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Fuel Oil Release**.

(2) ***We*** also will not pay for:

(a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

(b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

However, ***we*** will pay for any resulting loss from items a. through k, unless the resulting loss is itself a Loss Not Insured as described in this Section.

4. ***We*** will not pay for any loss described in paragraphs 1., 2., and 3. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

On October 4, 2024, Plaintiff hired Titan Environmental ("Titan"), an industrial hygienist, to inspect the Property. (Complaint at ¶ 25). Samples taken by Titan during the inspection confirmed there was significant char, ash, soot, and residue in multiple locations at the Property. (Id.; see Docket No. 1-2 at 89-128 [Titan's "Limited Preliminary Fire-Related Surface Particulate Assessment Report" ("Titan's Report") dated October 15, 2024]).

On December 19, 2024, Plaintiff's counsel sent Defendant a demand letter, containing Titan's Report (see Docket No. 1-2 at 89-128) and a fire and smoke remediation estimate totaling $22,420.28 (see Docket No. 1-2 at 132-206 [Jen Renovation's Remediation Statement, dated November 13, 2024]). (Complaint at ¶ 26; see Docket No. 1-2 at 84-217 [Plaintiff's counsel's demand letter dated December 19, 2024]).

Following receipt of the demand letter, Defendant requested additional information. Plaintiff complied with the request. (Complaint at ¶ 27).

Plaintiff's counsel attempted to resolve the claim by communicating with Mr. Alquza and Mr. Alquza's manager on several occasions. (Id. at ¶ 28). On May 21, 2025, after several months during which Defendant requested unnecessary information, did not conduct any additional investigation, such as hiring a contractor to draft an estimate based off of Titan's Report or hiring its own hygienist, and Mr.

---

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

c. weather conditions.

However, ***we*** will pay for any resulting loss from items 4.a., 4.b., and 4.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.-

5. ***We*** will not pay for, under any part of this policy, any loss consisting of the items in paragraphs 1., 2., 3., or 4. above. This exclusion does not apply if the loss is caused by a peril that is not otherwise excluded.

(Docket No. 1-2 at 78-81, bolding and italics in original).

Alquza showed a lack of understanding as to how to properly read an industrial hygienist's report, Defendant again wrongfully and in bad faith denied the claim. (Id. at ¶ 29).[8] Defendant denied the claim, relying on Mr. Alquza's poorly performed inspection as opposed to Titan's Report. (Id. at ¶¶ 30-33).

The plain language of the Policy provides coverage for the losses to the Property. (Id. at ¶ 33). Plaintiff took out the Policy with Defendant to cover "this kind of loss." (Id. at ¶ 37). Notwithstanding that the Policy provides coverage for the losses to the Property, Defendant wrongfully and in bad faith denied the claim. (Id. at ¶¶ 33, 38).

## III.
## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claims alleged in a complaint. A complaint may be dismissed for failure to state a claim for two reasons: (1) Lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). To survive a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient to state a claim that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Plausibility does not mean probability but does require "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 566 U.S. at 678. A pleading that offers mere "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555; see also

[8] A copy of Defendant's May 21, 2025 denial of Plaintiff's claim is not attached to the Complaint.

Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) ("Taken together, Iqbal and Twombly require well-pleaded facts, not legal conclusions . . . that 'plausibly give rise to an entitlement to relief' . . . . The plausibility of a pleading thus derives from its well-pleaded factual allegations.") (quoting Iqbal, 556 U.S. at 679).

In considering a motion to dismiss, a court must accept all factual allegations in the complaint as true "and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (Pleadings by pro se plaintiffs "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citation omitted). But the liberal pleading standard "applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678; see also Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) ("[W]e do not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations."). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted).

A court may consider exhibits attached to a complaint and incorporated by reference. See Petrie v. Electronic Game Card, Inc., 761 F.3d 959, 964 n.6 (9th Cir. 2014). However, a court is not required to accept as true allegations contradicted by exhibits attached to a complaint or conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). While on a Rule 12(b)(6) motion a court cannot consider

evidence outside the pleadings, a court may "consider unattached evidence on which the complaint 'necessarily relies' if: (1) [T]he complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." United States v. Corinthian Colls., 655 F.3d 984, 999 (9th Cir. 2011) (citation omitted).

If a court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"); Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave to amend [a pleading] when justice so requires."). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, a court may dismiss without leave to amend. See Ebner v. Fresh, Inc., 838 F.3d 958, 968 (9th Cir. 2016) (Rule 15's liberal amendment policy "does not apply when amendment would be futile"); Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); see also Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment that would constitute a valid claim or defense.") (citation omitted).

/ / /

/ / /

/ / /

## IV.

## DISCUSSION

### A. The Motion to Dismiss is Granted in Part and Denied in Part.

As noted above, Defendant has moved to dismiss the Complaint on the grounds that the Complaint does not allege facts raising a plausible claim for relief, that the causes of action for breach of implied covenant of good faith and fair dealing and for bad faith denial of insurance claim are duplicative, and that the Complaint does not allege sufficient facts to support a claim for punitive damages. (Docket No. 11 at 10-21). Defendant's contentions will be addressed in turn.

1. The Complaint Alleges a Plausible Breach of Contract Claim.

The Complaint makes the following allegations in the Breach of Contract cause of action section: "Plaintiff and [Defendant] entered into a written insurance contract which was in effect on September 5, 2024, which provided coverage for smoke damage. Plaintiff has performed each and every obligation, condition, and covenant required of her under the Policy." (Docket No. 1-2 at 11 (¶ 41)); "[Defendant] has breached the Policy by unreasonably refusing to pay and by continuing to withhold benefits now due and payable under the Policy's terms." (Id. at ¶ 42). "As a direct and proximate result of [Defendant's] action, Plaintiff has incurred substantial damages. As a direct and proximate result of [Defendant's] action, Plaintiff has suffered, to date, damages in excess of her deductible and consequential damages for breach of contract. [] As a direct and proximate result of the actions of [Defendant] Plaintiff has incurred and continues to incur economic losses." (Id. at ¶¶ 43-44).

Under California law, "[t]he elements of cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damage to the

plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011) (citing Reichert v. General Ins. Co., 68 Cal.2d 822, 830 (1968)).

Defendant appears to take issue with the sufficiency of the Complaint regarding the fourth element of a breach of contract cause of action. Specifically, Defendant contends that Plaintiff has not sufficiently plead "direct physical loss" or "damage" under the Policy and Gharibian v. Wawanesa Gen. Ins. Co., 108 Cal.App.5th 730 (2025). (Docket No. 11 at 10-13; see Docket No. 15 at 8-9).

In Another Planet Entertainment, LLC v. Vigilant Ins. Co., 15 Cal. 5th 1106 (2024) – cited by both parties (see Docket No. 11 at 10; Docket No. 13 at 3; Docket No. 15 at 8) – the California Supreme Court addressed the following question: "Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute 'direct physical loss or damage to property' for purposes of coverage under a commercial property insurance policy." Id. at 1117, 1134, 1148. The Another Planet Entertainment court held that: "[A]llegations of the actual or potential presence of COVID-19 on an insured premises do not, without more, establish direct physical loss or damage to property within the meaning of a commercial property insurance policy. Under California law, direct physical loss or damage to property requires a distinct, demonstrable, physical alteration to property. The physical alteration need not be visible to the naked eye, nor must it be structural, but it must result in some injury to or impairment of the property as property." Id. at 1117; see id. at 1148 ("To constitute direct physical damage to property under California law, a tangible alteration of property is *necessary* but not *sufficient*. An insured must allege, and later prove, that the alteration caused physical harm to the property. The alteration itself is not enough."). The Another Planet Entertainment court answered the Ninth Circuit's question as follows: "No, the actual or potential presence of the COVID-19 virus on an insured's premises generally does not

constitute 'direct physical loss or damage to property' for purposes of coverage under a commercial property insurance property insurance policy." Id. at 1151.

Gharibian, on which Defendant greatly relies, involved the following facts: the plaintiffs purchased a homeowner insurance policy providing that the insurance company will "insure against direct physical loss to property;" a nearby wildfire caused debris to enter the inside and outside of the plaintiff's home; the plaintiff's home did not suffer burn damage (and one plaintiff testified she could not smell any smoke less than three months after the fire); the plaintiffs reported a claim to the insurer; a company retained by the insurer inspected the property and prepared an estimate for cleaning the property; the plaintiffs' hired a company to inspect the property and write a report; a certified hygienist/consultant for that company testified that soot and ash were present at the property but that there was no burn or heat damages at the property that the home could be fully cleaned by wiping the surfaces, HEPA vacuuming, and power washing the outside; the insurer retained an industrial hygienist, who after conducting new tests, determined that the interior of the home could be cleaned through normal processes, such as wiping with wet disposable cloths and using a HEPA vacuum to clean the attic (but a HEPA system cleaning was not warranted); the plaintiffs cleaned the interior and exterior of their home on their own; the plaintiffs then retained another company which provided a new, increased cleaning cost estimate ($35,553.10); the insurer hired another company to reinspect the property, resulting in a revised, increased cleaning estimate ($20,718.09); and the insurer ultimately paid the plaintiffs more than $22,000.00 for professional cleaning services, even though the plaintiffs did not use them. Gharibian, 108 Cal.App.5th at 732-35. The plaintiffs sued the insurer for breach of contract and breach of the implied covenant of good faith and fair dealing. Id. at 732, 735. Following discovery, the insurer moved for summary judgment based on the plaintiffs' lack of evidence of physical damage. Id. at 735. Based on the parties'

papers (which included expert declarations) and after oral argument, the trial court granted the insurer's motion for summary judgment, ruling as follows: "[B]ottom line, even considering all that is before the court, the court in its role to interpret the insurance policy involved in the case has concluded that no evidence of 'physical loss' as that term is used and intended in the policy and in keeping with case law on the subject is before the court, and certainly not enough to create any material issue of fact in this regard." Id. at 735-36. The Court of Appeal, applying Another Planet Entertainment, found that the trial court did not err: "Here there is no evidence of any 'direct physical loss to [plaintiffs'] property.' The wildfire debris did not 'alter the property itself in a lasting and persistent manner.' Rather, all evidence indicates that the debris was 'easily cleaned or removed from the property.' Such debris does not constitute 'direct physical loss to property.'" Id. at 736 (citation and internal citations omitted).

Although Defendant, based on Gharibian, seeks for the Court to affirmatively find that the allegations in the Complaint, as well as statements and/or recommendations in Titan's Report, do not allege a "direct physical loss to the" Property as required under the terms of the Policy and therefore do not sufficiently plead a breach of contract claim, the Court is not persuaded by Defendant's arguments. As Plaintiff argues (see Docket No. 13 at 3-4), the Gharibian decision was limited to its specific facts. Unlike Gharibian, this case is only at the pleading stage, and therefore does not involve a review of evidence.[9] Moreover, Plaintiff has failed to cite, and the Court has been unable to locate, any federal cases holding that a plaintiff's allegations, in a similar context, were insufficient to state a plausible breach of contract claim.

/ / /

[9] In ruling on the Motion to Dismiss, the Court declines to consider Plaintiff's arguments based on the California Insurance Commissioner's Bulletin 2025-7 (see Docket No. 13 at 3-4).

Accordingly, the Court is unable to find that the Complaint fails to state a cognizable breach of contract claim against Defendant.

2. The Complaint Alleges Plausible Causes of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing and for Bad Faith Denial of Insurance Claim.

The Complaint alleges a cause of action for breach of the implied covenant of good faith and fair dealing. (Docket No. 1-2 at 12-14). This cause of action is based on, among other things, Defendant "[u]nreasonably and unjustifiably failing to timely and fully pay Plaintiff's claim for damage to the subject property under the Policy," Defendant "[u]nreasonably refusing payments to Plaintiff in bad faith, knowing Plaintiff's Claim for benefits under the Policy to be valid, in an attempt to coerce Plaintiff into accepting less than the fair value of her Claim," Defendant "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlement of Plaintiff's Claim for benefits where the obligation to pay had become reasonably clear," Defendant "[f]ailing to thoroughly investigate Plaintiff's Claim," Defendant "[h]andling Plaintiff's Claim in a dilatory manner, which resulted in the unnecessary delay in processing Plaintiff's Claim," Defendant "[f]ailing to objectively evaluate Plaintiff's Claim," Defendant "[c]ompelling Plaintiff to initiate litigation to obtain benefits due under the Policy," Defendant "[u]nreasonably misrepresenting to Plaintiff pertinent facts and Policy provisions relating to the coverage at issue," Defendant "[f]ailing to abide by the rules promulgated by the Insurance Commissioner; and "[i]nterpreting Plaintiff's policy in an unduly restrictive manner." (Docket No. 1-2 at 12-13 (¶ 51(a)-(k)).

Plaintiff also alleges a cause of action for bad faith denial of insurance claim. (Docket No. 1-2 at 14-16). Plaintiff's cause of action is based on the allegations that Defendant denied Plaintiff's claim in bad faith by "failing or refusing to perform a fair, objective, and thorough investigation of the claim as required by the California

Insurance Code," "asserting coverage defenses that were legally and/or factually invalid and thereby delaying resolution of Plaintiff's claim," "placing unduly restrictive interpretations on the Policy terms for the purpose of denying coverage due under the Policy," "failing to give Plaintiff's interests equal consideration with its own," and "forcing Plaintiff to institute litigation to recover amounts due under the Policy." (Docket No. 1-2 at 15 (¶ 61(a)-(e)).

"California law recognizes in every contract . . . an implied covenant of good faith and fair dealing." Brehm v. 21st Century Ins. Co., 166 Cal.App.4th 1225, 1235 (2008) (as modified) (citation omitted); see also McClain v. Octagon Plaza, LLC, 159 Cal.App.4th 784, 796 (2008) ("Under California law, every contract 'imposes upon each part a duty of good faith and fair dealing in its performance and its enforcement.'") (citation omitted); Century Surety Co. v. Polisso, 139 Cal. App.4th 922, 948 (2006) ("As with all contracts, insurance contracts include an implied covenant of good faith and fair dealing, which requires that each contracting party refrain from doing anything to injure the right of the other party to receive the benefits of the agreement.") (citation omitted). In insurance cases, "there are at least two separate requirements to establish breach of the implied covenant: (1) [B]enefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 1151 (1990); see also Mohandas v. Wells Fargo Bank, N.A., Case No. 2:21-cv-03349-JAK-PD, 2022 WL 17254847, at *14 (C.D. Cal. July 5, 2022) ("[T]he elements necessary to establish a breach of the covenant of good faith and fair dealing are: '(1) [T]he parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was

harmed by the defendant's conduct.'") (quoting Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010)).

"Bad faith denial of insurance coverage means simply that the insurer breached an implied contractual agreement to act faithfully to an agreed common purpose consistent with the reasonably justified expectations of the other party." Freedom Trust v. Chubb Group of Ins. Companies, 38 F.Supp.2d 1170, 1172-73 (C.D. Cal. Mar. 26, 1990) (citations omitted).

Defendant contends that the Complaint fails to allege causes of action for breach of the implied covenant of good faith and fair dealing and for bad faith denial of insurance claim based on essentially the same arguments as before: "Plaintiff cannot state a bad faith claim because the predicate for such a claim, namely a covered loss, is absent."; and "Because the Policy affords no coverage for the alleged conditions, [Defendant] did not owe Plaintiff any benefits. Without withheld benefits, there can be no unreasonable claims handling and no breach of the implied covenant of good faith and fair dealing." (Docket No. 11 at 13). For the same reasons as discussed above, the Court finds Defendant's arguments unpersuasive. Moreover, contrary to Defendant's assertions (see Docket No. 11 at 14-15; Docket No. 15 at 10), the Complaint alleges more than a disagreement between Plaintiff and Defendant regarding the scope of coverage under the Policy.

Accordingly, the Court finds that the Complaint alleges plausible causes of action for breach of the implied covenant of good faith and fair dealing and for bad faith denial of insurance claim against Defendant.

/ / /

/ / /

/ / /

/ / /

/ / /

3. The Cause of Action for Bad Faith Denial of Insurance is Duplicative of the Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Defendant moves to dismiss the bad faith denial of insurance claim cause of action alleged in the Complaint because it is duplicative of the implied covenant of good faith and fair dealing cause of action alleged in the Complaint. (Docket No. 11 at 15-16).

As Defendant notes (see Docket No. 11 at 16), the allegations in each of those causes are "virtually identical." It appears that Plaintiff's bad faith denial of insurance cause of action is embedded within Plaintiff's breach of the implied covenant of good faith and fair dealing cause of action. See Seif v. State Farm Mutual Automobile Insurance Co., Case No. 8:25-cv-00980-SRM-JDE, 2026 WL 922014, at *2 (C.D. Cal. Mar. 31, 2026); Dr. Tarlochan Sing DDS Inc. v. Dell Computers, Case No. 1:22-cv-01087-ADA-SAB, 2023 WL 2541849, at *5 ("these causes of action are one and the same"); Stangl v. OM Fin. Life Ins. Co., Case No. 8:08-cv-00470-DOC-FMO, 2008 WL 11342680, at *2 (C.D. Cal. Aug. 15, 2008) ("A claim for a breach of the implied covenant of good faith and fair dealing is, in essence, a claim for relief for insurance bad faith."); Hood v. Hartford Life and Acc. Ins. Co., 567 F. Supp. 2d 1221, 1223 (E.D. Cal. 2008) (noting that in an insurance contract context the cause of action for breach of the implied covenant of good faith and fair dealing is "commonly known as an insurance 'bad faith' claim"). Moreover, as Defendant notes (see Docket No. 15 at 11-12), Plaintiff has failed to oppose the dismissal of the bad faith denial of insurance cause of action alleged in the Complaint based on its alleged duplicative nature. See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 288 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files

/ / /

/ / /

an opposition to a motion to dismiss addressing only certain argument raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Accordingly, dismissal of the duplicative bad faith denial of insurance cause of action is appropriate. See Seif, 2026 WL 922014, at *2; Dr. Tarlochan Singh DDS Inc., 2023 WL 2541849, at *5; Stangl, 2008 WL 11342680, at * 2; Boblos's Inc. v. Burlington Ins. Co., Case No. Civ. 5-07-894 RRB DAD, 2007 WL 3165535, at *3 (E.D. Cal. Oct. 25, 2007).

4. The Complaint Alleges a Plausible Cause of Action for Declaratory Relief.

The Complaint alleges a cause of action for declaratory relief. (Docket No. 1-2 at 16). Specifically, Plaintiff seeks a declaratory judgment that "Plaintiff's losses are covered under the Policy" and that "[Defendant] wrongly denied coverage." (Id. (¶¶ 72-74)).

Defendant contends that the cause of action for declaratory relief should be dismissed: "As explained above, however, Plaintiff cannot establish any 'direct physical loss' to the property. Because she has no substantive rights to benefits under the policy, there is no basis for the declaration she seeks, and the declaratory relief claim necessarily fails. Courts routinely reach this conclusion where coverage is absent." (Docket No. 11 at 20; see also Docket No. 15 at 12 ["Likewise, Plaintiff's declaratory relief claim is entirely derivative of her substantive claims and cannot stand in the absence of a viable breach of contract or bad faith cause of action."]).

Since the Court, at this stage, is not able to find that Plaintiff is not entitled to benefits under the Policy, as discussed above, the Court declines to dismiss the cause of action for declaratory relief.

/ / /

/ / /

5. The Complaint Contains Sufficient Allegations to Support a Claim for Punitive Damages.

As noted above, Plaintiff seeks an unspecified amount of punitive damages. (Docket No. 1-2 at 17).

Defendant contends that the Complaint fails to sufficiently support a claim for punitive damages under Cal. Civ. Code § 3294(a) because the Complaint does not allege non-conclusory facts showing that Defendant engaged in oppression, fraud or malice. (Docket No. 11 at 16-18). Defendant also contends the Complaint fails to sufficiently allege a claim for punitive damages because it does not contain necessary allegations against a corporation as required by Cal. Civ. Code § 3294(b). (Id. at 18).[10]

California Civil Code Section 3294(a) provides that "in an action for the breach of an obligation not arising from contract," a plaintiff may recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." See also Tibbs v. Great American Ins. Co., 755 F.2d 1370, 1375 (9th Cir. 1985) ("Punitive damages are recoverable, however, when the defendant breaches the implied covenant of good faith and fair dealing *and* is guilty of oppression, fraud or malice.") (citation omitted, italics in original); Fleming v. Safeco Ins. Co., 160 Cal.App.3d 31, 43 (1984) ("An award of punitive damages requires the plaintiff to prove that defendant was guilty of oppression, fraud, or malice, and acted with the intent to vex, injure, or annoy, or with a conscious disregard of plaintiff's rights.") (citations omitted). California

---

[10] Plaintiff's contention that Defendant is judicially estopped from arguing that the Complaint fails to contain sufficient allegations of punitive damages based on the fact Defendant relied on the request for punitive damages to remove Plaintiff's case to this Court (see Docket No. 13 at 6) falls short. As Defendant notes (see Docket No. 15 at 10-11), the standards for evaluating the amount in controversy for purposes of removal under 28 U.S.C. § 1332 and for evaluating whether a complaint alleges a plausible claim for relief under Rule 12(b)(6) are different.

Civil Code Section 3294(b) provides that: "An employer shall not be liable for damages pursuant to subdivision (a), based upon the acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

It appears that Section 3294(a) concerns an evidentiary standard, as opposed to a pleading standard, regarding recovery of punitive damages. See Mitchell Rubber Products, LLC v. Verlan Fire Insurance Co., Case No. 5:21-cv-01845-JGB-kk, 2022 WL 1722233, at *2 (C.D. Cal. Aug. 12, 2022) ("As a matter of textual interpretation, it is clear that section 3294(a) is not a pleading requirement but an evidentiary standard that [the plaintiff] must meet to recover punitive damages."); see also Price v. First Fin. Sec. Inc., Case No. 2:24-cv-10985-MCS-RAO, 2025 WL 2427997, at *2 (C.D. Cal. July 21, 2025) ("Rule 12(b)(6) is not an appropriate vehicle to attain dismissal of a remedy sought in a pleading."). In any event, although the Complaint does not use the terms oppression, fraud, or malice, it appears that the allegations in the Complaint about Defendant's "unlawful" actions which form the bases of the breach of covenant of good faith and fair dealing claim, as discussed above, are sufficient to support a request for punitive damages. Although Defendant states that "[t]he Complaint identifies no officer, director, or managing agent who authorized or ratified the alleged conduct" (see Docket No. 11 at 18), the Complaint contains allegations which appear to satisfy a punitive damages request against Defendant (Docket No. 1-2 at 11 (¶ 53) ["[Defendant's] conduct described herein was undertaken by State Farm's officers or managing agent,

identified herein as DOES 1 through 20, who were responsible for supervision and operation, reports, communications, and decisions. The conduct of these managing agents and individuals was therefore undertaken on [Defendant's] behalf. Further, [Defendant] had advance knowledge of the action and conduct of these individuals whose actions and conduct were ratified, authorized, or approved by managing agents . . . ."]), and Defendant has not cited any authority holding that a complaint needs to specifically identify the names of an officer, director, or managing agent who authorized or ratified the alleged conduct.

Accordingly, the Court, at this stage of the proceedings, declines to find that the Complaint does not contain sufficient allegations of punitive damages against Defendant.

## V.

## ORDER

IT IS THEREFORE ORDERED that:

1. Defendant's Motion to Dismiss is DENIED as to Defendant's contentions that the Complaint fails to allege plausible causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith denial of insurance claim, and declaratory relief, and that the Complaint fails to allege a claim for punitive damages.

2. Defendant's Motion to Dismiss is GRANTED as to Defendant's contention that the cause of action for bad faith denial of insurance claim alleged in the Complaint is duplicative of the cause of action for breach of the implied covenant of good faith and fair dealing claim alleged in the Complaint. The bad faith denial of insurance claim portion of the Complaint (Docket No. at 1-2 at 14-16) is dismissed without leave to amend.

/ / /

/ / /

3. Defendant is ORDERED to file an Answer to the Complaint within twenty-one (21) days of the date of this Order.

DATED: July 22, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE